# GROUP EXHIBIT A

**Chancery Division Civil Cover Sheet**
**General Chancery Section**                                                    (12/01/20) CCCH 0623

---

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

Citadel Securities Americas Services LLC
_____
                                                    Plaintiff

                        v.                                    Case No: _____

Vincent Prieur
_____
                                                    Defendant

### CHANCERY DIVISION CIVIL COVER SHEET
### GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | |
|---|---|---|
| 0005 | ☐ Administrative Review | |
| 0001 | ☐ Class Action | |
| 0002 | ☐ Declaratory Judgment | |
| 0004 | ☑ Injunction | |

| | |
|---|---|
| 0017 | ☐ Mandamus |
| 0018 | ☐ Ne Exeat |
| 0019 | ☐ Partition |
| 0020 | ☐ Quiet Title |
| 0021 | ☐ Quo Warranto |
| 0022 | ☐ Redemption Rights |
| 0023 | ☐ Reformation of a Contract |
| 0024 | ☐ Rescission of a Contract |
| 0025 | ☐ Specific Performance |
| 0026 | ☐ Trust Construction |
| 0050 | ☐ Internet Take Down Action (Compromising Images) |

| | |
|---|---|
| 0007 | ☐ General Chancery |
| 0010 | ☐ Accounting |
| 0011 | ☐ Arbitration |
| 0012 | ☐ Certiorari |
| 0013 | ☐ Dissolution of Corporation |
| 0014 | ☐ Dissolution of Partnership |
| 0015 | ☐ Equitable Lien |
| 0016 | ☐ Interpleader |

☐ Other (specify) _____

◉ Atty. No.: 31210          ○ Pro Se 99500

Atty Name: Adam L. Hoeflich

Atty. for: Bartlit Beck LLP

Address: 54 W. Hubbard Street

City: Chicago          State: IL

Zip: 60654

Telephone: 312-494-4400

Primary Email: adam.hoeflich@bartlitbeck.com

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), for its Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant Vincent Prieur, alleges as follows:

### INTRODUCTION

1.     Citadel Securities seeks immediate injunctive relief to maintain the status quo pending a private mediation initiated by Citadel Securities (and potential arbitration) pursuant to the parties' Mediation/Arbitration Agreement. Citadel Securities former executive, Prieur, has joined a key competitor that was deceptively and surreptitiously formed by other former Citadel Securities executives in violation of their obligations to Citadel Securities. Prieur was intimately involved over the course of several months in the research and development of Citadel Securities' entire highly confidential crypto trading and market making strategy. Unless enjoined by the Court, Prieur threatens to use Citadel Securities' highly confidential information to assist this unlawful enterprise in competing unfairly with Citadel Securities and causing Citadel Securities irreparable harm.

2.     Prieur is a former senior vice president in the Office of the Chief Operating Officer at Citadel Securities. He has a degree in economics from the London School of Economics and an MBA from Harvard Business School. Prior to working at Citadel Securities, he worked at the London Stock Exchange and McKinsey & Co.

3.     Prieur is a well-educated and experienced businessperson who earned significant compensation at Citadel Securities. He had access and visibility into valuable confidential information critical to the company's business. In particular, Prieur was a key member of the Citadel Securities team that in 2021 researched, analyzed, and evaluated opportunities and developed a strategy for the Company to enter the cryptocurrency ("crypto") space. In his 2021 annual performance evaluation, Prieur identified his "Accomplishment 1" as "lead[ing] CitSec's foray into crypto." In March 2022, when Citadel Securities, through its affiliate, executed its first systematic crypto trade based on the confidential information that Prieur and his team created and gathered relating to crypto, Prieur was one of a small group of recipients of an email celebrating the "milestone" and the "[g]reat accomplishment!"

4.     Four days after Citadel Securities' first systematic crypto trade, Prieur resigned from the company. He was subject to a non-compete agreement (the "Non-Compete Agreement") into which he had entered that prohibited him from engaging in "Competitive Activity" for 15 months after the end of his employment (the "Restricted Period"). He receives monthly payments from Citadel Securities of $15,000–$18,000 per month during the Restricted Period, provided he complies with his obligations.

5.     In September 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"). Portofino is a Swiss-based "market-making firm for cryptocurrencies" that two former Citadel Securities employees founded. One of these founders

worked with Prieur in the same suite of the Office of the Chief Operating Officer at Citadel Securities. Portofino provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the counter," and claims to have been operating in "stealth mode" and "building a high frequency trading platform." Portofino is a "Competitive Enterprise" with Citadel Securities as defined in the employment agreements that Prieur executed with Citadel Securities.[1] Prieur's employment at Portofino constitutes "Competitive Activity" under his Non-Compete Agreement, and Prieur has breached the Non-Compete Agreement as a result.

6. Citadel Securities initiates this lawsuit to enjoin Prieur from continuing to breach his Non-Compete Agreement by working at Portofino and from using or disclosing Citadel's confidential information and business methods, for which Citadel can never be compensated. No adequate remedy at law exists.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over Prieur because he consented to this Court's jurisdiction in the Non-Compete Agreement and a separate Mediation/Arbitration Agreement that he executed with Citadel Securities on September 26, 2019.

8. Venue is proper in this Court as both parties agreed in the Non-Compete Agreement and Mediation/Arbitration Agreement to the resolution of disputes in the state courts in Illinois, and the cause of action arises from transactions and activities in Cook County.

9. The Mediation/Arbitration Agreement provides that Citadel Securities or Prieur "may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or

---

[1] Citadel Securities is in a separate legal dispute with Portofino's founders relating to allegations of unlawful conduct in establishing Portofino.

to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration, or court proceedings." The Non-Compete Agreement and the Mediation/Arbitration Agreement also provide that Prieur consents to "the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois," and that he "waive[s] any claim that the courts in Delaware or Illinois are an inconvenient forum."

10. The Non-Compete Agreement and Mediation/Arbitration Agreement also provide that Delaware law governs Prieur's employment agreements, and that he agrees "to accept service of any court filings and process by delivery to my most current home address on record with Citadel [Securities] via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process."

## PARTIES

11. Plaintiff Citadel Securities is a limited liability company registered in Delaware and with a principal place of business in the City of Chicago, Cook County, Illinois for the full time that Prieur was employed by Citadel Securities.

12. Defendant Vincent Prieur was an employee of Citadel Securities in its New York office from September 2019 through March 2022. He is a citizen of France and the United Kingdom. On information and belief, he maintains residences in New York City and Paris.

## FACTUAL ALLEGATIONS

### I.     Citadel Securities Is A Leading Market Maker Active In Crypto

13. Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. A "market maker" is an entity that stands ready to fill orders for a particular security or currency, and upon receiving an order, fills that order with available inventory or by sourcing liquidity from an exchange or other market venue. Using proprietary intellectual property and highly skilled personnel, Citadel

4

Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing.

14.     Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties.

15.     Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process.  A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia executed its first systematic crypto trade. That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. Furthermore, the

company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies.

## II.    Prieur Played A Lead Role In Researching Citadel Securities' Crypto Opportunities And Developing Its Crypto Strategy

16.    In April 2019, Prieur began his employment with Citadel Securities as a Business Manager in the company's London office. In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022.

17.    Before joining Citadel Securities, Prieur obtained an undergraduate degree in economics from the London School of Economics in 2010. In 2017, he obtained an MBA from Harvard Business School. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, Prieur worked as an associate consultant at McKinsey & Co.

18.    At Citadel Securities, Prieur worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. In particular, Prieur had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, he was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. Prieur and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics.

19.     In May 2021, Prieur helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information that Prieur and his team had created and gathered during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and geographic information, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees who had prior crypto experience before joining the company; and other information.

20.     In the months that followed, Prieur oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. Among other activities, Prieur coordinated and met with various internal departments and external entities to gather additional information and gauge potential partnerships; compiled and mapped the company's external outreach relating to crypto, including with companies focused on data and research, clearing and settlement, lending, and trading technology; assisted with decisions both on the internal reassignment of employees to work on crypto matters and with external recruiting to fill a wide range of positions needed for systematic trading, market making, and other endeavors in the crypto space; and summarized and internally circulated his team's thoughts on the many crypto-related workstreams his team was managing.

21.     Reflecting the relative importance of his crypto work, Prieur listed in his year-end performance assessment as "Accomplishment 1" for 2021 as: "Lead[ing] CitSec's foray into

crypto." He also listed as part of "Accomplishment 1": "delivered an initial plan and diagnostic for trading crypto for C-suite," and "review/initial interaction with 20+ vendors and exchanges." Later in that same self-assessment, Prieur stated that he had "confirmed my ability to deliver on high-visibility items," and listed "Crypto strategy kick off" as an example. In the portion of the performance assessment completed by others, Prieur's manager wrote that Prieur had "excellent strategic perspective," and that he was "one of the strongest on the team when it comes to evaluating a new opportunity or challenge from a conceptual problem solving perspective," and that a "[r]ecent example[] include[d] crypto." In communications in early 2022, Prieur's manager told Prieur that he "need[ed] to be the aggregator of all things crypto in the US and [others at Citadel Securities] need to keep you fully in the loop."

22.     By early 2022, Prieur's efforts researching, analyzing, and evaluating crypto to create valuable confidential information for Citadel Securities bore fruit. On March 14, 2022, Citadel Securities' affiliate in Asia executed its first systematic trade in crypto. An email announcing and celebrating the occasion was circulated that day to the CEO and other senior employees of Citadel Securities. The email recognized that this "exciting milestone" would not have been possible "without the relentless efforts" from across the company, and stated that "one simply cannot be more impressed by the focus and dedication of all the colleagues who have been a part of this." The email was forwarded to Prieur and two others with the message: "We came up with this date if you guys remember!"

23.     Thus, Citadel Securities had spent significant time and treasure developing confidential information to enter the crypto space, and through his work Prieur was a part of and exposed to that. Having contributed to it, Prieur understands the significant competitive strategic advantages that Citadel Securities built through its research, analysis, and evaluation of crypto and

how Citadel Securities' existing systems and information could be leveraged in the crypto space. Indeed, in the employment agreements that he executed after joining Citadel Securities in New York, Prieur acknowledged that "Citadel LLC and its affiliates . . . conduct a broad and evolving range of businesses and have devoted considerable resources to developing Confidential Information and that such Information is key to Citadel's competitive advantage and business," and that "during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information."

24.     Because of the nature of his work and the sensitivity of the confidential information to which he had access, Prieur was highly compensated at Citadel Securities. In addition to his base salary, which was $215,000 in 2021, he had the opportunity to earn significant bonus and incentive compensation. For example, in 2021, his total compensation was $500,000.

25.     Because Citadel Securities' confidential information regarding crypto provides it with a significant competitive advantage, this information would be highly useful to those operating in similar areas. Moreover, Citadel Securities' market making and systematic trading in traditional equities and other products is the product of deep investment in technology and intellectual property, and confidential information around those foundations has applications and competitive advantages in the crypto space. Accordingly, Citadel Securities has taken numerous measures to protect the integrity of such confidential information, including with regard to Prieur.

26.     Citadel Securities has implemented measures protecting all of its confidential information, including but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel

Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions.

### III.     Prieur's Non-Compete Agreement

27.     On September 26, 2019, Citadel Securities and Prieur entered into the Non-Compete Agreement and several other employment agreements. The Non-Compete Agreement, , which was supported by multiple forms of valuable consideration, including a guaranteed incentive award of $58,500 for 2019, substantial monthly payments during the restricted period described below, and a separate $500 payment, provides that during Prieur's employment with Citadel Securities, and after the end of his employment during a "Restricted Period" of up to 15 months, as elected by Citadel Securities, Prieur would not "directly or indirectly" engage in any "Competitive Activity." The Non-Compete Agreement provides that if Prieur violates that, the Restricted Period "shall be extended by a period of time equal to that period beginning when the activities constituting such violation commended and ending when the activities constituting such violation terminated." The Non-Compete Agreement also provides that in exchange for his compliance and in addition to the consideration already paid to him, Citadel Securities would pay Prieur monthly payments during the Restricted Period of one twelfth of his base salary (~$17,900) each month for the first six months, $15,000 in months 7-12, and $18,000 in months 13-15.

28.     The definitions for all defined terms in the Non-Compete Agreement are set forth in the parties' Mediation/Arbitration Agreement signed on the same day, which also defines "Citadel" to include "Citadel Securities Americas LLC and its affiliates."

29.     "Competitive Activity" is defined to include, among other things:

- Becoming an "employee . . . of a Competitive Enterprise in a capacity . . . where there is a reasonable possibility that [Prieur] may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information," or "in a capacity that is similar to the capacity [he] was in, where [he] provide[s] services that are similar to the services [he] provided, or with responsibilities that are similar to the responsibilities [he] had, in each case during the final 24 months [he] was employed at Citadel;"

30. "Competitive Enterprise" is defined to include "any business or operation, irrespective of form . . . that [] engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities."

31. "Citadel Business Activities" are defined to include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; . . . advisory activities; . . . or any other business activities engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [Prieur's] employment with Citadel."

32. "Confidential Information" is defined to include "know-how, other proprietary information or other information that (i) is not generally known to the public and (ii) relates to Citadel, any Citadel Client or its or their activities," and specifically identifies "internal financial affairs," "business strategies," "skill-set and experience of personnel," "automated trading strategies," "investment opportunities," and "information concerning the business relationship between Citadel and any person who sources of information, expertise or experience Citadel relies upon in its business" as being covered.

33. The Non-Compete Agreement further provided that during the Restricted Period, Prieur must provide Citadel Securities with 14 days advance notice prior to becoming "employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." The Non-

Compete Agreement also requires Prieur to notify any employers during the Restricted Period of his obligations under the Non-Compete Agreements.

34.    In the Non-Compete Agreement, Prieur also acknowledged that "[i]f I leave Citadel [Securities] and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously."

35.    Prieur agreed that Citadel Securities is entitled to injunctive relief in the event of his breach or threatened breach of the Non-Compete Agreement. Prieur specifically acknowledged:

> Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate Citadel for losses resulting from my breach, Citadel is entitled to injunctive relief . . ., specific performance . . . , and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages.

36.    Prieur further agreed in the Non-Compete Agreement that "the scope and duration of the restrictions and limitations described [] are reasonable and necessary to protect the protectable business interests of Citadel."

37.    As a highly educated and sophisticated businessperson, Prieur's execution of the Non-Compete Agreement, and other agreements discussed herein was knowing, willful and informed.

## IV.    Prieur Leaves Citadel Securities and Joins A Competitor

38.    In January 2022, Prieur informed Citadel Securities of his resignation from the company.

39.     On March 7, 2022, he signed a Transition Letter stating that his employment with Citadel Securities would continue through March 18, 2022. The Letter set certain goals for the transition period, and in return Citadel Securities agreed to pay him a "Transition Bonus" of $98,850.

40.     On March 18, 2022, Prieur signed a Cessation of Employment Agreement & General Release. In that Agreement, Citadel Securities provided formal notice that it had elected a Restricted Period of 15 months as provided for and defined in the Non-Compete Agreement, that would run until June 19, 2023. The Agreement stated that Prieur would receive monthly Restricted Period payments as defined in the Non-Compete Agreement, so long as he complied with the terms of the Non-Compete Agreement. The Agreement also stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable."

41.     On September 9, 2022, Prieur emailed Citadel Securities that he had joined a new employer, Portofino Technologies.

42.     Portofino is a "market-making firm for cryptocurrencies" based in Zug, Switzerland. It was founded by Leonard Lancia and Alex Casimo, two former Citadel Securities employees, "with the backing of $50 million from venture capitalists." Prieur and Casimo worked together in the same suite in the Office of the Chief Operations Officer at Citadel Securities. Citadel Securities is in a separate legal dispute with Lancia and Casimo.

43.     According to Casimo, Portofino is "building a high frequency trading platform that's 100% cloud based." The company provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the

counter." It has already "traded billions of dollars in so-called stealth mode," and is now out of "stealth-mode." Portofino has 35 employees in London, Singapore, and New York.

## V.   Prieur's Employment with Portofino Technologies Violates His Contractual Obligations

44.     Under the Non-Compete Agreement, Prieur is required to provide Citadel Securities with 14 days advance notice prior to becoming employed "in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." Prieur did not provide Citadel Securities with notice of his employment with Portofino until *after* he joined that company.

45.     Moreover, Portofino is a Competitive Enterprise. A Competitive Enterprise includes "any business or operation" that "engages in, or proposes or plans to engage in, any activity that is identical to or similar to any Citadel Business Activity," and "Citadel Business Activities" include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution . . . and investment activities . . . engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [his] employment." As discussed, Citadel Securities was researching, analyzing, and evaluating crypto strategies – and in fact operationalizing and executing them – while Prieur was employed there. Indeed, Prieur was a leader in those efforts. Additionally, Citadel Securities traded in crypto based on the confidential information that Prieur created and was exposed to relating to crypto. Thus, Portofino's crypto efforts and trading, led by two former Citadel Securities employees, makes Portofino a Competitive Enterprise. Citadel Securities is currently in a separate legal dispute with the founders of Portofino.

46.     Critically, the Confidential Information Prieur acquired while employed at Citadel Securities relating to crypto will enable Portofino to develop its own crypto efforts and strategies to compete with Citadel Securities. Citadel Securities is harmed when other entities or people unfairly use its confidential information to trade crypto currencies, because the more entities or people engaging in these activities, the more competition exists in the market and profits are competed away. Portofino competes with Citadel to profit from trading and market making for digital assets, including in the areas of developing leading technology, developing automated and systematic trading strategies, and identifying, recruiting, and hiring the best talent.

47.     In September 2022, after learning about Prieur's employment at Portofino, Citadel Securities contacted Prieur by phone and email asking him to discuss his activities. In those communications, Citadel Securities told Prieur that it was preparing to file in court in Chicago based on, among other things, his breach of his Non-Compete Agreement by commencing employment with Portofino. Citadel Securities further told Prieur that it intended to appear before the assigned judge on September 16, 2022 to request an emergency order enjoining his employment at Portofino, and that it would send him copies of any papers that were filed with the court to his email address and by overnight mail. As of the time of this filing, Prieur had not responded to Citadel Securities' most recent communication to him regarding the planned filing of this action.

48.     On September 16, 2022, pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a demand with the American Arbitration Association for expedited private mediation in Chicago. If mediation is not successful, there is a potential for private arbitration with the American Arbitration Association in Chicago as well.

## COUNT I: BREACH OF THE NON-COMPETE AGREEMENT

49.    Citadel Securities repeats and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

50.    The Non-Compete Agreement is a valid and enforceable contract.

51.    Citadel Securities has performed every obligation it owes to Prieur under the Non-Compete Agreement.

52.    The Non-Compete Agreement requires that Prieur must notify Citadel Securities at least 14 days prior to commencing any new employment during the Restricted Period.

53.    The Non-Compete Agreement prohibits Prieur from engaging in Competitive Activity during the Restricted Period.

54.    Prieur joined Portofino without informing Citadel Securities at least fourteen days in advance.

55.    Moreover, Prieur engaged in Competitive Activity during the Restricted Period by joining Portofino, which is a Competitive Enterprise.

56.    Prieur therefore breached the Non-Compete Agreement.

57.    Citadel Securities has no adequate remedy at law.

58.    Citadel Securities will suffer irreparable harm if Prieur is not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Citadel Securities prays that the Court enter a temporary restraining order, preliminary injunction, and judgment in its favor:

(i)    Enjoining Prieur, and those acting in concert with him, from breaching the terms of his Non-Compete Agreement with Citadel Securities, from being employed by Portofino during the Restricted Period, using or disclosing Citadel Securities' confidential information; and

(ii)    For all such further relief as may be appropriate.


Dated:  September 16, 2022                    */s/ Adam L. Hoeflich*

One of Its Attorneys

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60654
(312) 494-4400
Firm ID No. 31210

John M. Dickman
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37976

*Attorneys for Plaintiff Citadel Securities
Americas Services LLC*

## **VERIFICATION**

Under penalties as provided by law, the undersigned, Heath P. Tarbert, Chief Legal Officer for Citadel Securities Group, being first duly sworn under oath, deposes and states that he has read the foregoing Verified Complaint for Injunctive and Other Relief, and on the basis of his personal knowledge, review of appropriate business records and discussions with relevant knowledgeable personnel, he believes the allegations contained therein are true and correct except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he believes same to be true to the best of his knowledge, information and belief. This verification is made by deponent and not by Plaintiff because Plaintiff is a limited liability company and deponent is a duly authorized representative thereof.

_____
Heath P. Tarbert

Sworn to and subscribed before me this _____th day of September, 2022.

_____
Notary Public

My Commission Expires: ___8/31/2025___

```
Official Seal
Sara Anne Verstynen
Notary Public State of Illinois
My Commission Expires 8/31/2025
```

Appearance and Jury Demand *                               (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY     DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid            ☐ 0904 - Fee Waived

                    ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand *    ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury

                    ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of:    ◉ Plaintiff    ○ Defendant

Litigant's Name: Citadel Securities Americas Services LLC

Signature: /s/ Adam L. Hoeflich

☑ Initial Counsel of Record    ☐ Pro Se (Self-represented)     ☐ 2810 Rule 707 Out-of-State Counsel

☐ Additional Appearance    ☐ Substitute Appearance           (pro hac vice)

◉ Atty. No.: 31210      ○ Pro Se 99500

Name: Adam L. Hoeflich

Atty. for (if applicable):

Bartlit Beck LLP

Address: 54 W. Hubbard Street

City: Chicago

State: IL   Zip: 60654   Phone: (312) 494-4400

Primary Email: adam.hoeflich@bartlitbeck.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:

☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ Adam L. Hoeflich

Attorney for ◉ Plaintiff ○ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 1

Appearance and Jury Demand *                                                    (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____  DEPARTMENT/_1st_ DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance      ☐ 0900 - Fee Paid                            ☐ 0904 - Fee Waived
                          ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *           ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury
                          ☐ 1904 - Appearance and Jury Demand/No Fee Paid  ☐ Six-person Jury

The undersigned enters the appearance of:   ⦿ Plaintiff   ○ Defendant

Litigant's Name: _Citadel Securities Americas Services LLC_

Signature: /s/ _John M. Dickman_

☐ Initial Counsel of Record   ☐ Pro Se (Self-represented)   ☐ 2810 Rule 707 Out-of-State Counsel
                                                                  (pro hac vice)

☑ Additional Appearance       ☐ Substitute Appearance

⦿ Atty. No.: _37976_          ○ Pro Se 99500

Name: _John M. Dickman_

Atty. for (if applicable):

_Ogletree, Deakins, Nash, Smoak & Stewart, P.C._

Address: _155 North Wacker Drive, Suite 4300_

City: _Chicago_

State: _IL_  Zip: _60606_  Phone: _(312) 558-1255_

Primary Email: _john.dickman@ogletree.com_

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ _John M. Dickman_
Attorney for  ⦿ Plaintiff   ○ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Page 1 of 1

Appearance and Jury Demand *                                            (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY     DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance     ☐ 0900 - Fee Paid                   ☐ 0904 - Fee Waived

                       ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand *     ☐ 1900 - Appearance and Jury Demand/Fee Paid      ☐ Twelve-person Jury

             ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of:    ⦿ Plaintiff    ◯ Defendant

Litigant's Name:    Citadel Securities Americas Services LLC

Signature: /s/    Christopher Y. Lee

☐ Initial Counsel of Record     ☐ Pro Se (Self-represented)     ☐ 2810 Rule 707 Out-of-State Counsel
                                                           (pro hac vice)

☑ Additional Appearance     ☐ Substitute Appearance

⦿ Atty. No.: 42418     ◯ Pro Se 99500

Name:   Christopher Y. Lee

Atty. for (if applicable):

Sidley Austin LLP

Address:   One South Dearborn

City:   Chicago

State: IL   Zip: 60603   Phone: (312) 853-7000

Primary Email:   chris.lee@sidley.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:

☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                                 /s/   Christopher Y. Lee

                                  Attorney for ⦿ Plaintiff   ◯ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Page 1 of 1

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|
| Cook ___ COUNTY | | |

| Instructions ▼ | | |
|---|---|---|
| Enter above the county name where the case was filed. | Citadel Securities Americas Services LLC _____<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | v. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | Vincent Prieur _____<br>**Defendant / Respondent** *(First, middle, last name)* | **Case Number** _____ |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

| | |
|---|---|
| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | |
|---|---|
| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Defendant/Respondent's address and service information:**<br> a. Defendant/Respondent's primary address/information for service:<br> Name *(First, Middle, Last)*: ___Vincent Prieur___<br> Registered Agent's name, if any: _____<br> Street Address, Unit #: ___91 Avenue Emile Zola___<br> City, State, ZIP: ___75015 Paris, France___<br> Telephone: ___(929) 384-2881___ Email: ___v.n.prieur@gmail.com___ |
| In **1b**, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here:<br> Name *(First, Middle, Last)*: ___Vincent Prieur___<br> Street Address, Unit #: ___45 W. 69th Street, Apt. 6___<br> City, State, ZIP: ___New York, NY 10023___<br> Telephone: ___(929) 384-2881___ Email: ___v.n.prieur@gmail.com___ |
| In **1c**, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent:<br> ☐ Sheriff ☐ Sheriff outside Illinois: _____<br> *County & State*<br> ☑ Special process server ☐ Licensed private detective |

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:**<br>Amount claimed:   $ _____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*:   Citadel Securities Americas Services LLC<br>Street Address, Unit #:   131 S. Dearborn Street<br>City, State, ZIP:   Chicago, IL 60603<br>Telephone:  (312) 395-2464        Email:   jill.hutchison@citadel.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**<br><br>☐ a.  To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address: _____<br>City, State, ZIP: _____ |
| In **4a,** fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.* | ☐ b.  Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>  *Date*                 *Time*                            *Courtroom*<br>**In-person at:**<br>_____<br>  *Courthouse Address*        *City*                    *State*       *ZIP*<br>OR |
| In **4b,** fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance")**:**<br>  By telephone: _____<br>        *Call-in number for telephone remote appearance*<br>  By video conference: _____<br>          *Video conference website*<br>  _____<br>  *Video conference log-in information (meeting ID, password, etc.)*<br><br>Call the Circuit Clerk at: _____ or visit their website<br>        *Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>   *Website* |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____     *Seal of Court* |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **Clerk of the Court:** _____<br><br>**This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>      *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

SU-S 1503.2                                   Page 2 of 4                                   (06/21)

Case: 1:22-cv-05185 Document #: 1 Filed: 09/22/22 Page 26 of 192 PageID #:26

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Cook _____ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | Citadel Securities Americas Services LLC _____<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>Vincent Prieur _____<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

_____
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:

Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address, Unit#: _____

City, State, ZIP: _____

And left it with: _____
*First, Middle, Last*

Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____

and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on _____ , 20 _____ .

☐ On the Corporation's agent, _____
*First, Middle, Last*

Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____

On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

Address: _____

City, State, ZIP: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:** _____

*Signature by:*  ☐ Sheriff
                 ☐ Sheriff outside Illinois:

_____
*County and State*

☐ Special process server
☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return: $ _____
Miles _____  $ _____
Total           $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

## EMERGENCY MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), through its undersigned attorneys, moves this Court, pursuant to 735 ILCS 5/2-202, for leave to serve Defendants Vincent Prieur by a private process server. In support of this motion, Citadel Securities states as follows:

1. Citadel Securities seeks the appointment of It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, PERC No. 117.000885, as special process server in this case.

2. It's Your Serve is not a party to this action and will use a process server over the age of 18.

3. Exigent circumstances exist for the appointment of a special process server. Specifically, as set forth more fully in the Verified Complaint for Injunctive and Other Relief and the Emergency Motion for a Temporary Restraining Order filed simultaneously herewith, the Defendant Prieur is in breach of his Non-Compete Agreement with Citadel Securities and, upon information or belief, has or threatens to use or disclose confidential information of Citadel Securities.

4.      Based upon the foregoing, it is imperative that Citadel Securities proceed quickly and, if at all possible, avoid any delay which may otherwise occur should service of process be attempted through the office of the Sheriff.

5.      Service of the summons and Verified Complaint will be in accordance with the Illinois Code of Civil Procedure and Illinois Supreme Court Rules.

6.      Under penalties provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth herein are true and correct or on information and belief, certifies that he believes the same to be true.

WHEREFORE, Citadel Securities requests that his motion be granted.

Dated:  September 16, 2022                    Respectfully submitted,

                                              CITADEL SECURITIES AMERICAS SERVICES LLC

                                              By: */s/ Adam L. Hoeflich*

                                              One of Its Attorneys

                                                  John Dickman
                                                  **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
                                                  155 North Wacker Drive, Suite 4300
                                                  Chicago, Illinois  60606
                                                  (312) 558-1255
                                                  Firm ID No. 37976

                                                  Daniel D. Rubinstein
                                                  Christopher Y. Lee
                                                  **SIDLEY AUSTIN LLP**
                                                  One South Dearborn
                                                  Chicago, Illinois  60603
                                                  (312) 853-7000
                                                  Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )     **Case No.** ) |
| **VINCENT PRIEUR,** | ) ) |
| Defendant. | ) |

## ORDER APPOINTING SPECIAL PROCESS SERVER

This cause coming to be heard on Citadel Securities Americas Services LLC's Emergency Motion for Appointment of Special Process Server, the Court having reviewed the motion and being fully advised,

IT IS HEREBY ORDERED that It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, is appointed as special process server in this case.

Date: _____  Judge: _____

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Plaintiff's Motion for Appointment of Special Process Server** on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: <u>*/s/ Christopher Y. Lee*</u>
Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )      **No.** |
| | ) |
| **VINCENT PRIEUR,** | ) |
| | ) |
| **Defendant.** | ) |

**PLAINTIFF'S EMERGENCY MOTION
<u>FOR TEMPORARY RESTRAINING ORDER</u>**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), pursuant to 735 ILCS 5/11-101, hereby moves this Court for a Temporary Restraining Order.

For the reasons stated in the Plaintiff's Memorandum of Law in Support of this motion, Plaintiff respectfully requests for an order, in the form attached hereto, maintaining the *status quo* by enjoining Defendant Vincent Prieur from employment at Portofino Technologies.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

1

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Emergency Motion for Temporary Restraining Order**, on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France

45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: */s/ Christopher Y. Lee*
Christopher Y. Lee

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| VINCENT PRIEUR, | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), respectfully requests the immediate intervention of the Court to maintain the status quo pending mediation of the underlying dispute pursuant to and in accordance with the parties' Mediation/Arbitration Agreement. On March 18, 2022, Defendant Vincent Prieur resigned from his position at Citadel Securities. On September 9, 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"), a competitor of Citadel Securities in the cryptocurrency ("crypto") space. Prieur's employment with Portofino is a violation of his Non-Compete Agreement with Citadel Securities. Citadel Securities' valuable and proprietary confidential information is at stake. Citadel Securities will suffer irreparable harm if Prieur is not enjoined immediately. Accordingly, Citadel Securities' motion for a temporary restraining order should be granted.

## BACKGROUND

### A.    Citadel Securities' Business

Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. (Citadel Securities'

Verified Complaint for Injunctive and Other Relief ("Compl.") ¶ 13.) Using proprietary intellectual property and highly skilled personnel, Citadel Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing. (*Id.*)

Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. (*Id.* ¶ 14.) Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. (*Id.*) Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties. (*Id.*)

Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. (*Id.* ¶ 15.) By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process. (*Id.*) A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia

executed its first systematic crypto trade. (*Id.*) That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. (*Id.*) Furthermore, the company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies. (*Id.*)

Citadel Securities has implemented measures protecting its confidential information including, but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions. (*Id.* ¶ 26.)

### B.  Defendant's Employment with Citadel Securities

Defendant commenced employment at Citadel Securities in April 2019 as a Business Manager in the company's London office. (*Id.* ¶ 16.) In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022. (*Id.*) Prior to joining Citadel Securities, Defendant obtained an undergraduate degree in economics from the London School of Economics in 2010, and an MBA from Harvard Business School in 2017. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, he worked as an associate consultant at McKinsey & Co. (*Id.* ¶ 17.)

At Citadel Securities, Defendant worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. (*Id.* ¶ 18.) In particular, he had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, Defendant was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. (*Id.*) Defendant and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. (*Id.*) They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics. (*Id.*)

In May 2021, Defendant helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. (*Id.* ¶ 19.) The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information Defendant and his team had gathered and created during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees

4

who had prior crypto experience before joining the company; and other information. (*Id.*) In the months that followed, Defendant oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. (*Id.* ¶ 20.)

In connection with his hiring and as a condition of his employment, Defendant executed a Non-Compete Agreement, Non-Disclosure Agreement ("NDA"), Non-Solicitation Agreement, and Mediation/Arbitration Agreement. (*Id.* ¶ 27.) As part of the Non-Compete Agreement, Defendant agreed that he would not perform similar services for, or serve in a similar role with any competitor of Citadel Securities for a period of up to 15 months. (*Id.* ¶¶ 27–29.) Under this Non-Compete Agreement, Citadel Securities is required to pay Defendant $15,000–$18,000 each month he is restricted from working for a competitor so long as he complies with his obligations under that Agreement. (*Id.* ¶ 27.) Additionally, as part of the Mediation/Arbitration Agreement, Defendant agreed to arbitrate any disputes with Citadel Securities before the American Arbitration Association ("AAA"). However, the Mediation/Arbitration Agreement specifically allows either party to seek a temporary injunction from a "court of competent jurisdiction" to prevent the other party from breaching any agreement until the dispute has been submitted to and resolved by the AAA.

## II.    Defendant's Resignation and the Instant Litigation

In January 2022, Defendant informed Citadel Securities that he was resigning his position, and on March 18, 2022, he resigned. (*Id.* ¶¶ 38, 40.) On September 9, 2022, Defendant emailed Citadel Securities that he had joined a new employer, Portofino Technologies. (*Id.* ¶ 41.) Portofino is a competitor of Citadel Securities in the crypto space. (*Id.* ¶¶ 42–43, 45.)

Pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a mediation request before the AAA on September 16, 2022 seeking redress for Defendant's actions. (*Id.* ¶ 48.) If mediation is not successful, there is a potential for private arbitration with

the AAA in Chicago as well. (*Id.*) Citadel Securities requests that this Court enter a temporary restraining order to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

## LEGAL STANDARD

Preliminary injunctive relief such as a temporary restraining order is a "provisional remedy granted to preserve the status quo, pending a hearing on the merits of the case." *Dam, Snell & Taveirne, Ltd. v. Verchota*, 324 Ill. App. 146, 155, 754 N.E.2d 464, 471 (1st Dist. 2001). Under Illinois law, the status quo is the "last, actual, peaceable, uncontested status" before litigation. *Jones v. Dep't of Public Aid*, 272 Ill. App. 3d 184, 193, 867 N.E. 2d 563, 572 (3d Dist. 2007). Temporary restraining orders and preliminary injunctions are appropriate to maintain the status quo pending the outcome of arbitration proceedings. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993); *OptionsCity Software, Inc. v. Baumann*, 2015 WL 3855622, at *2 (N.D. Ill. June 19, 2015) (issuing a temporary restraining order to enjoin solicitation of employer's customers pending arbitration).

Whether to grant a temporary restraining order is within "the sound discretion of the trial court." *Dam, Snell & Taveirne, Ltd.*, 324 Ill. App. at 155, 754 N.E.2d at 471. A party seeking a temporary restraining order must show: (1) it has a protectible interest; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) it has no adequate remedy at law; and (4) a likelihood of success on the merits. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 567, 927 N.E.2d 88, 95 (2010). However, the movant "is not required to make out a case which would entitle [it] to judgment at trial; rather, [it] need only show that [it] raises a 'fair question' about the existence of [its] right and that the court should preserve the status quo until the case can be

decided on the merits." *Id.* Here, Citadel Securities has certainly raised a "fair question" sufficient for this Court to enter a temporary restraining order maintaining the "last, actual, peaceable, uncontested status" between the parties (specifically, Defendant not working for Citadel Securities' direct competitor) pending the outcome of the mediation proceeding.

## ARGUMENT

### I.  Citadel Securities Has a Legally Protectible Interest

Citadel Securities has a legally protectible legitimate business interest in enforcing the Non-Compete Agreement to protect its confidential information, namely its opportunities and strategies relating to crypto. Illinois law recognizes that a company has a protectible interest in confidential information. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011) (acquisition of confidential information is a factor that should be considered when finding a legitimate business interest in enforcement of a restrictive covenant); *Segerdahl Corp. v. Giovanni*, 2022 IL App (1st) 211610-U ¶ 34 (employer seeking injunction had a "clearly ascertained right in need of protection by virtue of its legitimate business interest in protecting its confidential information"). "Confidential information" is information that an employer has that is not generally known to competitors and provides the employer with a competitive advantage. *The Agency, Inc. v. Grove*, 362 Ill. App. 3d 206, 216, 839 N.E.2d 606, 615 (2d Dist. 2005).

Here, while employed at Citadel Securities, Defendant became intimately familiar with, and participated in the development and gathering of, confidential information relating to Citadel Securities' crypto efforts, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates;

evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding approaches to structure and affiliations; staffing information, including information on Citadel Securities employees who had prior crypto experience before joining the company; and other information. Further, as discussed in detail above, Citadel Securities has implemented extensive measures to ensure that its confidential information is not disclosed outside of Citadel Securities (including to its own investors). Thus, Citadel Securities has a protectible interest in its confidential information related to its crypto efforts.

## II.        Citadel Securities is Likely to Succeed on the Merits of Its Claim

Citadel Securities is likely to succeed on the merits of its breach of Non-Compete Agreement claim because Defendant has accepted employment with Portofino, a direct competitor with Citadel Securities in the crypto space. Defendant assented to the Non-Compete Agreement in entering into his employment agreement that was supported by adequate consideration, and has waived his right to contest the enforceability of the Non-Compete Agreement. Indeed, Defendant's separation/release agreement with Citadel Securities explicitly stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable." (Compl. ¶ 40.) Moreover, even if Defendant could challenge the terms of the Non-Compete Agreement, the restrictions in that agreement are enforceable.

### A.        The Non-Compete Agreement Is Enforceable.

Under Delaware law,[1] a covenant not to compete in a valid employment agreement is enforced if (1) "its purpose is to protect the legitimate interests of the employer" and (2) "its duration is reasonably limited temporally and its scope is reasonably limited geographically."

---

[1] Delaware law is the chosen law of the parties and governs the Non-Compete Agreement. (Compl. ¶ 8.)

*MQ Assocs. V. N. Bay Imaging, LLC*, 2007 WL 2566022, at *3 (N.D. Fla. Aug. 31, 2007) (Delaware law) (citing *McCann Suveyors, Inc. v. Evans*, 611 A.2d 1, 4-5 (Del. Ch. 1987)).[2]

Citadel Securities has a legitimate interest in protecting itself form a former employee's use of its confidential information against it. Where "valuable trade secret or other proprietary information has been learned by the defendant and, therefore, his competition with plaintiff's business may be particularly effective and unfair," the employer has a legitimate economic interest at stake and the provision is "likely to be specifically enforced." *McCann*, 611 A.2d at 4.

Additionally, the time and geographic restrictions are reasonable. The reasonableness of the duration is "based on the nature of the employee's position and the context of a particular industry." *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *14 (Del. Ch. 2002) (holding two-year duration reasonable time restriction). Here, the duration of the non-compete provision is limited to 15 months (it has been less than 6 months since Defendant left the company, with less than 10 months left to run on the non-compete). This time period is tailored to prevent Defendant's competitive use of the confidential information he gained from his employment with Citadel Securities. *See also Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215 ¶ 21, 972 N.E.2d 344, 350 (4th Dist. 2012) (enforcing a non-competition agreement with a two-year time restriction); *Gillespie v. Carbondale & Marion Eye Ctrs., Ltd.*, 251 Ill. App. 3d 625, 629, 622 N.E.2d 1267, 1270-71 (5th Dist. 1993) (same).

Likewise, the geographic scope of the agreement is reasonable. Where, as here, the employer's business "extends throughout the nation, or indeed even internationally," a non-competition agreement with no geographic limitation can be enforceable. *Research & Trading*

---

[2] Similarly, Illinois courts will enforce a non-competition agreement if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (2) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011).

*Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. 1992); *see also Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E.2d 1273, 1281 (1st Dist. 1985) (enforcing a non-competition agreement that contained a nationwide geographic restriction where the plaintiff company's activities were national in scope; *Zabaneh Franchises, LLC*, 972 2012 IL App (4th) 110215 ¶ 22, N.E.2d at 350 (finding geographical restrictions unnecessary to enforce non-compete agreement). Indeed, the Citadel Securities personnel that worked on crypto were spread across the company's offices and regions. Moreover, Defendant acknowledged in the Non-Compete Agreement that he understood that Citadel Securities' business is global in scope and the he understood "the need for the restrictions in this Agreement to be without limitation as to location."

In assessing the enforceability of a non-competition agreement, Illinois courts also consider the hardship to defendant and the effect upon the general public. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d at 396. Here, Defendant will not experience any hardship if the Non-Compete Agreement is enforced because the Non-Compete Agreement provides that Citadel Securities will pay Defendant $15,000–18,000 per month if he abides by its terms. The Non-Compete Agreement is also not contrary to the public interest and has no effect on the general public because it was entered into by two private parties and does not injure the public. *See Menasha Packaging Co, LLC v. Pratt Indus., Inc.*, 2017 WL 639634, at *7 (D.N.J. Feb. 15, 2017) (applying Illinois law) (no likely injury to the public when enforcing restrictive covenant in a "highly competitive industr[y]," particularly "where the public [is] still free to seek the services of the employee's new employer"); *see also City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566, 573, 678 N.E.2d 693, 698 (1st Dist. 1997) ("Public policy strongly favors the freedom to contract."). Additionally, the public interest is served by non-competition

agreements "necessary to protect one party from injury by the unfair use of the subject-matter of the contract by the other party." *First Health Group Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 229 (M.D. Pa. 2001) (applying Illinois law) (quoting *Union Trust & Sav. Bank of E. St. Louis v. Kinloch Long-Distance Tel. Co. of Mo.*, 258 Ill. 202, 101 N.E. 535 (1913)); *Menasha*, 2017 WL 639634, at *11 ("Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships.").

### III. Citadel Securities Will Suffer Irreparable Harm and Has No Adequate Remedy at Law

If Defendant is permitted to misappropriate and use Citadel Securities' confidential information, money damages would be insufficient to compensate Citadel Securities and the harm would irreparable. Where, as here, a former employee violates enforceable restrictive covenants, "ongoing competition itself [is] a sufficient basis" to find irreparable harm. *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 272, 880 N.E.2d 188, 198 (4th Dist. 2007); *see also Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 74, 589 N.E.2d 640, 648 (2d Div. 1992) ("Once a protectable interest is established, irreparable injury is presumed to ensue if the interest is not protected."). Indeed, no adequate remedy at law exists because "loss of competitive position is intangible, incapable of being measured." *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 401, 627 N.E.2d 21, 27 (1st Dist. 1993); *see also IDS Fin. Servs., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (holding that "[w]here trade secrets . . . are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable."). Thus, legal remedies alone cannot sufficiently redress the harm Defendant has inflicted and will inflict upon Citadel Securities, and Citadel Securities is entitled to an injunction to prevent those injuries.

## <u>CONCLUSION</u>

For these reasons, Citadel Securities respectfully requests that the Court grant Citadel Securities' Motion for a Temporary Restraining Order and enjoin Defendant from employment at Portofino to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

12

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES | ) | |
| AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF CITADEL SECURITIES AMERICAS SERVICES LLC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter having come before the Court on September 16, 2022, for the emergency motion of Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Plaintiff"), for a Temporary Restraining Order, notice having been given to Defendant, a hearing having been held, and the Court being fully advised and with good cause:

1.      Based on the evidence presented by Plaintiff, which consists of a Verified Complaint, this Court finds a substantial likelihood that Plaintiff will succeed on the merits of its cause of action. The evidence before the Court indicates that Defendant Vincent Prieur ("Defendant") violated his non-compete agreement with Plaintiff by joining Portofino Technologies, a competitive enterprise to Plaintiff. If proven, this action will very likely result in a finding of liability against Defendant on Plaintiff's claim.

2.      The Court finds that Plaintiff lacks an adequate remedy at law and would suffer irreparable harm in the absence of a Temporary Restraining Order. Plaintiff has presented sufficient evidence to show that its confidential information, which it has invested hundreds of millions of dollars in developing and protecting, is at risk due to Defendant's actions and

threatened actions. In this situation, the threat of irreparable harm is significant.

3.      The balance of harms weighs in favor of a Temporary Restraining Order. Plaintiff

has shown a meaningful risk of irreparable harm.

4.      The public interest is clearly served by granting a Temporary Restraining Order,

as the public interest is served by the enforcement of the parties' valid non-compete agreement.

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is

granted and IT IS HEREBY ORDERED that:

(a)     Defendant, within twenty-four (24) hours of the entry of this Order, must cease all

employment with and services rendered for Portofino Technologies;

(b)     Defendant shall preserve all documents (including electronically stored

information), devices, equipment, and materials in whatever form that are or could be relevant to

the allegations of the Verified Complaint;

(c)     Defendant, within twenty-four (24) hours of the entry of this Order, shall provide

to Plaintiff a declaration certifying his compliance with paragraphs (a) and (b) above;

(d)     This order shall remain in effect until modified by the Court.  A hearing is

scheduled for _____ __, 2022.


Entered on this _____ day of September, 2022      Judge: _____

| | | |
|---|---|---|
| John Dickman | Daniel D. Rubinstein | Adam L. Hoeflich |
| **OGLETREE, DEAKINS,** | Christopher Y. Lee | **BARTLIT BECK LLP** |
| **NASH, SMOAK &** | **SIDLEY AUSTIN LLP** | 54 West Hubbard Street |
| **STEWART, P.C.** | One South Dearborn | Chicago, IL 60654 |
| 155 North Wacker Drive, Suite | Chicago, Illinois  60603 | (312) 494-4400 |
| 4300 | (312) 853-7000 | Firm ID No. 31210 |
| Chicago, Illinois  60606 | Firm ID No. 42418 | |
| (312) 558-1255 | | |
| Firm ID No. 37978 | | |

*Attorneys for Plaintiff*

2

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), for its Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant Vincent Prieur, alleges as follows:

## INTRODUCTION

1.     Citadel Securities seeks immediate injunctive relief to maintain the status quo pending a private mediation initiated by Citadel Securities (and potential arbitration) pursuant to the parties' Mediation/Arbitration Agreement.  Citadel Securities former executive, Prieur, has joined a key competitor that was deceptively and surreptitiously formed by other former Citadel Securities executives in violation of their obligations to Citadel Securities. Prieur was intimately involved over the course of several months in the research and development of Citadel Securities' entire highly confidential crypto trading and market making strategy. Unless enjoined by the Court, Prieur threatens to use Citadel Securities' highly confidential information to assist this unlawful enterprise in competing unfairly with Citadel Securities and causing Citadel Securities irreparable harm.

2.      Prieur is a former senior vice president in the Office of the Chief Operating Officer at Citadel Securities. He has a degree in economics from the London School of Economics and an MBA from Harvard Business School. Prior to working at Citadel Securities, he worked at the London Stock Exchange and McKinsey & Co.

3.      Prieur is a well-educated and experienced businessperson who earned significant compensation at Citadel Securities. He had access and visibility into valuable confidential information critical to the company's business. In particular, Prieur was a key member of the Citadel Securities team that in 2021 researched, analyzed, and evaluated opportunities and developed a strategy for the Company to enter the cryptocurrency ("crypto") space. In his 2021 annual performance evaluation, Prieur identified his "Accomplishment 1" as "lead[ing] CitSec's foray into crypto." In March 2022, when Citadel Securities, through its affiliate, executed its first systematic crypto trade based on the confidential information that Prieur and his team created and gathered relating to crypto, Prieur was one of a small group of recipients of an email celebrating the "milestone" and the "[g]reat accomplishment!"

4.      Four days after Citadel Securities' first systematic crypto trade, Prieur resigned from the company. He was subject to a non-compete agreement (the "Non-Compete Agreement") into which he had entered that prohibited him from engaging in "Competitive Activity" for 15 months after the end of his employment (the "Restricted Period"). He receives monthly payments from Citadel Securities of $15,000–$18,000 per month during the Restricted Period, provided he complies with his obligations.

5.      In September 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"). Portofino is a Swiss-based "market-making firm for cryptocurrencies" that two former Citadel Securities employees founded. One of these founders

worked with Prieur in the same suite of the Office of the Chief Operating Officer at Citadel Securities. Portofino provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the counter," and claims to have been operating in "stealth mode" and "building a high frequency trading platform." Portofino is a "Competitive Enterprise" with Citadel Securities as defined in the employment agreements that Prieur executed with Citadel Securities.[1] Prieur's employment at Portofino constitutes "Competitive Activity" under his Non-Compete Agreement, and Prieur has breached the Non-Compete Agreement as a result.

6.      Citadel Securities initiates this lawsuit to enjoin Prieur from continuing to breach his Non-Compete Agreement by working at Portofino and from using or disclosing Citadel's confidential information and business methods, for which Citadel can never be compensated. No adequate remedy at law exists.

### JURISDICTION AND VENUE

7.      The Court has jurisdiction over Prieur because he consented to this Court's jurisdiction in the Non-Compete Agreement and a separate Mediation/Arbitration Agreement that he executed with Citadel Securities on September 26, 2019.

8.      Venue is proper in this Court as both parties agreed in the Non-Compete Agreement and Mediation/Arbitration Agreement to the resolution of disputes in the state courts in Illinois, and the cause of action arises from transactions and activities in Cook County.

9.      The Mediation/Arbitration Agreement provides that Citadel Securities or Prieur "may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or

---

[1] Citadel Securities is in a separate legal dispute with Portofino's founders relating to allegations of unlawful conduct in establishing Portofino.

to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration, or court proceedings." The Non-Compete Agreement and the Mediation/Arbitration Agreement also provide that Prieur consents to "the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois," and that he "waive[s] any claim that the courts in Delaware or Illinois are an inconvenient forum."

10.     The Non-Compete Agreement and Mediation/Arbitration Agreement also provide that Delaware law governs Prieur's employment agreements, and that he agrees "to accept service of any court filings and process by delivery to my most current home address on record with Citadel [Securities] via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process."

## PARTIES

11.     Plaintiff Citadel Securities is a limited liability company registered in Delaware and with a principal place of business in the City of Chicago, Cook County, Illinois for the full time that Prieur was employed by Citadel Securities.

12.     Defendant Vincent Prieur was an employee of Citadel Securities in its New York office from September 2019 through March 2022. He is a citizen of France and the United Kingdom. On information and belief, he maintains residences in New York City and Paris.

## FACTUAL ALLEGATIONS

### I.     Citadel Securities Is A Leading Market Maker Active In Crypto

13.     Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. A "market maker" is an entity that stands ready to fill orders for a particular security or currency, and upon receiving an order, fills that order with available inventory or by sourcing liquidity from an exchange or other market venue. Using proprietary intellectual property and highly skilled personnel, Citadel

Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing.

14.     Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties.

15.     Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process.  A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia executed its first systematic crypto trade. That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. Furthermore, the

company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies.

## II. Prieur Played A Lead Role In Researching Citadel Securities' Crypto Opportunities And Developing Its Crypto Strategy

16.     In April 2019, Prieur began his employment with Citadel Securities as a Business Manager in the company's London office. In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022.

17.     Before joining Citadel Securities, Prieur obtained an undergraduate degree in economics from the London School of Economics in 2010. In 2017, he obtained an MBA from Harvard Business School. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, Prieur worked as an associate consultant at McKinsey & Co.

18.     At Citadel Securities, Prieur worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. In particular, Prieur had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, he was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. Prieur and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics.

19.     In May 2021, Prieur helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information that Prieur and his team had created and gathered during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and geographic information, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees who had prior crypto experience before joining the company; and other information.

20.     In the months that followed, Prieur oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. Among other activities, Prieur coordinated and met with various internal departments and external entities to gather additional information and gauge potential partnerships; compiled and mapped the company's external outreach relating to crypto, including with companies focused on data and research, clearing and settlement, lending, and trading technology; assisted with decisions both on the internal reassignment of employees to work on crypto matters and with external recruiting to fill a wide range of positions needed for systematic trading, market making, and other endeavors in the crypto space; and summarized and internally circulated his team's thoughts on the many crypto-related workstreams his team was managing.

21.     Reflecting the relative importance of his crypto work, Prieur listed in his year-end performance assessment as "Accomplishment 1" for 2021 as: "Lead[ing] CitSec's foray into

crypto." He also listed as part of "Accomplishment 1": "delivered an initial plan and diagnostic for trading crypto for C-suite," and "review/initial interaction with 20+ vendors and exchanges." Later in that same self-assessment, Prieur stated that he had "confirmed my ability to deliver on high-visibility items," and listed "Crypto strategy kick off" as an example. In the portion of the performance assessment completed by others, Prieur's manager wrote that Prieur had "excellent strategic perspective," and that he was "one of the strongest on the team when it comes to evaluating a new opportunity or challenge from a conceptual problem solving perspective," and that a "[r]ecent example[] include[d] crypto." In communications in early 2022, Prieur's manager told Prieur that he "need[ed] to be the aggregator of all things crypto in the US and [others at Citadel Securities] need to keep you fully in the loop."

22.     By early 2022, Prieur's efforts researching, analyzing, and evaluating crypto to create valuable confidential information for Citadel Securities bore fruit. On March 14, 2022, Citadel Securities' affiliate in Asia executed its first systematic trade in crypto. An email announcing and celebrating the occasion was circulated that day to the CEO and other senior employees of Citadel Securities. The email recognized that this "exciting milestone" would not have been possible "without the relentless efforts" from across the company, and stated that "one simply cannot be more impressed by the focus and dedication of all the colleagues who have been a part of this." The email was forwarded to Prieur and two others with the message: "We came up with this date if you guys remember!"

23.     Thus, Citadel Securities had spent significant time and treasure developing confidential information to enter the crypto space, and through his work Prieur was a part of and exposed to that. Having contributed to it, Prieur understands the significant competitive strategic advantages that Citadel Securities built through its research, analysis, and evaluation of crypto and

how Citadel Securities' existing systems and information could be leveraged in the crypto space. Indeed, in the employment agreements that he executed after joining Citadel Securities in New York, Prieur acknowledged that "Citadel LLC and its affiliates . . . conduct a broad and evolving range of businesses and have devoted considerable resources to developing Confidential Information and that such Information is key to Citadel's competitive advantage and business," and that "during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information."

24.    Because of the nature of his work and the sensitivity of the confidential information to which he had access, Prieur was highly compensated at Citadel Securities. In addition to his base salary, which was $215,000 in 2021, he had the opportunity to earn significant bonus and incentive compensation. For example, in 2021, his total compensation was $500,000.

25.    Because Citadel Securities' confidential information regarding crypto provides it with a significant competitive advantage, this information would be highly useful to those operating in similar areas. Moreover, Citadel Securities' market making and systematic trading in traditional equities and other products is the product of deep investment in technology and intellectual property, and confidential information around those foundations has applications and competitive advantages in the crypto space. Accordingly, Citadel Securities has taken numerous measures to protect the integrity of such confidential information, including with regard to Prieur.

26.    Citadel Securities has implemented measures protecting all of its confidential information, including but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel

Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions.

### III.     Prieur's Non-Compete Agreement

27.     On September 26, 2019, Citadel Securities and Prieur entered into the Non-Compete Agreement and several other employment agreements. The Non-Compete Agreement, , which was supported by multiple forms of valuable consideration, including a guaranteed incentive award of $58,500 for 2019, substantial monthly payments during the restricted period described below, and a separate $500 payment, provides that during Prieur's employment with Citadel Securities, and after the end of his employment during a "Restricted Period" of up to 15 months, as elected by Citadel Securities, Prieur would not "directly or indirectly" engage in any "Competitive Activity." The Non-Compete Agreement provides that if Prieur violates that, the Restricted Period "shall be extended by a period of time equal to that period beginning when the activities constituting such violation commended and ending when the activities constituting such violation terminated." The Non-Compete Agreement also provides that in exchange for his compliance and in addition to the consideration already paid to him, Citadel Securities would pay Prieur monthly payments during the Restricted Period of one twelfth of his base salary (~$17,900) each month for the first six months, $15,000 in months 7-12, and $18,000 in months 13-15.

28.     The definitions for all defined terms in the Non-Compete Agreement are set forth in the parties' Mediation/Arbitration Agreement signed on the same day, which also defines "Citadel" to include "Citadel Securities Americas LLC and its affiliates."

29.     "Competitive Activity" is defined to include, among other things:

- Becoming an "employee . . . of a Competitive Enterprise in a capacity . . . where there is a reasonable possibility that [Prieur] may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information," or "in a capacity that is similar to the capacity [he] was in, where [he] provide[s] services that are similar to the services [he] provided, or with responsibilities that are similar to the responsibilities [he] had, in each case during the final 24 months [he] was employed at Citadel;"

30.     "Competitive Enterprise" is defined to include "any business or operation, irrespective of form . . . that [] engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities."

31.     "Citadel Business Activities" are defined to include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; . . . advisory activities; . . . or any other business activities engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [Prieur's] employment with Citadel."

32.     "Confidential Information" is defined to include "know-how, other proprietary information or other information that (i) is not generally known to the public and (ii) relates to Citadel, any Citadel Client or its or their activities," and specifically identifies "internal financial affairs," "business strategies," "skill-set and experience of personnel," "automated trading strategies," "investment opportunities," and "information concerning the business relationship between Citadel and any person who sources of information, expertise or experience Citadel relies upon in its business" as being covered.

33.     The Non-Compete Agreement further provided that during the Restricted Period, Prieur must provide Citadel Securities with 14 days advance notice prior to becoming "employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." The Non-

Compete Agreement also requires Prieur to notify any employers during the Restricted Period of his obligations under the Non-Compete Agreements.

34.     In the Non-Compete Agreement, Prieur also acknowledged that "[i]f I leave Citadel [Securities] and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously."

35.     Prieur agreed that Citadel Securities is entitled to injunctive relief in the event of his breach or threatened breach of the Non-Compete Agreement. Prieur specifically acknowledged:

> Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate Citadel for losses resulting from my breach, Citadel is entitled to injunctive relief . . ., specific performance . . . , and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages.

36.     Prieur further agreed in the Non-Compete Agreement that "the scope and duration of the restrictions and limitations described [] are reasonable and necessary to protect the protectable business interests of Citadel."

37.     As a highly educated and sophisticated businessperson, Prieur's execution of the Non-Compete Agreement, and other agreements discussed herein was knowing, willful and informed.

**IV.     Prieur Leaves Citadel Securities and Joins A Competitor**

38.     In January 2022, Prieur informed Citadel Securities of his resignation from the company.

39.     On March 7, 2022, he signed a Transition Letter stating that his employment with Citadel Securities would continue through March 18, 2022. The Letter set certain goals for the transition period, and in return Citadel Securities agreed to pay him a "Transition Bonus" of $98,850.

40.     On March 18, 2022, Prieur signed a Cessation of Employment Agreement & General Release. In that Agreement, Citadel Securities provided formal notice that it had elected a Restricted Period of 15 months as provided for and defined in the Non-Compete Agreement, that would run until June 19, 2023. The Agreement stated that Prieur would receive monthly Restricted Period payments as defined in the Non-Compete Agreement, so long as he complied with the terms of the Non-Compete Agreement. The Agreement also stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable."

41.     On September 9, 2022, Prieur emailed Citadel Securities that he had joined a new employer, Portofino Technologies.

42.     Portofino is a "market-making firm for cryptocurrencies" based in Zug, Switzerland. It was founded by Leonard Lancia and Alex Casimo, two former Citadel Securities employees, "with the backing of $50 million from venture capitalists." Prieur and Casimo worked together in the same suite in the Office of the Chief Operations Officer at Citadel Securities. Citadel Securities is in a separate legal dispute with Lancia and Casimo.

43.     According to Casimo, Portofino is "building a high frequency trading platform that's 100% cloud based." The company provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the

counter." It has already "traded billions of dollars in so-called stealth mode," and is now out of "stealth-mode." Portofino has 35 employees in London, Singapore, and New York.

## V.     Prieur's Employment with Portofino Technologies Violates His Contractual Obligations

44.     Under the Non-Compete Agreement, Prieur is required to provide Citadel Securities with 14 days advance notice prior to becoming employed "in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." Prieur did not provide Citadel Securities with notice of his employment with Portofino until *after* he joined that company.

45.     Moreover, Portofino is a Competitive Enterprise. A Competitive Enterprise includes "any business or operation" that "engages in, or proposes or plans to engage in, any activity that is identical to or similar to any Citadel Business Activity," and "Citadel Business Activities" include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution . . . and investment activities . . . engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [his] employment." As discussed, Citadel Securities was researching, analyzing, and evaluating crypto strategies – and in fact operationalizing and executing them – while Prieur was employed there. Indeed, Prieur was a leader in those efforts. Additionally, Citadel Securities traded in crypto based on the confidential information that Prieur created and was exposed to relating to crypto. Thus, Portofino's crypto efforts and trading, led by two former Citadel Securities employees, makes Portofino a Competitive Enterprise. Citadel Securities is currently in a separate legal dispute with the founders of Portofino.

46.     Critically, the Confidential Information Prieur acquired while employed at Citadel Securities relating to crypto will enable Portofino to develop its own crypto efforts and strategies to compete with Citadel Securities. Citadel Securities is harmed when other entities or people unfairly use its confidential information to trade crypto currencies, because the more entities or people engaging in these activities, the more competition exists in the market and profits are competed away. Portofino competes with Citadel to profit from trading and market making for digital assets, including in the areas of developing leading technology, developing automated and systematic trading strategies, and identifying, recruiting, and hiring the best talent.

47.     In September 2022, after learning about Prieur's employment at Portofino, Citadel Securities contacted Prieur by phone and email asking him to discuss his activities. In those communications, Citadel Securities told Prieur that it was preparing to file in court in Chicago based on, among other things, his breach of his Non-Compete Agreement by commencing employment with Portofino. Citadel Securities further told Prieur that it intended to appear before the assigned judge on September 16, 2022 to request an emergency order enjoining his employment at Portofino, and that it would send him copies of any papers that were filed with the court to his email address and by overnight mail. As of the time of this filing, Prieur had not responded to Citadel Securities' most recent communication to him regarding the planned filing of this action.

48.     On September 16, 2022, pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a demand with the American Arbitration Association for expedited private mediation in Chicago. If mediation is not successful, there is a potential for private arbitration with the American Arbitration Association in Chicago as well.

## COUNT I: BREACH OF THE NON-COMPETE AGREEMENT

49.     Citadel Securities repeats and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

50.     The Non-Compete Agreement is a valid and enforceable contract.

51.     Citadel Securities has performed every obligation it owes to Prieur under the Non-Compete Agreement.

52.     The Non-Compete Agreement requires that Prieur must notify Citadel Securities at least 14 days prior to commencing any new employment during the Restricted Period.

53.     The Non-Compete Agreement prohibits Prieur from engaging in Competitive Activity during the Restricted Period.

54.     Prieur joined Portofino without informing Citadel Securities at least fourteen days in advance.

55.     Moreover, Prieur engaged in Competitive Activity during the Restricted Period by joining Portofino, which is a Competitive Enterprise.

56.     Prieur therefore breached the Non-Compete Agreement.

57.     Citadel Securities has no adequate remedy at law.

58.     Citadel Securities will suffer irreparable harm if Prieur is not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Citadel Securities prays that the Court enter a temporary restraining order, preliminary injunction, and judgment in its favor:

(i)     Enjoining Prieur, and those acting in concert with him, from breaching the terms of his Non-Compete Agreement with Citadel Securities, from being employed by Portofino during the Restricted Period, using or disclosing Citadel Securities' confidential information; and

(ii)    For all such further relief as may be appropriate.

Dated: September 16, 2022               */s/ Adam L. Hoeflich*

One of Its Attorneys

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60654
(312) 494-4400
Firm ID No. 31210

John M. Dickman
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37976

*Attorneys for Plaintiff Citadel Securities
Americas Services LLC*

## **VERIFICATION**

Under penalties as provided by law, the undersigned, Heath P. Tarbert, Chief Legal Officer for Citadel Securities Group, being first duly sworn under oath, deposes and states that he has read the foregoing Verified Complaint for Injunctive and Other Relief, and on the basis of his personal knowledge, review of appropriate business records and discussions with relevant knowledgeable personnel, he believes the allegations contained therein are true and correct except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he believes same to be true to the best of his knowledge, information and belief. This verification is made by deponent and not by Plaintiff because Plaintiff is a limited liability company and deponent is a duly authorized representative thereof.

Heath P. Tarbert

Sworn to and subscribed before me this _____th day of September, 2022.

Notary Public

My Commission Expires: _8/31/2025_

Official Seal
Sara Anne Verstynen
Notary Public State of Illinois
My Commission Expires 8/31/2025

Appearance and Jury Demand *          (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY    DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
|                   Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
|                   Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid             ☐ 0904 - Fee Waived

                     ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand *    ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury

                     ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of:   ◉ Plaintiff   ○ Defendant

Litigant's Name:   Citadel Securities Americas Services LLC

Signature: /s/   Adam L. Hoeflich

☑ Initial Counsel of Record    ☐ Pro Se (Self-represented)      ☐ 2810 Rule 707 Out-of-State Counsel
                                                      (pro hac vice)

☐ Additional Appearance    ☐ Substitute Appearance

◉ Atty. No.: 31210      ○ Pro Se 99500

Name: Adam L. Hoeflich

Atty. for (if applicable):

Bartlit Beck LLP

Address: 54 W. Hubbard Street

City: Chicago

State: IL   Zip: 60654   Phone: (312) 494-4400

Primary Email: adam.hoeflich@bartlitbeck.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:

☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                                         /s/ Adam L. Hoeflich

                                      Attorney for ◉ Plaintiff   ○ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Appearance and Jury Demand *                                    (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____ DEPARTMENT/ __1st__ DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC _____ | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur _____ | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance   ☐ 0900 - Fee Paid   ☐ 0904 - Fee Waived
   ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *   ☐ 1900 - Appearance and Jury Demand/Fee Paid   ☐ Twelve-person Jury
   ☐ 1904 - Appearance and Jury Demand/No Fee Paid   ☐ Six-person Jury

The undersigned enters the appearance of:   ● Plaintiff   ○ Defendant

Litigant's Name:  Citadel Securities Americas Services LLC

Signature: /s/  John M. Dickman

☐ Initial Counsel of Record   ☐ Pro Se (Self-represented)   ☐ 2810 Rule 707 Out-of-State Counsel
                                                                    (pro hac vice)

☑ Additional Appearance   ☐ Substitute Appearance

● Atty. No.: 37976   ○ Pro Se 99500

Name:  John M. Dickman
Atty. for (if applicable):

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Address:  155 North Wacker Drive, Suite 4300

City:  Chicago

State:  IL   Zip:  60606   Phone:  (312) 558-1255

Primary Email:  john.dickman@ogletree.com

> **IMPORTANT**
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ John M. Dickman
Attorney for ● Plaintiff   ○ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org
Page 1 of 1

Appearance and Jury Demand *                                           (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY     DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid                    ☐ 0904 - Fee Waived
                        ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *      ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury
                        ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of: ● Plaintiff ○ Defendant

Litigant's Name: Citadel Securities Americas Services LLC

Signature: /s/ Christopher Y. Lee

☐ Initial Counsel of Record    ☐ Pro Se (Self-represented)    ☐ 2810 Rule 707 Out-of-State Counsel (pro hac vice)

☑ Additional Appearance    ☐ Substitute Appearance

● Atty. No. 42418        ○ Pro Se 99500

Name: Christopher Y. Lee
Atty. for (if applicable):
Sidley Austin LLP

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Address: One South Dearborn

City: Chicago

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

State: IL   Zip: 60603   Phone: (312) 853-7000

Primary Email: chris.lee@sidley.com       Email: _____

**\* Strike demand for trial by jury if not applicable.**
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                                         /s/ Christopher Y. Lee
                                    Attorney for ● Plaintiff ○ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|

Cook **COUNTY**

Citadel Securities Americas Services LLC
**Plaintiff / Petitioner** *(First, middle, last name)*

v.

Vincent Prieur
**Defendant / Respondent** *(First, middle, last name)*

**Case Number**

☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)*

---

**Instructions ▼**

Enter above the county name where the case was filed.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondents.

Enter the Case Number given by the Circuit Clerk.

---

**IMPORTANT INFORMATION:**

There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.

Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org.

---

**Plaintiff/Petitioner:**

Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.

If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent.

---

In **1a**, enter the name and address of a Defendant/Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here.

**1.    Defendant/Respondent's address and service information:**

   a.    Defendant/Respondent's primary address/information for service:
         Name *(First, Middle, Last)*:   Vincent Prieur
         Registered Agent's name, if any:
         Street Address, Unit #:   91 Avenue Emile Zola
         City, State, ZIP:   75015 Paris, France
         Telephone:   (929) 384-2881         Email:   v.n.prieur@gmail.com

In **1b**, enter a second address for Defendant/Respondent, if you have one.

   b.    If you have more than one address where Defendant/Respondent might be found, list that here:
         Name *(First, Middle, Last)*:   Vincent Prieur
         Street Address, Unit #:   45 W. 69th Street, Apt. 6
         City, State, ZIP:   New York, NY 10023
         Telephone:   (929) 384-2881         Email:   v.n.prieur@gmail.com

In **1c**, check how you are sending your documents to Defendant/Respondent.

   c.    Method of service on Defendant/Respondent:
         ☐ Sheriff              ☐ Sheriff outside Illinois: _____
                                                          *County & State*
         ☑ Special process server     ☐ Licensed private detective

---

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2. Information about the lawsuit:** |
| | Amount claimed: ___$_____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3. Contact information for the Plaintiff/Petitioner:** |
| | Name (First, Middle, Last): Citadel Securities Americas Services LLC |
| | Street Address, Unit #: 131 S. Dearborn Street |
| | City, State, ZIP: Chicago, IL 60603 |
| | Telephone: (312) 395-2464    Email: jill.hutchison@citadel.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4. Instructions for person receiving this *Summons* (Defendant):** |
| | ☐ a. To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at: |
| | Address: _____ |
| | City, State, ZIP: _____ |
| In **4a,** fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.* | ☐ b. Attend court: |
| | On: _____ at _____ ☐ a.m. ☐ p.m. in _____ |
| | *Date*            *Time*                              *Courtroom* |
| | **In-person at:** |
| | _____ |
| | *Courthouse Address*    *City*                    *State*    *ZIP* |
| | OR |
| In **4b,** fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance")**:** |
| | By telephone: _____ |
| | *Call-in number for telephone remote appearance* |
| | By video conference: _____ |
| | *Video conference website* |
| | _____ |
| | *Video conference log-in information (meeting ID, password, etc.)* |
| | Call the Circuit Clerk at: _____ or visit their website |
| | *Circuit Clerk's phone number* |
| | at: _____ to find out more about how to do this. |
| | *Website* |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____    *Seal of Court* |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **Clerk of the Court:** _____ |
| | **This *Summons* must be served within 30 days of the witness date.** |
| | Date of Service: _____ |
| | *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | For Court Use Only |
|---|---|---|
| Cook _____ COUNTY | | |

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | Citadel Securities Americas Services LLC <br> **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v. <br><br> Vincent Prieur <br> **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

_____
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

    ☐  Personally on the Defendant/Respondent:
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____

    ☐  On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
    member or lives there:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____
    And left it with: _____
                    *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____ Race: _____
    and by sending a copy to this defendant in a postage-paid, sealed envelope to the
    above address on _____ , 20 _____ .

    ☐  On the Corporation's agent, _____
                           *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:** _____

*Signature by:*  ☐ Sheriff
☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return:   $ _____
Miles _____   $ _____
Total   $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**EMERGENCY MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), through its undersigned attorneys, moves this Court, pursuant to 735 ILCS 5/2-202, for leave to serve Defendants Vincent Prieur by a private process server. In support of this motion, Citadel Securities states as follows:

1.      Citadel Securities seeks the appointment of It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, PERC No. 117.000885, as special process server in this case.

2.      It's Your Serve is not a party to this action and will use a process server over the age of 18.

3.      Exigent circumstances exist for the appointment of a special process server. Specifically, as set forth more fully in the Verified Complaint for Injunctive and Other Relief and the Emergency Motion for a Temporary Restraining Order filed simultaneously herewith, the Defendant Prieur is in breach of his Non-Compete Agreement with Citadel Securities and, upon information or belief, has or threatens to use or disclose confidential information of Citadel Securities.

4.      Based upon the foregoing, it is imperative that Citadel Securities proceed quickly and, if at all possible, avoid any delay which may otherwise occur should service of process be attempted through the office of the Sheriff.

5.      Service of the summons and Verified Complaint will be in accordance with the Illinois Code of Civil Procedure and Illinois Supreme Court Rules.

6.      Under penalties provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth herein are true and correct or on information and belief, certifies that he believes the same to be true.


WHEREFORE, Citadel Securities requests that his motion be granted.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) |
| Plaintiff, | ) |
| vs. | )　　Case No. |
| VINCENT PRIEUR, | ) |
| Defendant. | ) |

<u>**ORDER APPOINTING SPECIAL PROCESS SERVER**</u>

This cause coming to be heard on Citadel Securities Americas Services LLC's Emergency Motion for Appointment of Special Process Server, the Court having reviewed the motion and being fully advised,

IT IS HEREBY ORDERED that It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, is appointed as special process server in this case.

Date: _____　　　Judge: _____

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

4

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Plaintiff's Motion for Appointment of Special Process Server** on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: */s/ Christopher Y. Lee*_____

Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S EMERGENCY MOTION
<u>FOR TEMPORARY RESTRAINING ORDER</u>**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), pursuant to 735 ILCS 5/11-101, hereby moves this Court for a Temporary Restraining Order.

For the reasons stated in the Plaintiff's Memorandum of Law in Support of this motion, Plaintiff respectfully requests for an order, in the form attached hereto, maintaining the *status quo* by enjoining Defendant Vincent Prieur from employment at Portofino Technologies.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: /s/ Adam L. Hoeflich

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

1

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Emergency Motion for Temporary Restraining Order**, on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: *_/s/ Christopher Y. Lee_____*
Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| VINCENT PRIEUR, | ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), respectfully requests the immediate intervention of the Court to maintain the status quo pending mediation of the underlying dispute pursuant to and in accordance with the parties' Mediation/Arbitration Agreement. On March 18, 2022, Defendant Vincent Prieur resigned from his position at Citadel Securities. On September 9, 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"), a competitor of Citadel Securities in the cryptocurrency ("crypto") space. Prieur's employment with Portofino is a violation of his Non-Compete Agreement with Citadel Securities. Citadel Securities' valuable and proprietary confidential information is at stake. Citadel Securities will suffer irreparable harm if Prieur is not enjoined immediately. Accordingly, Citadel Securities' motion for a temporary restraining order should be granted.

## BACKGROUND

### A.     Citadel Securities' Business

Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. (Citadel Securities'

1

Verified Complaint for Injunctive and Other Relief ("Compl.") ¶ 13.) Using proprietary intellectual property and highly skilled personnel, Citadel Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing. (*Id.*)

Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. (*Id.* ¶ 14.) Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. (*Id.*) Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties. (*Id.*)

Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. (*Id.* ¶ 15.) By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process. (*Id.*) A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia

executed its first systematic crypto trade. (*Id.*) That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. (*Id.*) Furthermore, the company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies. (*Id.*)

Citadel Securities has implemented measures protecting its confidential information including, but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions. (*Id.* ¶ 26.)

### B.      Defendant's Employment with Citadel Securities

Defendant commenced employment at Citadel Securities in April 2019 as a Business Manager in the company's London office. (*Id.* ¶ 16.) In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022. (*Id.*) Prior to joining Citadel Securities, Defendant obtained an undergraduate degree in economics from the London School of Economics in 2010, and an MBA from Harvard Business School in 2017. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, he worked as an associate consultant at McKinsey & Co. (*Id.* ¶ 17.)

At Citadel Securities, Defendant worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. (*Id.* ¶ 18.) In particular, he had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, Defendant was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. (*Id.*) Defendant and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. (*Id.*) They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics. (*Id.*)

In May 2021, Defendant helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. (*Id.* ¶ 19.) The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information Defendant and his team had gathered and created during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees

who had prior crypto experience before joining the company; and other information. (*Id.*) In the months that followed, Defendant oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. (*Id.* ¶ 20.)

In connection with his hiring and as a condition of his employment, Defendant executed a Non-Compete Agreement, Non-Disclosure Agreement ("NDA"), Non-Solicitation Agreement, and Mediation/Arbitration Agreement. (*Id.* ¶ 27.) As part of the Non-Compete Agreement, Defendant agreed that he would not perform similar services for, or serve in a similar role with any competitor of Citadel Securities for a period of up to 15 months. (*Id.* ¶¶ 27–29.) Under this Non-Compete Agreement, Citadel Securities is required to pay Defendant $15,000–$18,000 each month he is restricted from working for a competitor so long as he complies with his obligations under that Agreement. (*Id.* ¶ 27.) Additionally, as part of the Mediation/Arbitration Agreement, Defendant agreed to arbitrate any disputes with Citadel Securities before the American Arbitration Association ("AAA"). However, the Mediation/Arbitration Agreement specifically allows either party to seek a temporary injunction from a "court of competent jurisdiction" to prevent the other party from breaching any agreement until the dispute has been submitted to and resolved by the AAA.

## II.     Defendant's Resignation and the Instant Litigation

In January 2022, Defendant informed Citadel Securities that he was resigning his position, and on March 18, 2022, he resigned. (*Id.* ¶¶ 38, 40.) On September 9, 2022, Defendant emailed Citadel Securities that he had joined a new employer, Portofino Technologies. (*Id.* ¶ 41.) Portofino is a competitor of Citadel Securities in the crypto space. (*Id.* ¶¶ 42–43, 45.)

Pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a mediation request before the AAA on September 16, 2022 seeking redress for Defendant's actions. (*Id.* ¶ 48.) If mediation is not successful, there is a potential for private arbitration with

the AAA in Chicago as well. (*Id.*) Citadel Securities requests that this Court enter a temporary restraining order to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

## LEGAL STANDARD

Preliminary injunctive relief such as a temporary restraining order is a "provisional remedy granted to preserve the status quo, pending a hearing on the merits of the case." *Dam, Snell & Taveirne, Ltd. v. Verchota*, 324 Ill. App. 146, 155, 754 N.E.2d 464, 471 (1st Dist. 2001). Under Illinois law, the status quo is the "last, actual, peaceable, uncontested status" before litigation. *Jones v. Dep't of Public Aid*, 272 Ill. App. 3d 184, 193, 867 N.E. 2d 563, 572 (3d Dist. 2007). Temporary restraining orders and preliminary injunctions are appropriate to maintain the status quo pending the outcome of arbitration proceedings. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993); *OptionsCity Software, Inc. v. Baumann*, 2015 WL 3855622, at *2 (N.D. Ill. June 19, 2015) (issuing a temporary restraining order to enjoin solicitation of employer's customers pending arbitration).

Whether to grant a temporary restraining order is within "the sound discretion of the trial court." *Dam, Snell & Taveirne, Ltd.*, 324 Ill. App. at 155, 754 N.E.2d at 471. A party seeking a temporary restraining order must show: (1) it has a protectible interest; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) it has no adequate remedy at law; and (4) a likelihood of success on the merits. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 567, 927 N.E.2d 88, 95 (2010). However, the movant "is not required to make out a case which would entitle [it] to judgment at trial; rather, [it] need only show that [it] raises a 'fair question' about the existence of [its] right and that the court should preserve the status quo until the case can be

decided on the merits." *Id.* Here, Citadel Securities has certainly raised a "fair question" sufficient for this Court to enter a temporary restraining order maintaining the "last, actual, peaceable, uncontested status" between the parties (specifically, Defendant not working for Citadel Securities' direct competitor) pending the outcome of the mediation proceeding.

## ARGUMENT

### I.    Citadel Securities Has a Legally Protectible Interest

Citadel Securities has a legally protectible legitimate business interest in enforcing the Non-Compete Agreement to protect its confidential information, namely its opportunities and strategies relating to crypto. Illinois law recognizes that a company has a protectible interest in confidential information. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011) (acquisition of confidential information is a factor that should be considered when finding a legitimate business interest in enforcement of a restrictive covenant); *Segerdahl Corp. v. Giovanni*, 2022 IL App (1st) 211610-U ¶ 34 (employer seeking injunction had a "clearly ascertained right in need of protection by virtue of its legitimate business interest in protecting its confidential information"). "Confidential information" is information that an employer has that is not generally known to competitors and provides the employer with a competitive advantage. *The Agency, Inc. v. Grove*, 362 Ill. App. 3d 206, 216, 839 N.E.2d 606, 615 (2d Dist. 2005).

Here, while employed at Citadel Securities, Defendant became intimately familiar with, and participated in the development and gathering of, confidential information relating to Citadel Securities' crypto efforts, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates;

evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding approaches to structure and affiliations; staffing information, including information on Citadel Securities employees who had prior crypto experience before joining the company; and other information. Further, as discussed in detail above, Citadel Securities has implemented extensive measures to ensure that its confidential information is not disclosed outside of Citadel Securities (including to its own investors). Thus, Citadel Securities has a protectible interest in its confidential information related to its crypto efforts.

## II.    Citadel Securities is Likely to Succeed on the Merits of Its Claim

Citadel Securities is likely to succeed on the merits of its breach of Non-Compete Agreement claim because Defendant has accepted employment with Portofino, a direct competitor with Citadel Securities in the crypto space. Defendant assented to the Non-Compete Agreement in entering into his employment agreement that was supported by adequate consideration, and has waived his right to contest the enforceability of the Non-Compete Agreement. Indeed, Defendant's separation/release agreement with Citadel Securities explicitly stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable." (Compl. ¶ 40.) Moreover, even if Defendant could challenge the terms of the Non-Compete Agreement, the restrictions in that agreement are enforceable.

### A.    The Non-Compete Agreement Is Enforceable.

Under Delaware law,[1] a covenant not to compete in a valid employment agreement is enforced if (1) "its purpose is to protect the legitimate interests of the employer" and (2) "its duration is reasonably limited temporally and its scope is reasonably limited geographically."

---

[1] Delaware law is the chosen law of the parties and governs the Non-Compete Agreement. (Compl. ¶ 8.)

*MQ Assocs. V. N. Bay Imaging, LLC*, 2007 WL 2566022, at *3 (N.D. Fla. Aug. 31, 2007) (Delaware law) (citing *McCann Suveyors, Inc. v. Evans*, 611 A.2d 1, 4-5 (Del. Ch. 1987)).[2]

Citadel Securities has a legitimate interest in protecting itself form a former employee's use of its confidential information against it. Where "valuable trade secret or other proprietary information has been learned by the defendant and, therefore, his competition with plaintiff's business may be particularly effective and unfair," the employer has a legitimate economic interest at stake and the provision is "likely to be specifically enforced." *McCann*, 611 A.2d at 4.

Additionally, the time and geographic restrictions are reasonable. The reasonableness of the duration is "based on the nature of the employee's position and the context of a particular industry." *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *14 (Del. Ch. 2002) (holding two-year duration reasonable time restriction). Here, the duration of the non-compete provision is limited to 15 months (it has been less than 6 months since Defendant left the company, with less than 10 months left to run on the non-compete). This time period is tailored to prevent Defendant's competitive use of the confidential information he gained from his employment with Citadel Securities. *See also Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215 ¶ 21, 972 N.E.2d 344, 350 (4th Dist. 2012) (enforcing a non-competition agreement with a two-year time restriction); *Gillespie v. Carbondale & Marion Eye Ctrs., Ltd.*, 251 Ill. App. 3d 625, 629, 622 N.E.2d 1267, 1270-71 (5th Dist. 1993) (same).

Likewise, the geographic scope of the agreement is reasonable. Where, as here, the employer's business "extends throughout the nation, or indeed even internationally," a non-competition agreement with no geographic limitation can be enforceable. *Research & Trading*

---

[2] Similarly, Illinois courts will enforce a non-competition agreement if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (2) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011).

*Corp. v. Pfuhl*, 1992 WL 345465, at \*12 (Del. Ch. 1992); *see also Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E.2d 1273, 1281 (1st Dist. 1985) (enforcing a non-competition agreement that contained a nationwide geographic restriction where the plaintiff company's activities were national in scope); *Zabaneh Franchises, LLC*, 972 2012 IL App (4th) 110215 ¶ 22, N.E.2d at 350 (finding geographical restrictions unnecessary to enforce non-compete agreement). Indeed, the Citadel Securities personnel that worked on crypto were spread across the company's offices and regions. Moreover, Defendant acknowledged in the Non-Compete Agreement that he understood that Citadel Securities' business is global in scope and the he understood "the need for the restrictions in this Agreement to be without limitation as to location."

In assessing the enforceability of a non-competition agreement, Illinois courts also consider the hardship to defendant and the effect upon the general public. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d at 396. Here, Defendant will not experience any hardship if the Non-Compete Agreement is enforced because the Non-Compete Agreement provides that Citadel Securities will pay Defendant $15,000–18,000 per month if he abides by its terms. The Non-Compete Agreement is also not contrary to the public interest and has no effect on the general public because it was entered into by two private parties and does not injure the public. *See Menasha Packaging Co, LLC v. Pratt Indus., Inc.*, 2017 WL 639634, at \*7 (D.N.J. Feb. 15, 2017) (applying Illinois law) (no likely injury to the public when enforcing restrictive covenant in a "highly competitive industr[y]," particularly "where the public [is] still free to seek the services of the employee's new employer"); *see also City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566, 573, 678 N.E.2d 693, 698 (1st Dist. 1997) ("Public policy strongly favors the freedom to contract."). Additionally, the public interest is served by non-competition

agreements "necessary to protect one party from injury by the unfair use of the subject-matter of the contract by the other party." *First Health Group Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 229 (M.D. Pa. 2001) (applying Illinois law) (quoting *Union Trust & Sav. Bank of E. St. Louis v. Kinloch Long-Distance Tel. Co. of Mo.*, 258 Ill. 202, 101 N.E. 535 (1913)); *Menasha*, 2017 WL 639634, at \*11 ("Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships.").

### III. <u>Citadel Securities Will Suffer Irreparable Harm and Has No Adequate Remedy at Law</u>

If Defendant is permitted to misappropriate and use Citadel Securities' confidential information, money damages would be insufficient to compensate Citadel Securities and the harm would irreparable. Where, as here, a former employee violates enforceable restrictive covenants, "ongoing competition itself [is] a sufficient basis" to find irreparable harm. *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 272, 880 N.E.2d 188, 198 (4th Dist. 2007); *see also Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 74, 589 N.E.2d 640, 648 (2d Div. 1992) ("Once a protectable interest is established, irreparable injury is presumed to ensue if the interest is not protected."). Indeed, no adequate remedy at law exists because "loss of competitive position is intangible, incapable of being measured." *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 401, 627 N.E.2d 21, 27 (1st Dist. 1993); *see also IDS Fin. Servs., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (holding that "[w]here trade secrets . . . are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable."). Thus, legal remedies alone cannot sufficiently redress the harm Defendant has inflicted and will inflict upon Citadel Securities, and Citadel Securities is entitled to an injunction to prevent those injuries.

## <u>CONCLUSION</u>

For these reasons, Citadel Securities respectfully requests that the Court grant Citadel Securities' Motion for a Temporary Restraining Order and enjoin Defendant from employment at Portofino to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

> John Dickman
> **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
> 155 North Wacker Drive, Suite 4300
> Chicago, Illinois  60606
> (312) 558-1255
> Firm ID No. 37976

> Daniel D. Rubinstein
> Christopher Y. Lee
> **SIDLEY AUSTIN LLP**
> One South Dearborn
> Chicago, Illinois  60603
> (312) 853-7000
> Firm ID No. 42418

> Adam L. Hoeflich
> **BARTLIT BECK LLP**
> 54 West Hubbard Street
> Chicago, IL 60654
> (312) 494-4400
> Firm ID No. 31210

> *Attorneys for Plaintiff*

12

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES | ) | |
| AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF CITADEL SECURITIES AMERICAS SERVICES**
**LLC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter having come before the Court on September 16, 2022, for the emergency motion of Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Plaintiff"), for a Temporary Restraining Order, notice having been given to Defendant, a hearing having been held, and the Court being fully advised and with good cause:

1.      Based on the evidence presented by Plaintiff, which consists of a Verified Complaint, this Court finds a substantial likelihood that Plaintiff will succeed on the merits of its cause of action. The evidence before the Court indicates that Defendant Vincent Prieur ("Defendant") violated his non-compete agreement with Plaintiff by joining Portofino Technologies, a competitive enterprise to Plaintiff. If proven, this action will very likely result in a finding of liability against Defendant on Plaintiff's claim.

2.      The Court finds that Plaintiff lacks an adequate remedy at law and would suffer irreparable harm in the absence of a Temporary Restraining Order. Plaintiff has presented sufficient evidence to show that its confidential information, which it has invested hundreds of millions of dollars in developing and protecting, is at risk due to Defendant's actions and

threatened actions. In this situation, the threat of irreparable harm is significant.

3. The balance of harms weighs in favor of a Temporary Restraining Order. Plaintiff has shown a meaningful risk of irreparable harm.

4. The public interest is clearly served by granting a Temporary Restraining Order, as the public interest is served by the enforcement of the parties' valid non-compete agreement.

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is granted and IT IS HEREBY ORDERED that:

(a) Defendant, within twenty-four (24) hours of the entry of this Order, must cease all employment with and services rendered for Portofino Technologies;

(b) Defendant shall preserve all documents (including electronically stored information), devices, equipment, and materials in whatever form that are or could be relevant to the allegations of the Verified Complaint;

(c) Defendant, within twenty-four (24) hours of the entry of this Order, shall provide to Plaintiff a declaration certifying his compliance with paragraphs (a) and (b) above;

(d) This order shall remain in effect until modified by the Court. A hearing is scheduled for _____ __, 2022.

Entered on this _____ day of September, 2022     Judge: _____

John Dickman
**OGLETREE, DEAKINS,
NASH, SMOAK &
STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37978

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

2

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS** | ) | |
| **SERVICES LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), for its Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant Vincent Prieur, alleges as follows:

## INTRODUCTION

1.     Citadel Securities seeks immediate injunctive relief to maintain the status quo pending a private mediation initiated by Citadel Securities (and potential arbitration) pursuant to the parties' Mediation/Arbitration Agreement.  Citadel Securities former executive, Prieur, has joined a key competitor that was deceptively and surreptitiously formed by other former Citadel Securities executives in violation of their obligations to Citadel Securities. Prieur was intimately involved over the course of several months in the research and development of Citadel Securities' entire highly confidential crypto trading and market making strategy. Unless enjoined by the Court, Prieur threatens to use Citadel Securities' highly confidential information to assist this unlawful enterprise in competing unfairly with Citadel Securities and causing Citadel Securities irreparable harm.

2.      Prieur is a former senior vice president in the Office of the Chief Operating Officer at Citadel Securities. He has a degree in economics from the London School of Economics and an MBA from Harvard Business School. Prior to working at Citadel Securities, he worked at the London Stock Exchange and McKinsey & Co.

3.      Prieur is a well-educated and experienced businessperson who earned significant compensation at Citadel Securities. He had access and visibility into valuable confidential information critical to the company's business. In particular, Prieur was a key member of the Citadel Securities team that in 2021 researched, analyzed, and evaluated opportunities and developed a strategy for the Company to enter the cryptocurrency ("crypto") space. In his 2021 annual performance evaluation, Prieur identified his "Accomplishment 1" as "lead[ing] CitSec's foray into crypto." In March 2022, when Citadel Securities, through its affiliate, executed its first systematic crypto trade based on the confidential information that Prieur and his team created and gathered relating to crypto, Prieur was one of a small group of recipients of an email celebrating the "milestone" and the "[g]reat accomplishment!"

4.      Four days after Citadel Securities' first systematic crypto trade, Prieur resigned from the company. He was subject to a non-compete agreement (the "Non-Compete Agreement") into which he had entered that prohibited him from engaging in "Competitive Activity" for 15 months after the end of his employment (the "Restricted Period"). He receives monthly payments from Citadel Securities of $15,000–$18,000 per month during the Restricted Period, provided he complies with his obligations.

5.      In September 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"). Portofino is a Swiss-based "market-making firm for cryptocurrencies" that two former Citadel Securities employees founded. One of these founders

worked with Prieur in the same suite of the Office of the Chief Operating Officer at Citadel Securities. Portofino provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the counter," and claims to have been operating in "stealth mode" and "building a high frequency trading platform." Portofino is a "Competitive Enterprise" with Citadel Securities as defined in the employment agreements that Prieur executed with Citadel Securities.[1] Prieur's employment at Portofino constitutes "Competitive Activity" under his Non-Compete Agreement, and Prieur has breached the Non-Compete Agreement as a result.

6.     Citadel Securities initiates this lawsuit to enjoin Prieur from continuing to breach his Non-Compete Agreement by working at Portofino and from using or disclosing Citadel's confidential information and business methods, for which Citadel can never be compensated. No adequate remedy at law exists.

**JURISDICTION AND VENUE**

7.     The Court has jurisdiction over Prieur because he consented to this Court's jurisdiction in the Non-Compete Agreement and a separate Mediation/Arbitration Agreement that he executed with Citadel Securities on September 26, 2019.

8.     Venue is proper in this Court as both parties agreed in the Non-Compete Agreement and Mediation/Arbitration Agreement to the resolution of disputes in the state courts in Illinois, and the cause of action arises from transactions and activities in Cook County.

9.     The Mediation/Arbitration Agreement provides that Citadel Securities or Prieur "may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or

---

[1] Citadel Securities is in a separate legal dispute with Portofino's founders relating to allegations of unlawful conduct in establishing Portofino.

to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration, or court proceedings." The Non-Compete Agreement and the Mediation/Arbitration Agreement also provide that Prieur consents to "the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois," and that he "waive[s] any claim that the courts in Delaware or Illinois are an inconvenient forum."

10.     The Non-Compete Agreement and Mediation/Arbitration Agreement also provide that Delaware law governs Prieur's employment agreements, and that he agrees "to accept service of any court filings and process by delivery to my most current home address on record with Citadel [Securities] via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process."

## PARTIES

11.     Plaintiff Citadel Securities is a limited liability company registered in Delaware and with a principal place of business in the City of Chicago, Cook County, Illinois for the full time that Prieur was employed by Citadel Securities.

12.     Defendant Vincent Prieur was an employee of Citadel Securities in its New York office from September 2019 through March 2022. He is a citizen of France and the United Kingdom. On information and belief, he maintains residences in New York City and Paris.

## FACTUAL ALLEGATIONS

### I.     Citadel Securities Is A Leading Market Maker Active In Crypto

13.     Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. A "market maker" is an entity that stands ready to fill orders for a particular security or currency, and upon receiving an order, fills that order with available inventory or by sourcing liquidity from an exchange or other market venue. Using proprietary intellectual property and highly skilled personnel, Citadel

4

Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing.

14.     Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties.

15.     Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process.  A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia executed its first systematic crypto trade. That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. Furthermore, the

company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies.

## II. Prieur Played A Lead Role In Researching Citadel Securities' Crypto Opportunities And Developing Its Crypto Strategy

16.     In April 2019, Prieur began his employment with Citadel Securities as a Business Manager in the company's London office. In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022.

17.     Before joining Citadel Securities, Prieur obtained an undergraduate degree in economics from the London School of Economics in 2010. In 2017, he obtained an MBA from Harvard Business School. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, Prieur worked as an associate consultant at McKinsey & Co.

18.     At Citadel Securities, Prieur worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. In particular, Prieur had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, he was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. Prieur and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics.

19.     In May 2021, Prieur helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information that Prieur and his team had created and gathered during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and geographic information, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees who had prior crypto experience before joining the company; and other information.

20.     In the months that followed, Prieur oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. Among other activities, Prieur coordinated and met with various internal departments and external entities to gather additional information and gauge potential partnerships; compiled and mapped the company's external outreach relating to crypto, including with companies focused on data and research, clearing and settlement, lending, and trading technology; assisted with decisions both on the internal reassignment of employees to work on crypto matters and with external recruiting to fill a wide range of positions needed for systematic trading, market making, and other endeavors in the crypto space; and summarized and internally circulated his team's thoughts on the many crypto-related workstreams his team was managing.

21.     Reflecting the relative importance of his crypto work, Prieur listed in his year-end performance assessment as "Accomplishment 1" for 2021 as: "Lead[ing] CitSec's foray into

crypto." He also listed as part of "Accomplishment 1": "delivered an initial plan and diagnostic for trading crypto for C-suite," and "review/initial interaction with 20+ vendors and exchanges." Later in that same self-assessment, Prieur stated that he had "confirmed my ability to deliver on high-visibility items," and listed "Crypto strategy kick off" as an example. In the portion of the performance assessment completed by others, Prieur's manager wrote that Prieur had "excellent strategic perspective," and that he was "one of the strongest on the team when it comes to evaluating a new opportunity or challenge from a conceptual problem solving perspective," and that a "[r]ecent example[] include[d] crypto." In communications in early 2022, Prieur's manager told Prieur that he "need[ed] to be the aggregator of all things crypto in the US and [others at Citadel Securities] need to keep you fully in the loop."

22.     By early 2022, Prieur's efforts researching, analyzing, and evaluating crypto to create valuable confidential information for Citadel Securities bore fruit. On March 14, 2022, Citadel Securities' affiliate in Asia executed its first systematic trade in crypto. An email announcing and celebrating the occasion was circulated that day to the CEO and other senior employees of Citadel Securities. The email recognized that this "exciting milestone" would not have been possible "without the relentless efforts" from across the company, and stated that "one simply cannot be more impressed by the focus and dedication of all the colleagues who have been a part of this." The email was forwarded to Prieur and two others with the message: "We came up with this date if you guys remember!"

23.     Thus, Citadel Securities had spent significant time and treasure developing confidential information to enter the crypto space, and through his work Prieur was a part of and exposed to that. Having contributed to it, Prieur understands the significant competitive strategic advantages that Citadel Securities built through its research, analysis, and evaluation of crypto and

how Citadel Securities' existing systems and information could be leveraged in the crypto space. Indeed, in the employment agreements that he executed after joining Citadel Securities in New York, Prieur acknowledged that "Citadel LLC and its affiliates . . . conduct a broad and evolving range of businesses and have devoted considerable resources to developing Confidential Information and that such Information is key to Citadel's competitive advantage and business," and that "during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information."

24.     Because of the nature of his work and the sensitivity of the confidential information to which he had access, Prieur was highly compensated at Citadel Securities. In addition to his base salary, which was $215,000 in 2021, he had the opportunity to earn significant bonus and incentive compensation. For example, in 2021, his total compensation was $500,000.

25.     Because Citadel Securities' confidential information regarding crypto provides it with a significant competitive advantage, this information would be highly useful to those operating in similar areas. Moreover, Citadel Securities' market making and systematic trading in traditional equities and other products is the product of deep investment in technology and intellectual property, and confidential information around those foundations has applications and competitive advantages in the crypto space. Accordingly, Citadel Securities has taken numerous measures to protect the integrity of such confidential information, including with regard to Prieur.

26.     Citadel Securities has implemented measures protecting all of its confidential information, including but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel

Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions.

### III.  Prieur's Non-Compete Agreement

27.     On September 26, 2019, Citadel Securities and Prieur entered into the Non-Compete Agreement and several other employment agreements. The Non-Compete Agreement, , which was supported by multiple forms of valuable consideration, including a guaranteed incentive award of $58,500 for 2019, substantial monthly payments during the restricted period described below, and a separate $500 payment, provides that during Prieur's employment with Citadel Securities, and after the end of his employment during a "Restricted Period" of up to 15 months, as elected by Citadel Securities, Prieur would not "directly or indirectly" engage in any "Competitive Activity." The Non-Compete Agreement provides that if Prieur violates that, the Restricted Period "shall be extended by a period of time equal to that period beginning when the activities constituting such violation commended and ending when the activities constituting such violation terminated." The Non-Compete Agreement also provides that in exchange for his compliance and in addition to the consideration already paid to him, Citadel Securities would pay Prieur monthly payments during the Restricted Period of one twelfth of his base salary (~$17,900) each month for the first six months, $15,000 in months 7-12, and $18,000 in months 13-15.

28.     The definitions for all defined terms in the Non-Compete Agreement are set forth in the parties' Mediation/Arbitration Agreement signed on the same day, which also defines "Citadel" to include "Citadel Securities Americas LLC and its affiliates."

29.     "Competitive Activity" is defined to include, among other things:

- Becoming an "employee . . . of a Competitive Enterprise in a capacity . . . where there is a reasonable possibility that [Prieur] may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information," or "in a capacity that is similar to the capacity [he] was in, where [he] provide[s] services that are similar to the services [he] provided, or with responsibilities that are similar to the responsibilities [he] had, in each case during the final 24 months [he] was employed at Citadel;"

30.    "Competitive Enterprise" is defined to include "any business or operation, irrespective of form . . . that [] engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities."

31.    "Citadel Business Activities" are defined to include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; . . . advisory activities; . . . or any other business activities engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [Prieur's] employment with Citadel."

32.    "Confidential Information" is defined to include "know-how, other proprietary information or other information that (i) is not generally known to the public and (ii) relates to Citadel, any Citadel Client or its or their activities," and specifically identifies "internal financial affairs," "business strategies," "skill-set and experience of personnel," "automated trading strategies," "investment opportunities," and "information concerning the business relationship between Citadel and any person who sources of information, expertise or experience Citadel relies upon in its business" as being covered.

33.    The Non-Compete Agreement further provided that during the Restricted Period, Prieur must provide Citadel Securities with 14 days advance notice prior to becoming "employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." The Non-

Compete Agreement also requires Prieur to notify any employers during the Restricted Period of his obligations under the Non-Compete Agreements.

34.     In the Non-Compete Agreement, Prieur also acknowledged that "[i]f I leave Citadel [Securities] and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously."

35.     Prieur agreed that Citadel Securities is entitled to injunctive relief in the event of his breach or threatened breach of the Non-Compete Agreement. Prieur specifically acknowledged:

> Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate Citadel for losses resulting from my breach, Citadel is entitled to injunctive relief . . ., specific performance . . . , and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages.

36.     Prieur further agreed in the Non-Compete Agreement that "the scope and duration of the restrictions and limitations described [] are reasonable and necessary to protect the protectable business interests of Citadel."

37.     As a highly educated and sophisticated businessperson, Prieur's execution of the Non-Compete Agreement, and other agreements discussed herein was knowing, willful and informed.

### IV.     Prieur Leaves Citadel Securities and Joins A Competitor

38.     In January 2022, Prieur informed Citadel Securities of his resignation from the company.

39.     On March 7, 2022, he signed a Transition Letter stating that his employment with Citadel Securities would continue through March 18, 2022. The Letter set certain goals for the transition period, and in return Citadel Securities agreed to pay him a "Transition Bonus" of $98,850.

40.     On March 18, 2022, Prieur signed a Cessation of Employment Agreement & General Release. In that Agreement, Citadel Securities provided formal notice that it had elected a Restricted Period of 15 months as provided for and defined in the Non-Compete Agreement, that would run until June 19, 2023. The Agreement stated that Prieur would receive monthly Restricted Period payments as defined in the Non-Compete Agreement, so long as he complied with the terms of the Non-Compete Agreement. The Agreement also stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable."

41.     On September 9, 2022, Prieur emailed Citadel Securities that he had joined a new employer, Portofino Technologies.

42.     Portofino is a "market-making firm for cryptocurrencies" based in Zug, Switzerland. It was founded by Leonard Lancia and Alex Casimo, two former Citadel Securities employees, "with the backing of $50 million from venture capitalists." Prieur and Casimo worked together in the same suite in the Office of the Chief Operations Officer at Citadel Securities. Citadel Securities is in a separate legal dispute with Lancia and Casimo.

43.     According to Casimo, Portofino is "building a high frequency trading platform that's 100% cloud based." The company provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the

counter." It has already "traded billions of dollars in so-called stealth mode," and is now out of "stealth-mode." Portofino has 35 employees in London, Singapore, and New York.

## V. Prieur's Employment with Portofino Technologies Violates His Contractual Obligations

44. Under the Non-Compete Agreement, Prieur is required to provide Citadel Securities with 14 days advance notice prior to becoming employed "in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." Prieur did not provide Citadel Securities with notice of his employment with Portofino until *after* he joined that company.

45. Moreover, Portofino is a Competitive Enterprise. A Competitive Enterprise includes "any business or operation" that "engages in, or proposes or plans to engage in, any activity that is identical to or similar to any Citadel Business Activity," and "Citadel Business Activities" include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution . . . and investment activities . . . engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [his] employment." As discussed, Citadel Securities was researching, analyzing, and evaluating crypto strategies – and in fact operationalizing and executing them – while Prieur was employed there. Indeed, Prieur was a leader in those efforts. Additionally, Citadel Securities traded in crypto based on the confidential information that Prieur created and was exposed to relating to crypto. Thus, Portofino's crypto efforts and trading, led by two former Citadel Securities employees, makes Portofino a Competitive Enterprise. Citadel Securities is currently in a separate legal dispute with the founders of Portofino.

46. Critically, the Confidential Information Prieur acquired while employed at Citadel Securities relating to crypto will enable Portofino to develop its own crypto efforts and strategies to compete with Citadel Securities. Citadel Securities is harmed when other entities or people unfairly use its confidential information to trade crypto currencies, because the more entities or people engaging in these activities, the more competition exists in the market and profits are competed away. Portofino competes with Citadel to profit from trading and market making for digital assets, including in the areas of developing leading technology, developing automated and systematic trading strategies, and identifying, recruiting, and hiring the best talent.

47. In September 2022, after learning about Prieur's employment at Portofino, Citadel Securities contacted Prieur by phone and email asking him to discuss his activities. In those communications, Citadel Securities told Prieur that it was preparing to file in court in Chicago based on, among other things, his breach of his Non-Compete Agreement by commencing employment with Portofino. Citadel Securities further told Prieur that it intended to appear before the assigned judge on September 16, 2022 to request an emergency order enjoining his employment at Portofino, and that it would send him copies of any papers that were filed with the court to his email address and by overnight mail. As of the time of this filing, Prieur had not responded to Citadel Securities' most recent communication to him regarding the planned filing of this action.

48. On September 16, 2022, pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a demand with the American Arbitration Association for expedited private mediation in Chicago. If mediation is not successful, there is a potential for private arbitration with the American Arbitration Association in Chicago as well.

## COUNT I: BREACH OF THE NON-COMPETE AGREEMENT

49.     Citadel Securities repeats and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

50.     The Non-Compete Agreement is a valid and enforceable contract.

51.     Citadel Securities has performed every obligation it owes to Prieur under the Non-Compete Agreement.

52.     The Non-Compete Agreement requires that Prieur must notify Citadel Securities at least 14 days prior to commencing any new employment during the Restricted Period.

53.     The Non-Compete Agreement prohibits Prieur from engaging in Competitive Activity during the Restricted Period.

54.     Prieur joined Portofino without informing Citadel Securities at least fourteen days in advance.

55.     Moreover, Prieur engaged in Competitive Activity during the Restricted Period by joining Portofino, which is a Competitive Enterprise.

56.     Prieur therefore breached the Non-Compete Agreement.

57.     Citadel Securities has no adequate remedy at law.

58.     Citadel Securities will suffer irreparable harm if Prieur is not enjoined.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Citadel Securities prays that the Court enter a temporary restraining order, preliminary injunction, and judgment in its favor:

(i)     Enjoining Prieur, and those acting in concert with him, from breaching the terms of his Non-Compete Agreement with Citadel Securities, from being employed by Portofino during the Restricted Period, using or disclosing Citadel Securities' confidential information; and

(ii)     For all such further relief as may be appropriate.


Dated:  September 16, 2022                    */s/ Adam L. Hoeflich*

                                              One of Its Attorneys

                                                   Daniel D. Rubinstein
                                                   Christopher Y. Lee
                                                   **SIDLEY AUSTIN LLP**
                                                   One South Dearborn Street
                                                   Chicago, Illinois 60603
                                                   (312) 853-7000
                                                   Firm ID No. 42418

                                                   Adam L. Hoeflich
                                                   **BARTLIT BECK LLP**
                                                   Courthouse Place
                                                   54 West Hubbard Street
                                                   Chicago, Illinois 60654
                                                   (312) 494-4400
                                                   Firm ID No. 31210

                                                   John M. Dickman
                                                   **OGLETREE, DEAKINS, NASH, SMOAK &
                                                   STEWART, P.C.**
                                                   155 North Wacker Drive, Suite 4300
                                                   Chicago, Illinois 60606
                                                   (312) 558-1255
                                                   Firm ID No. 37976

                                                   *Attorneys for Plaintiff Citadel Securities
                                                   Americas Services LLC*

## **VERIFICATION**

Under penalties as provided by law, the undersigned, Heath P. Tarbert, Chief Legal Officer for Citadel Securities Group, being first duly sworn under oath, deposes and states that he has read the foregoing Verified Complaint for Injunctive and Other Relief, and on the basis of his personal knowledge, review of appropriate business records and discussions with relevant knowledgeable personnel, he believes the allegations contained therein are true and correct except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he believes same to be true to the best of his knowledge, information and belief. This verification is made by deponent and not by Plaintiff because Plaintiff is a limited liability company and deponent is a duly authorized representative thereof.

Heath P. Tarbert

Sworn to and subscribed before me this _____th day of September, 2022.

Notary Public

My Commission Expires: _8/31/2025_

Official Seal
Sara Anne Verstynen
Notary Public State of Illinois
My Commission Expires 8/31/2025

Appearance and Jury Demand *                  (12/01/20) CCG 0009

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY     **DEPARTMENT/** 1st **DISTRICT**

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid           ☐ 0904 - Fee Waived
                    ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *      ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury
                    ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of: ⦿ Plaintiff ◯ Defendant

Litigant's Name: Citadel Securities Americas Services LLC

Signature: /s/ Adam L. Hoeflich

☑ Initial Counsel of Record    ☐ Pro Se (Self-represented)      ☐ 2810 Rule 707 Out-of-State Counsel
                                              (pro hac vice)

☐ Additional Appearance    ☐ Substitute Appearance

⦿ Atty. No.: 31210       ◯ Pro Se 99500

Name: Adam L. Hoeflich

Atty. for (if applicable):

Bartlit Beck LLP

Address: 54 W. Hubbard Street

City: Chicago

State: IL   Zip: 60654   Phone: (312) 494-4400

Primary Email: adam.hoeflich@bartlitbeck.com

> **IMPORTANT**
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ Adam L. Hoeflich
Attorney for ⦿ Plaintiff ◯ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Page 1 of 1

Appearance and Jury Demand *                                    (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY    DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid                 ☐ 0904 - Fee Waived
                       ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *      ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury
                       ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of: ◉ Plaintiff ◯ Defendant

Litigant's Name: Citadel Securities Americas Services LLC

Signature: /s/ John M. Dickman

☐ Initial Counsel of Record    ☐ Pro Se (Self-represented)      ☐ 2810 Rule 707 Out-of-State Counsel
                                                 (pro hac vice)
☑ Additional Appearance    ☐ Substitute Appearance

◉ Atty. No.: 37976       ◯ Pro Se 99500

Name: John M. Dickman

Atty. for (if applicable):

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Address: 155 North Wacker Drive, Suite 4300

City: Chicago

State: IL   Zip: 60606   Phone: (312) 558-1255

Primary Email: john.dickman@ogletree.com

> **IMPORTANT**
>
> *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

                                      /s/ John M. Dickman
                                      Attorney for ◉ Plaintiff ◯ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Appearance and Jury Demand *                                                                 (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____ DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |

Address of Court District for Filing

### APPEARANCE AND JURY DEMAND *

☑ General Appearance  ☐ 0900 - Fee Paid   ☐ 0904 - Fee Waived
☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *  ☐ 1900 - Appearance and Jury Demand/Fee Paid   ☐ Twelve-person Jury
☐ 1904 - Appearance and Jury Demand/No Fee Paid   ☐ Six-person Jury

The undersigned enters the appearance of:  ⦿ Plaintiff  ◯ Defendant

Litigant's Name:  Citadel Securities Americas Services LLC

Signature: /s/  Christopher Y. Lee

☐ Initial Counsel of Record  ☐ Pro Se (Self-represented)   ☐ 2810 Rule 707 Out-of-State Counsel
(pro hac vice)

☑ Additional Appearance  ☐ Substitute Appearance

⦿ Atty. No.: 42418   ◯ Pro Se 99500

Name:  Christopher Y. Lee
Atty. for (if applicable):

Sidley Austin LLP

Address:  One South Dearborn

City:  Chicago

State: IL  Zip: 60603  Phone: (312) 853-7000

Primary Email:  chris.lee@sidley.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ Christopher Y. Lee

Attorney for  ⦿ Plaintiff  ◯ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 1

Case: 1:22-cv-05185 Document #: 1 Filed: 09/23/22 Page 118 of 192 PageID #:125

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | *For Court Use Only* |
|---|---|---|

Cook _____ COUNTY

**Instructions ▼**

Enter above the county name where the case was filed.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/Respondents.

Enter the Case Number given by the Circuit Clerk.

Citadel Securities Americas Services LLC
**Plaintiff / Petitioner** *(First, middle, last name)*

v.

Vincent Prieur
**Defendant / Respondent** *(First, middle, last name)*

Case Number _____

☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)*

**IMPORTANT INFORMATION:**

There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.

Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org.

**Plaintiff/Petitioner:**

Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.

If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent.

In **1a**, enter the name and address of a Defendant/Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here.

In **1b**, enter a second address for Defendant/Respondent, if you have one.

In **1c**, check how you are sending your documents to Defendant/Respondent.

**1. Defendant/Respondent's address and service information:**
   a. Defendant/Respondent's primary address/information for service:
   Name *(First, Middle, Last)*: Vincent Prieur
   Registered Agent's name, if any: _____
   Street Address, Unit #: 91 Avenue Emile Zola
   City, State, ZIP: 75015 Paris, France
   Telephone: (929) 384-2881   Email: v.n.prieur@gmail.com
   b. If you have more than one address where Defendant/Respondent might be found, list that here:
   Name *(First, Middle, Last)*: Vincent Prieur
   Street Address, Unit #: 45 W. 69th Street, Apt. 6
   City, State, ZIP: New York, NY 10023
   Telephone: (929) 384-2881   Email: v.n.prieur@gmail.com
   c. Method of service on Defendant/Respondent:
   ☐ Sheriff    ☐ Sheriff outside Illinois: _____
                                            *County & State*
   ☑ Special process server    ☐ Licensed private detective

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:**<br>Amount claimed:  $ _____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*:  Citadel Securities Americas Services LLC<br>Street Address, Unit #:  131 S. Dearborn Street<br>City, State, ZIP:  Chicago, IL 60603<br>Telephone:  (312) 395-2464      Email:  jill.hutchison@citadel.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**<br>☐  a.  To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address: _____<br>City, State, ZIP: _____ |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐  b.  Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>     *Date*      *Time*      *Courtroom*<br>**In-person at:**<br>_____<br>*Courthouse Address*   *City*    *State*   *ZIP* |
| In **4b**, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | OR<br>**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):<br>By telephone: _____<br>      *Call-in number for telephone remote appearance*<br>By video conference: _____<br>      *Video conference website*<br>_____<br>*Video conference log-in information (meeting ID, password, etc.)*<br><br>Call the Circuit Clerk at: _____ or visit their website<br>      *Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>      *Website* |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____      *Seal of Court* |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **Clerk of the Court:** _____<br><br>**This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>      *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

Case 1:22-cv-05185 Document #: 1-1 Filed: 09/23/22 Page 120 of 192 PageID #:127
This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Cook COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | *For Court Use Only* |
|---|---|---|

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | Citadel Securities Americas Services LLC<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>Vincent Prieur<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**Case Number** _____

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the *Summons* and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:

    Male ☐   Female ☐   Non-Binary ☐   Approx. Age: _____ Race: _____

    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:

    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address, Unit#: _____

    City, State, ZIP: _____

    And left it with: _____
                        *First, Middle, Last*

    Male ☐   Female ☐   Non-Binary ☐   Approx. Age: _____ Race: _____

    and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on _____ , 20 _____ .

    ☐ On the Corporation's agent, _____
                            *First, Middle, Last*

    Male ☐   Female ☐   Non-Binary ☐   Approx. Age: _____ Race: _____

    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.

    Address: _____

    City, State, ZIP: _____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:** _____

*Signature by:* ☐ Sheriff
          ☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return: $ _____
Miles _____ $ _____
Total $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS | ) | |
| SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>EMERGENCY MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER</u>**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), through its undersigned attorneys, moves this Court, pursuant to 735 ILCS 5/2-202, for leave to serve Defendants Vincent Prieur by a private process server. In support of this motion, Citadel Securities states as follows:

1.    Citadel Securities seeks the appointment of It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, PERC No. 117.000885, as special process server in this case.

2.    It's Your Serve is not a party to this action and will use a process server over the age of 18.

3.    Exigent circumstances exist for the appointment of a special process server. Specifically, as set forth more fully in the Verified Complaint for Injunctive and Other Relief and the Emergency Motion for a Temporary Restraining Order filed simultaneously herewith, the Defendant Prieur is in breach of his Non-Compete Agreement with Citadel Securities and, upon information or belief, has or threatens to use or disclose confidential information of Citadel Securities.

4.      Based upon the foregoing, it is imperative that Citadel Securities proceed quickly and, if at all possible, avoid any delay which may otherwise occur should service of process be attempted through the office of the Sheriff.

5.      Service of the summons and Verified Complaint will be in accordance with the Illinois Code of Civil Procedure and Illinois Supreme Court Rules.

6.      Under penalties provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth herein are true and correct or on information and belief, certifies that he believes the same to be true.

WHEREFORE, Citadel Securities requests that his motion be granted.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **CITADEL SECURITIES** | ) | |
| **AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER APPOINTING SPECIAL PROCESS SERVER

This cause coming to be heard on Citadel Securities Americas Services LLC's Emergency Motion for Appointment of Special Process Server, the Court having reviewed the motion and being fully advised,

IT IS HEREBY ORDERED that It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, is appointed as special process server in this case.


Date: _____        Judge: _____


John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

4

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Plaintiff's Motion for Appointment of Special Process Server** on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: <u>/s/ Christopher Y. Lee</u>

Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S EMERGENCY MOTION
<u>FOR TEMPORARY RESTRAINING ORDER</u>**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel

Securities group of companies ("Citadel Securities"), pursuant to 735 ILCS 5/11-101, hereby

moves this Court for a Temporary Restraining Order.

For the reasons stated in the Plaintiff's Memorandum of Law in Support of this motion,

Plaintiff respectfully requests for an order, in the form attached hereto, maintaining the *status quo*

by enjoining Defendant Vincent Prieur from employment at Portofino Technologies.


Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES
LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

    John Dickman
    **OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.**
    155 North Wacker Drive, Suite 4300
    Chicago, Illinois  60606
    (312) 558-1255
    Firm ID No. 37976

1

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true

and correct copy of the foregoing **Emergency Motion for Temporary Restraining Order**, on

September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: */s/ Christopher Y. Lee*
Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), respectfully requests the immediate intervention of the Court to maintain the status quo pending mediation of the underlying dispute pursuant to and in accordance with the parties' Mediation/Arbitration Agreement. On March 18, 2022, Defendant Vincent Prieur resigned from his position at Citadel Securities. On September 9, 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"), a competitor of Citadel Securities in the cryptocurrency ("crypto") space. Prieur's employment with Portofino is a violation of his Non-Compete Agreement with Citadel Securities. Citadel Securities' valuable and proprietary confidential information is at stake. Citadel Securities will suffer irreparable harm if Prieur is not enjoined immediately. Accordingly, Citadel Securities' motion for a temporary restraining order should be granted.

## BACKGROUND

### A.    Citadel Securities' Business

Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. (Citadel Securities'

1

Verified Complaint for Injunctive and Other Relief ("Compl.") ¶ 13.) Using proprietary intellectual property and highly skilled personnel, Citadel Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing. (*Id.*)

Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. (*Id.* ¶ 14.) Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. (*Id.*) Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties. (*Id.*)

Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. (*Id.* ¶ 15.) By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process. (*Id.*) A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia

executed its first systematic crypto trade. (*Id.*) That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. (*Id.*) Furthermore, the company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies. (*Id.*)

Citadel Securities has implemented measures protecting its confidential information including, but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions. (*Id.* ¶ 26.)

### B. Defendant's Employment with Citadel Securities

Defendant commenced employment at Citadel Securities in April 2019 as a Business Manager in the company's London office. (*Id.* ¶ 16.) In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022. (*Id.*) Prior to joining Citadel Securities, Defendant obtained an undergraduate degree in economics from the London School of Economics in 2010, and an MBA from Harvard Business School in 2017. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, he worked as an associate consultant at McKinsey & Co. (*Id.* ¶ 17.)

At Citadel Securities, Defendant worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. (*Id.* ¶ 18.) In particular, he had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, Defendant was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. (*Id.*) Defendant and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. (*Id.*) They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics. (*Id.*)

In May 2021, Defendant helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. (*Id.* ¶ 19.) The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information Defendant and his team had gathered and created during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees

who had prior crypto experience before joining the company; and other information. (*Id.*) In the months that followed, Defendant oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. (*Id.* ¶ 20.)

In connection with his hiring and as a condition of his employment, Defendant executed a Non-Compete Agreement, Non-Disclosure Agreement ("NDA"), Non-Solicitation Agreement, and Mediation/Arbitration Agreement. (*Id.* ¶ 27.) As part of the Non-Compete Agreement, Defendant agreed that he would not perform similar services for, or serve in a similar role with any competitor of Citadel Securities for a period of up to 15 months. (*Id.* ¶¶ 27–29.) Under this Non-Compete Agreement, Citadel Securities is required to pay Defendant $15,000–$18,000 each month he is restricted from working for a competitor so long as he complies with his obligations under that Agreement. (*Id.* ¶ 27.) Additionally, as part of the Mediation/Arbitration Agreement, Defendant agreed to arbitrate any disputes with Citadel Securities before the American Arbitration Association ("AAA"). However, the Mediation/Arbitration Agreement specifically allows either party to seek a temporary injunction from a "court of competent jurisdiction" to prevent the other party from breaching any agreement until the dispute has been submitted to and resolved by the AAA.

## II.     Defendant's Resignation and the Instant Litigation

In January 2022, Defendant informed Citadel Securities that he was resigning his position, and on March 18, 2022, he resigned. (*Id.* ¶¶ 38, 40.) On September 9, 2022, Defendant emailed Citadel Securities that he had joined a new employer, Portofino Technologies. (*Id.* ¶ 41.) Portofino is a competitor of Citadel Securities in the crypto space. (*Id.* ¶¶ 42–43, 45.)

Pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a mediation request before the AAA on September 16, 2022 seeking redress for Defendant's actions. (*Id.* ¶ 48.) If mediation is not successful, there is a potential for private arbitration with

the AAA in Chicago as well. (*Id.*) Citadel Securities requests that this Court enter a temporary restraining order to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

## LEGAL STANDARD

Preliminary injunctive relief such as a temporary restraining order is a "provisional remedy granted to preserve the status quo, pending a hearing on the merits of the case." *Dam, Snell & Taveirne, Ltd. v. Verchota*, 324 Ill. App. 146, 155, 754 N.E.2d 464, 471 (1st Dist. 2001). Under Illinois law, the status quo is the "last, actual, peaceable, uncontested status" before litigation. *Jones v. Dep't of Public Aid*, 272 Ill. App. 3d 184, 193, 867 N.E. 2d 563, 572 (3d Dist. 2007). Temporary restraining orders and preliminary injunctions are appropriate to maintain the status quo pending the outcome of arbitration proceedings. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993); *OptionsCity Software, Inc. v. Baumann*, 2015 WL 3855622, at *2 (N.D. Ill. June 19, 2015) (issuing a temporary restraining order to enjoin solicitation of employer's customers pending arbitration).

Whether to grant a temporary restraining order is within "the sound discretion of the trial court." *Dam, Snell & Taveirne, Ltd.*, 324 Ill. App. at 155, 754 N.E.2d at 471. A party seeking a temporary restraining order must show: (1) it has a protectible interest; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) it has no adequate remedy at law; and (4) a likelihood of success on the merits. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 567, 927 N.E.2d 88, 95 (2010). However, the movant "is not required to make out a case which would entitle [it] to judgment at trial; rather, [it] need only show that [it] raises a 'fair question' about the existence of [its] right and that the court should preserve the status quo until the case can be

decided on the merits." *Id.* Here, Citadel Securities has certainly raised a "fair question" sufficient for this Court to enter a temporary restraining order maintaining the "last, actual, peaceable, uncontested status" between the parties (specifically, Defendant not working for Citadel Securities' direct competitor) pending the outcome of the mediation proceeding.

## ARGUMENT

### I.    Citadel Securities Has a Legally Protectible Interest

Citadel Securities has a legally protectible legitimate business interest in enforcing the Non-Compete Agreement to protect its confidential information, namely its opportunities and strategies relating to crypto. Illinois law recognizes that a company has a protectible interest in confidential information. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011) (acquisition of confidential information is a factor that should be considered when finding a legitimate business interest in enforcement of a restrictive covenant); *Segerdahl Corp. v. Giovanni*, 2022 IL App (1st) 211610-U ¶ 34 (employer seeking injunction had a "clearly ascertained right in need of protection by virtue of its legitimate business interest in protecting its confidential information"). "Confidential information" is information that an employer has that is not generally known to competitors and provides the employer with a competitive advantage. *The Agency, Inc. v. Grove*, 362 Ill. App. 3d 206, 216, 839 N.E.2d 606, 615 (2d Dist. 2005).

Here, while employed at Citadel Securities, Defendant became intimately familiar with, and participated in the development and gathering of, confidential information relating to Citadel Securities' crypto efforts, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates;

evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding approaches to structure and affiliations; staffing information, including information on Citadel Securities employees who had prior crypto experience before joining the company; and other information. Further, as discussed in detail above, Citadel Securities has implemented extensive measures to ensure that its confidential information is not disclosed outside of Citadel Securities (including to its own investors). Thus, Citadel Securities has a protectible interest in its confidential information related to its crypto efforts.

## II.     Citadel Securities is Likely to Succeed on the Merits of Its Claim

Citadel Securities is likely to succeed on the merits of its breach of Non-Compete Agreement claim because Defendant has accepted employment with Portofino, a direct competitor with Citadel Securities in the crypto space. Defendant assented to the Non-Compete Agreement in entering into his employment agreement that was supported by adequate consideration, and has waived his right to contest the enforceability of the Non-Compete Agreement. Indeed, Defendant's separation/release agreement with Citadel Securities explicitly stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable." (Compl. ¶ 40.) Moreover, even if Defendant could challenge the terms of the Non-Compete Agreement, the restrictions in that agreement are enforceable.

### A.     The Non-Compete Agreement Is Enforceable.

Under Delaware law,[1] a covenant not to compete in a valid employment agreement is enforced if (1) "its purpose is to protect the legitimate interests of the employer" and (2) "its duration is reasonably limited temporally and its scope is reasonably limited geographically."

---

[1] Delaware law is the chosen law of the parties and governs the Non-Compete Agreement. (Compl. ¶ 8.)

*MQ Assocs. V. N. Bay Imaging, LLC*, 2007 WL 2566022, at *3 (N.D. Fla. Aug. 31, 2007) (Delaware law) (citing *McCann Suveyors, Inc. v. Evans*, 611 A.2d 1, 4-5 (Del. Ch. 1987)).[2]

Citadel Securities has a legitimate interest in protecting itself form a former employee's use of its confidential information against it. Where "valuable trade secret or other proprietary information has been learned by the defendant and, therefore, his competition with plaintiff's business may be particularly effective and unfair," the employer has a legitimate economic interest at stake and the provision is "likely to be specifically enforced." *McCann*, 611 A.2d at 4.

Additionally, the time and geographic restrictions are reasonable. The reasonableness of the duration is "based on the nature of the employee's position and the context of a particular industry." *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *14 (Del. Ch. 2002) (holding two-year duration reasonable time restriction). Here, the duration of the non-compete provision is limited to 15 months (it has been less than 6 months since Defendant left the company, with less than 10 months left to run on the non-compete). This time period is tailored to prevent Defendant's competitive use of the confidential information he gained from his employment with Citadel Securities. *See also Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215 ¶ 21, 972 N.E.2d 344, 350 (4th Dist. 2012) (enforcing a non-competition agreement with a two-year time restriction); *Gillespie v. Carbondale & Marion Eye Ctrs., Ltd.*, 251 Ill. App. 3d 625, 629, 622 N.E.2d 1267, 1270-71 (5th Dist. 1993) (same).

Likewise, the geographic scope of the agreement is reasonable. Where, as here, the employer's business "extends throughout the nation, or indeed even internationally," a non-competition agreement with no geographic limitation can be enforceable. *Research & Trading*

---

[2] Similarly, Illinois courts will enforce a non-competition agreement if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (2) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011).

*Corp. v. Pfuhl*, 1992 WL 345465, at *12 (Del. Ch. 1992); *see also Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E.2d 1273, 1281 (1st Dist. 1985) (enforcing a non-competition agreement that contained a nationwide geographic restriction where the plaintiff company's activities were national in scope; *Zabaneh Franchises, LLC*, 972 2012 IL App (4th) 110215 ¶ 22, N.E.2d at 350 (finding geographical restrictions unnecessary to enforce non-compete agreement). Indeed, the Citadel Securities personnel that worked on crypto were spread across the company's offices and regions. Moreover, Defendant acknowledged in the Non-Compete Agreement that he understood that Citadel Securities' business is global in scope and the he understood "the need for the restrictions in this Agreement to be without limitation as to location."

In assessing the enforceability of a non-competition agreement, Illinois courts also consider the hardship to defendant and the effect upon the general public. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d at 396. Here, Defendant will not experience any hardship if the Non-Compete Agreement is enforced because the Non-Compete Agreement provides that Citadel Securities will pay Defendant $15,000–18,000 per month if he abides by its terms. The Non-Compete Agreement is also not contrary to the public interest and has no effect on the general public because it was entered into by two private parties and does not injure the public. *See Menasha Packaging Co, LLC v. Pratt Indus., Inc.*, 2017 WL 639634, at *7 (D.N.J. Feb. 15, 2017) (applying Illinois law) (no likely injury to the public when enforcing restrictive covenant in a "highly competitive industr[y]," particularly "where the public [is] still free to seek the services of the employee's new employer"); *see also City of Chicago v. Chicago Fiber Optic Corp.,* 287 Ill. App. 3d 566, 573, 678 N.E.2d 693, 698 (1st Dist. 1997) ("Public policy strongly favors the freedom to contract."). Additionally, the public interest is served by non-competition

agreements "necessary to protect one party from injury by the unfair use of the subject-matter of the contract by the other party." *First Health Group Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 229 (M.D. Pa. 2001) (applying Illinois law) (quoting *Union Trust & Sav. Bank of E. St. Louis v. Kinloch Long-Distance Tel. Co. of Mo.*, 258 Ill. 202, 101 N.E. 535 (1913)); *Menasha*, 2017 WL 639634, at *11 ("Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships.").

### III. Citadel Securities Will Suffer Irreparable Harm and Has No Adequate Remedy at Law

If Defendant is permitted to misappropriate and use Citadel Securities' confidential information, money damages would be insufficient to compensate Citadel Securities and the harm would irreparable. Where, as here, a former employee violates enforceable restrictive covenants, "ongoing competition itself [is] a sufficient basis" to find irreparable harm. *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 272, 880 N.E.2d 188, 198 (4th Dist. 2007); *see also Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 74, 589 N.E.2d 640, 648 (2d Div. 1992) ("Once a protectable interest is established, irreparable injury is presumed to ensue if the interest is not protected."). Indeed, no adequate remedy at law exists because "loss of competitive position is intangible, incapable of being measured." *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 401, 627 N.E.2d 21, 27 (1st Dist. 1993); *see also IDS Fin. Servs., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (holding that "[w]here trade secrets . . . are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable."). Thus, legal remedies alone cannot sufficiently redress the harm Defendant has inflicted and will inflict upon Citadel Securities, and Citadel Securities is entitled to an injunction to prevent those injuries.

11

## <u>CONCLUSION</u>

For these reasons, Citadel Securities respectfully requests that the Court grant Citadel Securities' Motion for a Temporary Restraining Order and enjoin Defendant from employment at Portofino to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.


Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/  Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

12

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES | ) | |
| AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF CITADEL SECURITIES AMERICAS SERVICES**
**LLC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter having come before the Court on September 16, 2022, for the emergency

motion of Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel

Securities group of companies ("Plaintiff"), for a Temporary Restraining Order, notice having

been given to Defendant, a hearing having been held, and the Court being fully advised and with

good cause:

1.      Based on the evidence presented by Plaintiff, which consists of a Verified

Complaint, this Court finds a substantial likelihood that Plaintiff will succeed on the merits of its

cause of action. The evidence before the Court indicates that Defendant Vincent Prieur

("Defendant") violated his non-compete agreement with Plaintiff by joining Portofino

Technologies, a competitive enterprise to Plaintiff. If proven, this action will very likely result in

a finding of liability against Defendant on Plaintiff's claim.

2.      The Court finds that Plaintiff lacks an adequate remedy at law and would suffer

irreparable harm in the absence of a Temporary Restraining Order. Plaintiff has presented

sufficient evidence to show that its confidential information, which it has invested hundreds of

millions of dollars in developing and protecting, is at risk due to Defendant's actions and

threatened actions. In this situation, the threat of irreparable harm is significant.

3.       The balance of harms weighs in favor of a Temporary Restraining Order. Plaintiff

has shown a meaningful risk of irreparable harm.

4.       The public interest is clearly served by granting a Temporary Restraining Order,

as the public interest is served by the enforcement of the parties' valid non-compete agreement.

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is

granted and IT IS HEREBY ORDERED that:

(a)       Defendant, within twenty-four (24) hours of the entry of this Order, must cease all

employment with and services rendered for Portofino Technologies;

(b)       Defendant shall preserve all documents (including electronically stored

information), devices, equipment, and materials in whatever form that are or could be relevant to

the allegations of the Verified Complaint;

(c)       Defendant, within twenty-four (24) hours of the entry of this Order, shall provide

to Plaintiff a declaration certifying his compliance with paragraphs (a) and (b) above;

(d)       This order shall remain in effect until modified by the Court.  A hearing is

scheduled for _____ __, 2022.


Entered on this _____ day of September, 2022       Judge: _____

| | | |
|---|---|---|
| John Dickman | Daniel D. Rubinstein | Adam L. Hoeflich |
| **OGLETREE, DEAKINS,** | Christopher Y. Lee | **BARTLIT BECK LLP** |
| **NASH, SMOAK &** | **SIDLEY AUSTIN LLP** | 54 West Hubbard Street |
| **STEWART, P.C.** | One South Dearborn | Chicago, IL 60654 |
| 155 North Wacker Drive, Suite | Chicago, Illinois  60603 | (312) 494-4400 |
| 4300 | (312) 853-7000 | Firm ID No. 31210 |
| Chicago, Illinois  60606 | Firm ID No. 42418 | |
| (312) 558-1255 | | |
| Firm ID No. 37978 | | |

*Attorneys for Plaintiff*

2

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| VINCENT PRIEUR, | ) ) | |
| Defendant. | ) ) | |

<u>**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**</u>

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), for its Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant Vincent Prieur, alleges as follows:

## INTRODUCTION

1.       Citadel Securities seeks immediate injunctive relief to maintain the status quo pending a private mediation initiated by Citadel Securities (and potential arbitration) pursuant to the parties' Mediation/Arbitration Agreement.  Citadel Securities former executive, Prieur, has joined a key competitor that was deceptively and surreptitiously formed by other former Citadel Securities executives in violation of their obligations to Citadel Securities. Prieur was intimately involved over the course of several months in the research and development of Citadel Securities' entire highly confidential crypto trading and market making strategy. Unless enjoined by the Court, Prieur threatens to use Citadel Securities' highly confidential information to assist this unlawful enterprise in competing unfairly with Citadel Securities and causing Citadel Securities irreparable harm.

2.      Prieur is a former senior vice president in the Office of the Chief Operating Officer at Citadel Securities. He has a degree in economics from the London School of Economics and an MBA from Harvard Business School. Prior to working at Citadel Securities, he worked at the London Stock Exchange and McKinsey & Co.

3.      Prieur is a well-educated and experienced businessperson who earned significant compensation at Citadel Securities. He had access and visibility into valuable confidential information critical to the company's business. In particular, Prieur was a key member of the Citadel Securities team that in 2021 researched, analyzed, and evaluated opportunities and developed a strategy for the Company to enter the cryptocurrency ("crypto") space. In his 2021 annual performance evaluation, Prieur identified his "Accomplishment 1" as "lead[ing] CitSec's foray into crypto." In March 2022, when Citadel Securities, through its affiliate, executed its first systematic crypto trade based on the confidential information that Prieur and his team created and gathered relating to crypto, Prieur was one of a small group of recipients of an email celebrating the "milestone" and the "[g]reat accomplishment!"

4.      Four days after Citadel Securities' first systematic crypto trade, Prieur resigned from the company. He was subject to a non-compete agreement (the "Non-Compete Agreement") into which he had entered that prohibited him from engaging in "Competitive Activity" for 15 months after the end of his employment (the "Restricted Period"). He receives monthly payments from Citadel Securities of $15,000–$18,000 per month during the Restricted Period, provided he complies with his obligations.

5.      In September 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"). Portofino is a Swiss-based "market-making firm for cryptocurrencies" that two former Citadel Securities employees founded. One of these founders

worked with Prieur in the same suite of the Office of the Chief Operating Officer at Citadel Securities. Portofino provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the counter," and claims to have been operating in "stealth mode" and "building a high frequency trading platform." Portofino is a "Competitive Enterprise" with Citadel Securities as defined in the employment agreements that Prieur executed with Citadel Securities.[1] Prieur's employment at Portofino constitutes "Competitive Activity" under his Non-Compete Agreement, and Prieur has breached the Non-Compete Agreement as a result.

6.      Citadel Securities initiates this lawsuit to enjoin Prieur from continuing to breach his Non-Compete Agreement by working at Portofino and from using or disclosing Citadel's confidential information and business methods, for which Citadel can never be compensated. No adequate remedy at law exists.

### JURISDICTION AND VENUE

7.      The Court has jurisdiction over Prieur because he consented to this Court's jurisdiction in the Non-Compete Agreement and a separate Mediation/Arbitration Agreement that he executed with Citadel Securities on September 26, 2019.

8.      Venue is proper in this Court as both parties agreed in the Non-Compete Agreement and Mediation/Arbitration Agreement to the resolution of disputes in the state courts in Illinois, and the cause of action arises from transactions and activities in Cook County.

9.      The Mediation/Arbitration Agreement provides that Citadel Securities or Prieur "may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or

---

[1] Citadel Securities is in a separate legal dispute with Portofino's founders relating to allegations of unlawful conduct in establishing Portofino.

to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration, or court proceedings." The Non-Compete Agreement and the Mediation/Arbitration Agreement also provide that Prieur consents to "the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois," and that he "waive[s] any claim that the courts in Delaware or Illinois are an inconvenient forum."

10.     The Non-Compete Agreement and Mediation/Arbitration Agreement also provide that Delaware law governs Prieur's employment agreements, and that he agrees "to accept service of any court filings and process by delivery to my most current home address on record with Citadel [Securities] via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process."

## PARTIES

11.     Plaintiff Citadel Securities is a limited liability company registered in Delaware and with a principal place of business in the City of Chicago, Cook County, Illinois for the full time that Prieur was employed by Citadel Securities.

12.     Defendant Vincent Prieur was an employee of Citadel Securities in its New York office from September 2019 through March 2022. He is a citizen of France and the United Kingdom. On information and belief, he maintains residences in New York City and Paris.

## FACTUAL ALLEGATIONS

### I.     Citadel Securities Is A Leading Market Maker Active In Crypto

13.     Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. A "market maker" is an entity that stands ready to fill orders for a particular security or currency, and upon receiving an order, fills that order with available inventory or by sourcing liquidity from an exchange or other market venue. Using proprietary intellectual property and highly skilled personnel, Citadel

Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing.

14. Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties.

15. Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process. A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia executed its first systematic crypto trade. That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. Furthermore, the

company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies.

## II. Prieur Played A Lead Role In Researching Citadel Securities' Crypto Opportunities And Developing Its Crypto Strategy

16.     In April 2019, Prieur began his employment with Citadel Securities as a Business Manager in the company's London office. In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022.

17.     Before joining Citadel Securities, Prieur obtained an undergraduate degree in economics from the London School of Economics in 2010. In 2017, he obtained an MBA from Harvard Business School. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, Prieur worked as an associate consultant at McKinsey & Co.

18.     At Citadel Securities, Prieur worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. In particular, Prieur had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, he was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. Prieur and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics.

19.     In May 2021, Prieur helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information that Prieur and his team had created and gathered during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and geographic information, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees who had prior crypto experience before joining the company; and other information.

20.     In the months that followed, Prieur oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. Among other activities, Prieur coordinated and met with various internal departments and external entities to gather additional information and gauge potential partnerships; compiled and mapped the company's external outreach relating to crypto, including with companies focused on data and research, clearing and settlement, lending, and trading technology; assisted with decisions both on the internal reassignment of employees to work on crypto matters and with external recruiting to fill a wide range of positions needed for systematic trading, market making, and other endeavors in the crypto space; and summarized and internally circulated his team's thoughts on the many crypto-related workstreams his team was managing.

21.     Reflecting the relative importance of his crypto work, Prieur listed in his year-end performance assessment as "Accomplishment 1" for 2021 as: "Lead[ing] CitSec's foray into

crypto." He also listed as part of "Accomplishment 1": "delivered an initial plan and diagnostic for trading crypto for C-suite," and "review/initial interaction with 20+ vendors and exchanges." Later in that same self-assessment, Prieur stated that he had "confirmed my ability to deliver on high-visibility items," and listed "Crypto strategy kick off" as an example. In the portion of the performance assessment completed by others, Prieur's manager wrote that Prieur had "excellent strategic perspective," and that he was "one of the strongest on the team when it comes to evaluating a new opportunity or challenge from a conceptual problem solving perspective," and that a "[r]ecent example[] include[d] crypto." In communications in early 2022, Prieur's manager told Prieur that he "need[ed] to be the aggregator of all things crypto in the US and [others at Citadel Securities] need to keep you fully in the loop."

22.    By early 2022, Prieur's efforts researching, analyzing, and evaluating crypto to create valuable confidential information for Citadel Securities bore fruit. On March 14, 2022, Citadel Securities' affiliate in Asia executed its first systematic trade in crypto. An email announcing and celebrating the occasion was circulated that day to the CEO and other senior employees of Citadel Securities. The email recognized that this "exciting milestone" would not have been possible "without the relentless efforts" from across the company, and stated that "one simply cannot be more impressed by the focus and dedication of all the colleagues who have been a part of this." The email was forwarded to Prieur and two others with the message: "We came up with this date if you guys remember!"

23.    Thus, Citadel Securities had spent significant time and treasure developing confidential information to enter the crypto space, and through his work Prieur was a part of and exposed to that. Having contributed to it, Prieur understands the significant competitive strategic advantages that Citadel Securities built through its research, analysis, and evaluation of crypto and

how Citadel Securities' existing systems and information could be leveraged in the crypto space. Indeed, in the employment agreements that he executed after joining Citadel Securities in New York, Prieur acknowledged that "Citadel LLC and its affiliates . . . conduct a broad and evolving range of businesses and have devoted considerable resources to developing Confidential Information and that such Information is key to Citadel's competitive advantage and business," and that "during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information."

24. Because of the nature of his work and the sensitivity of the confidential information to which he had access, Prieur was highly compensated at Citadel Securities. In addition to his base salary, which was $215,000 in 2021, he had the opportunity to earn significant bonus and incentive compensation. For example, in 2021, his total compensation was $500,000.

25. Because Citadel Securities' confidential information regarding crypto provides it with a significant competitive advantage, this information would be highly useful to those operating in similar areas. Moreover, Citadel Securities' market making and systematic trading in traditional equities and other products is the product of deep investment in technology and intellectual property, and confidential information around those foundations has applications and competitive advantages in the crypto space. Accordingly, Citadel Securities has taken numerous measures to protect the integrity of such confidential information, including with regard to Prieur.

26. Citadel Securities has implemented measures protecting all of its confidential information, including but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel

Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions.

### III. Prieur's Non-Compete Agreement

27. On September 26, 2019, Citadel Securities and Prieur entered into the Non-Compete Agreement and several other employment agreements. The Non-Compete Agreement, , which was supported by multiple forms of valuable consideration, including a guaranteed incentive award of $58,500 for 2019, substantial monthly payments during the restricted period described below, and a separate $500 payment, provides that during Prieur's employment with Citadel Securities, and after the end of his employment during a "Restricted Period" of up to 15 months, as elected by Citadel Securities, Prieur would not "directly or indirectly" engage in any "Competitive Activity." The Non-Compete Agreement provides that if Prieur violates that, the Restricted Period "shall be extended by a period of time equal to that period beginning when the activities constituting such violation commended and ending when the activities constituting such violation terminated." The Non-Compete Agreement also provides that in exchange for his compliance and in addition to the consideration already paid to him, Citadel Securities would pay Prieur monthly payments during the Restricted Period of one twelfth of his base salary (~$17,900) each month for the first six months, $15,000 in months 7-12, and $18,000 in months 13-15.

28. The definitions for all defined terms in the Non-Compete Agreement are set forth in the parties' Mediation/Arbitration Agreement signed on the same day, which also defines "Citadel" to include "Citadel Securities Americas LLC and its affiliates."

29. "Competitive Activity" is defined to include, among other things:

10

- Becoming an "employee . . . of a Competitive Enterprise in a capacity . . . where there is a reasonable possibility that [Prieur] may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information," or "in a capacity that is similar to the capacity [he] was in, where [he] provide[s] services that are similar to the services [he] provided, or with responsibilities that are similar to the responsibilities [he] had, in each case during the final 24 months [he] was employed at Citadel;"

30.     "Competitive Enterprise" is defined to include "any business or operation, irrespective of form . . . that [] engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities."

31.     "Citadel Business Activities" are defined to include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; . . . advisory activities; . . . or any other business activities engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [Prieur's] employment with Citadel."

32.     "Confidential Information" is defined to include "know-how, other proprietary information or other information that (i) is not generally known to the public and (ii) relates to Citadel, any Citadel Client or its or their activities," and specifically identifies "internal financial affairs," "business strategies," "skill-set and experience of personnel," "automated trading strategies," "investment opportunities," and "information concerning the business relationship between Citadel and any person who sources of information, expertise or experience Citadel relies upon in its business" as being covered.

33.     The Non-Compete Agreement further provided that during the Restricted Period, Prieur must provide Citadel Securities with 14 days advance notice prior to becoming "employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." The Non-

Compete Agreement also requires Prieur to notify any employers during the Restricted Period of his obligations under the Non-Compete Agreements.

34.     In the Non-Compete Agreement, Prieur also acknowledged that "[i]f I leave Citadel [Securities] and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously."

35.     Prieur agreed that Citadel Securities is entitled to injunctive relief in the event of his breach or threatened breach of the Non-Compete Agreement. Prieur specifically acknowledged:

> Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate Citadel for losses resulting from my breach, Citadel is entitled to injunctive relief . . ., specific performance . . . , and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages.

36.     Prieur further agreed in the Non-Compete Agreement that "the scope and duration of the restrictions and limitations described [] are reasonable and necessary to protect the protectable business interests of Citadel."

37.     As a highly educated and sophisticated businessperson, Prieur's execution of the Non-Compete Agreement, and other agreements discussed herein was knowing, willful and informed.

## IV.     Prieur Leaves Citadel Securities and Joins A Competitor

38.     In January 2022, Prieur informed Citadel Securities of his resignation from the company.

39.     On March 7, 2022, he signed a Transition Letter stating that his employment with Citadel Securities would continue through March 18, 2022. The Letter set certain goals for the transition period, and in return Citadel Securities agreed to pay him a "Transition Bonus" of $98,850.

40.     On March 18, 2022, Prieur signed a Cessation of Employment Agreement & General Release. In that Agreement, Citadel Securities provided formal notice that it had elected a Restricted Period of 15 months as provided for and defined in the Non-Compete Agreement, that would run until June 19, 2023. The Agreement stated that Prieur would receive monthly Restricted Period payments as defined in the Non-Compete Agreement, so long as he complied with the terms of the Non-Compete Agreement. The Agreement also stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable."

41.     On September 9, 2022, Prieur emailed Citadel Securities that he had joined a new employer, Portofino Technologies.

42.     Portofino is a "market-making firm for cryptocurrencies" based in Zug, Switzerland. It was founded by Leonard Lancia and Alex Casimo, two former Citadel Securities employees, "with the backing of $50 million from venture capitalists." Prieur and Casimo worked together in the same suite in the Office of the Chief Operations Officer at Citadel Securities. Citadel Securities is in a separate legal dispute with Lancia and Casimo.

43.     According to Casimo, Portofino is "building a high frequency trading platform that's 100% cloud based." The company provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the

counter." It has already "traded billions of dollars in so-called stealth mode," and is now out of "stealth-mode." Portofino has 35 employees in London, Singapore, and New York.

## V.     Prieur's Employment with Portofino Technologies Violates His Contractual Obligations

44.     Under the Non-Compete Agreement, Prieur is required to provide Citadel Securities with 14 days advance notice prior to becoming employed "in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." Prieur did not provide Citadel Securities with notice of his employment with Portofino until *after* he joined that company.

45.     Moreover, Portofino is a Competitive Enterprise. A Competitive Enterprise includes "any business or operation" that "engages in, or proposes or plans to engage in, any activity that is identical to or similar to any Citadel Business Activity," and "Citadel Business Activities" include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution . . . and investment activities . . . engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [his] employment." As discussed, Citadel Securities was researching, analyzing, and evaluating crypto strategies – and in fact operationalizing and executing them – while Prieur was employed there. Indeed, Prieur was a leader in those efforts. Additionally, Citadel Securities traded in crypto based on the confidential information that Prieur created and was exposed to relating to crypto. Thus, Portofino's crypto efforts and trading, led by two former Citadel Securities employees, makes Portofino a Competitive Enterprise. Citadel Securities is currently in a separate legal dispute with the founders of Portofino.

14

46.     Critically, the Confidential Information Prieur acquired while employed at Citadel Securities relating to crypto will enable Portofino to develop its own crypto efforts and strategies to compete with Citadel Securities. Citadel Securities is harmed when other entities or people unfairly use its confidential information to trade crypto currencies, because the more entities or people engaging in these activities, the more competition exists in the market and profits are competed away. Portofino competes with Citadel to profit from trading and market making for digital assets, including in the areas of developing leading technology, developing automated and systematic trading strategies, and identifying, recruiting, and hiring the best talent.

47.     In September 2022, after learning about Prieur's employment at Portofino, Citadel Securities contacted Prieur by phone and email asking him to discuss his activities. In those communications, Citadel Securities told Prieur that it was preparing to file in court in Chicago based on, among other things, his breach of his Non-Compete Agreement by commencing employment with Portofino. Citadel Securities further told Prieur that it intended to appear before the assigned judge on September 16, 2022 to request an emergency order enjoining his employment at Portofino, and that it would send him copies of any papers that were filed with the court to his email address and by overnight mail. As of the time of this filing, Prieur had not responded to Citadel Securities' most recent communication to him regarding the planned filing of this action.

48.     On September 16, 2022, pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a demand with the American Arbitration Association for expedited private mediation in Chicago. If mediation is not successful, there is a potential for private arbitration with the American Arbitration Association in Chicago as well.

## COUNT I: BREACH OF THE NON-COMPETE AGREEMENT

49.     Citadel Securities repeats and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

50.     The Non-Compete Agreement is a valid and enforceable contract.

51.     Citadel Securities has performed every obligation it owes to Prieur under the Non-Compete Agreement.

52.     The Non-Compete Agreement requires that Prieur must notify Citadel Securities at least 14 days prior to commencing any new employment during the Restricted Period.

53.     The Non-Compete Agreement prohibits Prieur from engaging in Competitive Activity during the Restricted Period.

54.     Prieur joined Portofino without informing Citadel Securities at least fourteen days in advance.

55.     Moreover, Prieur engaged in Competitive Activity during the Restricted Period by joining Portofino, which is a Competitive Enterprise.

56.     Prieur therefore breached the Non-Compete Agreement.

57.     Citadel Securities has no adequate remedy at law.

58.     Citadel Securities will suffer irreparable harm if Prieur is not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Citadel Securities prays that the Court enter a temporary restraining order, preliminary injunction, and judgment in its favor:

(i)     Enjoining Prieur, and those acting in concert with him, from breaching the terms of his Non-Compete Agreement with Citadel Securities, from being employed by Portofino during the Restricted Period, using or disclosing Citadel Securities' confidential information; and

(ii)     For all such further relief as may be appropriate.


Dated:  September 16, 2022            */s/ Adam L. Hoeflich*

One of Its Attorneys

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
Courthouse Place
54 West Hubbard Street
Chicago, Illinois 60654
(312) 494-4400
Firm ID No. 31210

John M. Dickman
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
(312) 558-1255
Firm ID No. 37976

*Attorneys for Plaintiff Citadel Securities
Americas Services LLC*

17

## **VERIFICATION**

Under penalties as provided by law, the undersigned, Heath P. Tarbert, Chief Legal Officer for Citadel Securities Group, being first duly sworn under oath, deposes and states that he has read the foregoing Verified Complaint for Injunctive and Other Relief, and on the basis of his personal knowledge, review of appropriate business records and discussions with relevant knowledgeable personnel, he believes the allegations contained therein are true and correct except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he believes same to be true to the best of his knowledge, information and belief. This verification is made by deponent and not by Plaintiff because Plaintiff is a limited liability company and deponent is a duly authorized representative thereof.

_____
Heath P. Tarbert

Sworn to and subscribed before me this _____th day of September, 2022.

_____
Notary Public

My Commission Expires: ___8/31/2025___

```
Official Seal
Sara Anne Verstynen
Notary Public State of Illinois
My Commission Expires 8/31/2025
```

Appearance and Jury Demand *        (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY     DEPARTMENT/ 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid          ☐ 0904 - Fee Waived

                ☐ 0908 - Trial Lawyers Appearance - No Fee

☐ Jury Demand *     ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury

                ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of: ⦿ Plaintiff ☐ Defendant

Litigant's Name: Citadel Securities Americas Services LLC

Signature: /s/ Adam L. Hoeflich

☑ Initial Counsel of Record    ☐ Pro Se (Self-represented)     ☐ 2810 Rule 707 Out-of-State Counsel (pro hac vice)

☐ Additional Appearance    ☐ Substitute Appearance

⦿ Atty. No.: 31210     ○ Pro Se 99500

Name: Adam L. Hoeflich

Atty. for (if applicable):

Bartlit Beck LLP

Address: 54 W. Hubbard Street

City: Chicago

State: IL   Zip: 60654   Phone: (312) 494-4400

Primary Email: adam.hoeflich@bartlitbeck.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:

☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ Adam L. Hoeflich

Attorney for ⦿ Plaintiff ○ Defendant

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

**cookcountyclerkofcourt.org**

Page 1 of 1

Appearance and Jury Demand *          (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY    DEPARTMENT / 1st DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance    ☐ 0900 - Fee Paid        ☐ 0904 - Fee Waived
                ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *    ☐ 1900 - Appearance and Jury Demand/Fee Paid    ☐ Twelve-person Jury
                ☐ 1904 - Appearance and Jury Demand/No Fee Paid    ☐ Six-person Jury

The undersigned enters the appearance of: ⦿ Plaintiff ◯ Defendant

Litigant's Name: Citadel Securities Americas Services LLC

Signature: /s/ John M. Dickman

☐ Initial Counsel of Record    ☐ Pro Se (Self-represented)    ☐ 2810 Rule 707 Out-of-State Counsel (pro hac vice)

☑ Additional Appearance    ☐ Substitute Appearance

⦿ Atty. No.: 37976    ◯ Pro Se 99500

Name: John M. Dickman

Atty. for (if applicable):

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Address: 155 North Wacker Drive, Suite 4300

City: Chicago

State: IL   Zip: 60606   Phone: (312) 558-1255

Primary Email: john.dickman@ogletree.com

**IMPORTANT**

*Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)*

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**

I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/ John M. Dickman

Attorney for ⦿ Plaintiff ◯ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

Page 1 of 1

Appearance and Jury Demand *                                                    (12/01/20) CCG 0009

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CHANCERY _____ DEPARTMENT/ _1st_ DISTRICT

| | |
|---|---|
| Citadel Securities Americas Services LLC | Case No. _____ |
| Plaintiff | Claimed $: _____ |
| v. | Return Date: _____ Time: _____ |
| Vincent Prieur | Court Date: _____ Room No.: _____ |
| Defendant | |
| | Address of Court District for Filing |

### APPEARANCE AND JURY DEMAND *

☑ General Appearance      ☐ 0900 - Fee Paid                              ☐ 0904 - Fee Waived
                          ☐ 0908 - Trial Lawyers Appearance - No Fee
☐ Jury Demand *           ☐ 1900 - Appearance and Jury Demand/Fee Paid   ☐ Twelve-person Jury
                          ☐ 1904 - Appearance and Jury Demand/No Fee Paid ☐ Six-person Jury

The undersigned enters the appearance of:   ● Plaintiff   ○ Defendant

Litigant's Name:  Citadel Securities Americas Services LLC

Signature: /s/   Christopher Y. Lee

☐ Initial Counsel of Record    ☐ Pro Se (Self-represented)      ☐ 2810 Rule 707 Out-of-State Counsel
                                                                    (pro hac vice)
☑ Additional Appearance        ☐ Substitute Appearance

● Atty. No.: 42418             ○ Pro Se 99500

Name:  Christopher Y. Lee

Atty. for (if applicable):

Sidley Austin LLP

Address:  One South Dearborn

City:  Chicago

State:  IL   Zip: 60603   Phone: (312) 853-7000

Primary Email:  chris.lee@sidley.com

| |
|---|
| **IMPORTANT** |
| *Once this Appearance form is filed, photocopies of this form must be sent to all other parties named in this case (or to their attorneys) using either regular mail, fax, email or personal delivery. (See Illinois Supreme Court Rules 11 and 13 for more information.)* |

Pro Se Only:
☐ I have read and agree to the terms of Clerk's Office
   Electronic Notice Policy and choose to opt in to electronic
   notice from the Clerk's office for this case at this email address:

Email: _____

**\* Strike demand for trial by jury if not applicable.**
I certify that a copy of the within instrument was served on all parties who have appeared and have not heretofore been found by the Court to be in default for failure to plead.

/s/  Christopher Y. Lee

Attorney for  ● Plaintiff   ○ Defendant

### Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois

**cookcountyclerkofcourt.org**

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | For Court Use Only |
|---|---|---|

Cook _____ COUNTY

| Instructions ▼ | |
|---|---|
| Enter above the county name where the case was filed. | Citadel Securities Americas Services LLC<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | v. |
| Enter the names of all people you are suing as Defendants/ Respondents. | Vincent Prieur<br>**Defendant / Respondent** *(First, middle, last name)* |
| | **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** | **Defendant/Respondent's address and service information:** |
|---|---|---|

**1.** **Defendant/Respondent's address and service information:**

a. Defendant/Respondent's primary address/information for service:

Name *(First, Middle, Last)*: Vincent Prieur

Registered Agent's name, if any: _____

Street Address, Unit #: 91 Avenue Emile Zola

City, State, ZIP: 75015 Paris, France

Telephone: (929) 384-2881   Email: v.n.prieur@gmail.com

In **1b**, enter a second address for Defendant/ Respondent, if you have one.

b. If you have more than one address where Defendant/Respondent might be found, list that here:

Name *(First, Middle, Last)*: Vincent Prieur

Street Address, Unit #: 45 W. 69th Street, Apt. 6

City, State, ZIP: New York, NY 10023

Telephone: (929) 384-2881   Email: v.n.prieur@gmail.com

In **1c**, check how you are sending your documents to Defendant/ Respondent.

c. Method of service on Defendant/Respondent:

☐ Sheriff   ☐ Sheriff outside Illinois: _____
*County & State*

☑ Special process server   ☐ Licensed private detective

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:**<br>Amount claimed:   $ _____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*:   Citadel Securities Americas Services LLC<br>Street Address, Unit #:   131 S. Dearborn Street<br>City, State, ZIP:   Chicago, IL 60603<br>Telephone:  (312) 395-2464     Email:   jill.hutchison@citadel.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**<br>☐ a.  To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address: _____<br>City, State, ZIP: _____ |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ b.  Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>       *Date*                    *Time*                                    *Courtroom*<br>**In-person at:**<br>_____<br>*Courthouse Address*       *City*                          *State*        *ZIP* |
| In **4b**, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | OR<br>**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance")**:**<br>     By telephone: _____<br>                           *Call-in number for telephone remote appearance*<br>     By video conference: _____<br>                                 *Video conference website*<br>     _____<br>     *Video conference log-in information (meeting ID, password, etc.)*<br>Call the Circuit Clerk at: _____ or visit their website<br>                                *Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>       *Website* |

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____          *Seal of Court* |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **Clerk of the Court:** _____<br><br>**This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>                        *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Cook _____ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | *For Court Use Only* |
|---|---|---|

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | Citadel Securities Americas Services LLC<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>Vincent Prieur<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

_____
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
    member or lives there:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____
    And left it with: _____
               *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
    and by sending a copy to this defendant in a postage-paid, sealed envelope to the
    above address on _____ , 20 _____ .
    ☐ On the Corporation's agent, _____
                      *First, Middle, Last*
    Male ☐  Female ☐  Non-Binary ☐  Approx. Age: _____  Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

(06/21)

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. |
| --- |

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. |
| --- |

**By:** _____

*Signature by:*  ☐ Sheriff
  ☐ Sheriff outside Illinois:

  _____
  *County and State*

  ☐ Special process server
  ☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return: $ _____
Miles _____ $ _____
Total   $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

## EMERGENCY MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), through its undersigned attorneys, moves this Court, pursuant to 735 ILCS 5/2-202, for leave to serve Defendants Vincent Prieur by a private process server. In support of this motion, Citadel Securities states as follows:

1. Citadel Securities seeks the appointment of It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, PERC No. 117.000885, as special process server in this case.

2. It's Your Serve is not a party to this action and will use a process server over the age of 18.

3. Exigent circumstances exist for the appointment of a special process server. Specifically, as set forth more fully in the Verified Complaint for Injunctive and Other Relief and the Emergency Motion for a Temporary Restraining Order filed simultaneously herewith, the Defendant Prieur is in breach of his Non-Compete Agreement with Citadel Securities and, upon information or belief, has or threatens to use or disclose confidential information of Citadel Securities.

4.      Based upon the foregoing, it is imperative that Citadel Securities proceed quickly and, if at all possible, avoid any delay which may otherwise occur should service of process be attempted through the office of the Sheriff.

5.      Service of the summons and Verified Complaint will be in accordance with the Illinois Code of Civil Procedure and Illinois Supreme Court Rules.

6.      Under penalties provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth herein are true and correct or on information and belief, certifies that he believes the same to be true.

WHEREFORE, Citadel Securities requests that his motion be granted.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

2

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| **CITADEL SECURITIES** | ) | |
| **AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>ORDER APPOINTING SPECIAL PROCESS SERVER</u>

This cause coming to be heard on Citadel Securities Americas Services LLC's Emergency Motion for Appointment of Special Process Server, the Court having reviewed the motion and being fully advised,

IT IS HEREBY ORDERED that It's Your Serve, 134 N. LaSalle St. #1410, Chicago, IL 60602, is appointed as special process server in this case.


Date: _____       Judge: _____


John Dickman
**OGLETREE, DEAKINS,**
**NASH, SMOAK &**
**STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Plaintiff's Motion for Appointment of Special Process Server** on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: <u>*/s/ Christopher Y. Lee*</u>
Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.** |
| | ) | |
| **VINCENT PRIEUR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), pursuant to 735 ILCS 5/11-101, hereby moves this Court for a Temporary Restraining Order.

For the reasons stated in the Plaintiff's Memorandum of Law in Support of this motion, Plaintiff respectfully requests for an order, in the form attached hereto, maintaining the *status quo* by enjoining Defendant Vincent Prieur from employment at Portofino Technologies.

Dated:  September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

John Dickman
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

1

Daniel D. Rubinstein
Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, one of the attorneys for Plaintiff, hereby certifies that he served a true and correct copy of the foregoing **Emergency Motion for Temporary Restraining Order**, on September 16, 2022 via email and overnight delivery to the following addresses:

v.n.prieur@gmail.com

91 Avenue Emile Zola
75015 Paris
France


45 W 69th St
Apt 6
New York, NY 10023
United States of America

By: _/s/ Christopher Y. Lee_____
        Christopher Y. Lee

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), respectfully requests the immediate intervention of the Court to maintain the status quo pending mediation of the underlying dispute pursuant to and in accordance with the parties' Mediation/Arbitration Agreement. On March 18, 2022, Defendant Vincent Prieur resigned from his position at Citadel Securities. On September 9, 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"), a competitor of Citadel Securities in the cryptocurrency ("crypto") space. Prieur's employment with Portofino is a violation of his Non-Compete Agreement with Citadel Securities. Citadel Securities' valuable and proprietary confidential information is at stake. Citadel Securities will suffer irreparable harm if Prieur is not enjoined immediately. Accordingly, Citadel Securities' motion for a temporary restraining order should be granted.

## BACKGROUND

### A. Citadel Securities' Business

Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. (Citadel Securities'

1

Verified Complaint for Injunctive and Other Relief ("Compl.") ¶ 13.) Using proprietary intellectual property and highly skilled personnel, Citadel Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing. (*Id.*)

Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. (*Id.* ¶ 14.) Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. (*Id.*) Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties. (*Id.*)

Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. (*Id.* ¶ 15.) By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process. (*Id.*) A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia

executed its first systematic crypto trade. (*Id.*) That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. (*Id.*) Furthermore, the company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies. (*Id.*)

Citadel Securities has implemented measures protecting its confidential information including, but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions. (*Id.* ¶ 26.)

### B. Defendant's Employment with Citadel Securities

Defendant commenced employment at Citadel Securities in April 2019 as a Business Manager in the company's London office. (*Id.* ¶ 16.) In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022. (*Id.*) Prior to joining Citadel Securities, Defendant obtained an undergraduate degree in economics from the London School of Economics in 2010, and an MBA from Harvard Business School in 2017. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, he worked as an associate consultant at McKinsey & Co. (*Id.* ¶ 17.)

At Citadel Securities, Defendant worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. (*Id.* ¶ 18.) In particular, he had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, Defendant was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. (*Id.*) Defendant and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. (*Id.*) They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics. (*Id.*)

In May 2021, Defendant helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. (*Id.* ¶ 19.) The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information Defendant and his team had gathered and created during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees

who had prior crypto experience before joining the company; and other information. (*Id.*) In the months that followed, Defendant oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. (*Id.* ¶ 20.)

In connection with his hiring and as a condition of his employment, Defendant executed a Non-Compete Agreement, Non-Disclosure Agreement ("NDA"), Non-Solicitation Agreement, and Mediation/Arbitration Agreement. (*Id.* ¶ 27.) As part of the Non-Compete Agreement, Defendant agreed that he would not perform similar services for, or serve in a similar role with any competitor of Citadel Securities for a period of up to 15 months. (*Id.* ¶¶ 27–29.) Under this Non-Compete Agreement, Citadel Securities is required to pay Defendant $15,000–$18,000 each month he is restricted from working for a competitor so long as he complies with his obligations under that Agreement. (*Id.* ¶ 27.) Additionally, as part of the Mediation/Arbitration Agreement, Defendant agreed to arbitrate any disputes with Citadel Securities before the American Arbitration Association ("AAA"). However, the Mediation/Arbitration Agreement specifically allows either party to seek a temporary injunction from a "court of competent jurisdiction" to prevent the other party from breaching any agreement until the dispute has been submitted to and resolved by the AAA.

## II.    Defendant's Resignation and the Instant Litigation

In January 2022, Defendant informed Citadel Securities that he was resigning his position, and on March 18, 2022, he resigned. (*Id.* ¶¶ 38, 40.) On September 9, 2022, Defendant emailed Citadel Securities that he had joined a new employer, Portofino Technologies. (*Id.* ¶ 41.) Portofino is a competitor of Citadel Securities in the crypto space. (*Id.* ¶¶ 42–43, 45.)

Pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a mediation request before the AAA on September 16, 2022 seeking redress for Defendant's actions. (*Id.* ¶ 48.) If mediation is not successful, there is a potential for private arbitration with

the AAA in Chicago as well. (*Id.*) Citadel Securities requests that this Court enter a temporary restraining order to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

## LEGAL STANDARD

Preliminary injunctive relief such as a temporary restraining order is a "provisional remedy granted to preserve the status quo, pending a hearing on the merits of the case." *Dam, Snell & Taveirne, Ltd. v. Verchota*, 324 Ill. App. 146, 155, 754 N.E.2d 464, 471 (1st Dist. 2001). Under Illinois law, the status quo is the "last, actual, peaceable, uncontested status" before litigation. *Jones v. Dep't of Public Aid*, 272 Ill. App. 3d 184, 193, 867 N.E. 2d 563, 572 (3d Dist. 2007). Temporary restraining orders and preliminary injunctions are appropriate to maintain the status quo pending the outcome of arbitration proceedings. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993); *OptionsCity Software, Inc. v. Baumann*, 2015 WL 3855622, at *2 (N.D. Ill. June 19, 2015) (issuing a temporary restraining order to enjoin solicitation of employer's customers pending arbitration).

Whether to grant a temporary restraining order is within "the sound discretion of the trial court." *Dam, Snell & Taveirne, Ltd.*, 324 Ill. App. at 155, 754 N.E.2d at 471. A party seeking a temporary restraining order must show: (1) it has a protectible interest; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) it has no adequate remedy at law; and (4) a likelihood of success on the merits. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 567, 927 N.E.2d 88, 95 (2010). However, the movant "is not required to make out a case which would entitle [it] to judgment at trial; rather, [it] need only show that [it] raises a 'fair question' about the existence of [its] right and that the court should preserve the status quo until the case can be

decided on the merits." *Id.* Here, Citadel Securities has certainly raised a "fair question" sufficient for this Court to enter a temporary restraining order maintaining the "last, actual, peaceable, uncontested status" between the parties (specifically, Defendant not working for Citadel Securities' direct competitor) pending the outcome of the mediation proceeding.

<u>**ARGUMENT**</u>

## I.  <u>Citadel Securities Has a Legally Protectible Interest</u>

Citadel Securities has a legally protectible legitimate business interest in enforcing the Non-Compete Agreement to protect its confidential information, namely its opportunities and strategies relating to crypto. Illinois law recognizes that a company has a protectible interest in confidential information. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011) (acquisition of confidential information is a factor that should be considered when finding a legitimate business interest in enforcement of a restrictive covenant); *Segerdahl Corp. v. Giovanni*, 2022 IL App (1st) 211610-U ¶ 34 (employer seeking injunction had a "clearly ascertained right in need of protection by virtue of its legitimate business interest in protecting its confidential information"). "Confidential information" is information that an employer has that is not generally known to competitors and provides the employer with a competitive advantage. *The Agency, Inc. v. Grove*, 362 Ill. App. 3d 206, 216, 839 N.E.2d 606, 615 (2d Dist. 2005).

Here, while employed at Citadel Securities, Defendant became intimately familiar with, and participated in the development and gathering of, confidential information relating to Citadel Securities' crypto efforts, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and internal evaluation of advantages and disadvantages of conducting operations in different geographic regions around the world, among other things; in-depth analysis of crypto products, including data on trends and funding rates;

evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding approaches to structure and affiliations; staffing information, including information on Citadel Securities employees who had prior crypto experience before joining the company; and other information. Further, as discussed in detail above, Citadel Securities has implemented extensive measures to ensure that its confidential information is not disclosed outside of Citadel Securities (including to its own investors). Thus, Citadel Securities has a protectible interest in its confidential information related to its crypto efforts.

**II.      Citadel Securities is Likely to Succeed on the Merits of Its Claim**

Citadel Securities is likely to succeed on the merits of its breach of Non-Compete Agreement claim because Defendant has accepted employment with Portofino, a direct competitor with Citadel Securities in the crypto space. Defendant assented to the Non-Compete Agreement in entering into his employment agreement that was supported by adequate consideration, and has waived his right to contest the enforceability of the Non-Compete Agreement. Indeed, Defendant's separation/release agreement with Citadel Securities explicitly stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable." (Compl. ¶ 40.) Moreover, even if Defendant could challenge the terms of the Non-Compete Agreement, the restrictions in that agreement are enforceable.

**A.      The Non-Compete Agreement Is Enforceable.**

Under Delaware law,[1] a covenant not to compete in a valid employment agreement is enforced if (1) "its purpose is to protect the legitimate interests of the employer" and (2) "its duration is reasonably limited temporally and its scope is reasonably limited geographically."

---

[1] Delaware law is the chosen law of the parties and governs the Non-Compete Agreement. (Compl. ¶ 8.)

*MQ Assocs. V. N. Bay Imaging, LLC*, 2007 WL 2566022, at \*3 (N.D. Fla. Aug. 31, 2007) (Delaware law) (citing *McCann Suveyors, Inc. v. Evans*, 611 A.2d 1, 4-5 (Del. Ch. 1987)).[2]

Citadel Securities has a legitimate interest in protecting itself form a former employee's use of its confidential information against it. Where "valuable trade secret or other proprietary information has been learned by the defendant and, therefore, his competition with plaintiff's business may be particularly effective and unfair," the employer has a legitimate economic interest at stake and the provision is "likely to be specifically enforced." *McCann*, 611 A.2d at 4.

Additionally, the time and geographic restrictions are reasonable. The reasonableness of the duration is "based on the nature of the employee's position and the context of a particular industry." *Del. Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at \*14 (Del. Ch. 2002) (holding two-year duration reasonable time restriction). Here, the duration of the non-compete provision is limited to 15 months (it has been less than 6 months since Defendant left the company, with less than 10 months left to run on the non-compete). This time period is tailored to prevent Defendant's competitive use of the confidential information he gained from his employment with Citadel Securities. *See also Zabaneh Franchises, LLC v. Walker*, 2012 IL App (4th) 110215 ¶ 21, 972 N.E.2d 344, 350 (4th Dist. 2012) (enforcing a non-competition agreement with a two-year time restriction); *Gillespie v. Carbondale & Marion Eye Ctrs., Ltd.*, 251 Ill. App. 3d 625, 629, 622 N.E.2d 1267, 1270-71 (5th Dist. 1993) (same).

Likewise, the geographic scope of the agreement is reasonable. Where, as here, the employer's business "extends throughout the nation, or indeed even internationally," a non-competition agreement with no geographic limitation can be enforceable. *Research & Trading*

---

[2] Similarly, Illinois courts will enforce a non-competition agreement if it "(1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (2) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396, 358 Ill. Dec. 322, 325 (2011).

*Corp. v. Pfuhl*, 1992 WL 345465, at \*12 (Del. Ch. 1992); *see also Instrumentalist Co. v. Band, Inc.*, 134 Ill. App. 3d 884, 895, 480 N.E.2d 1273, 1281 (1st Dist. 1985) (enforcing a non-competition agreement that contained a nationwide geographic restriction where the plaintiff company's activities were national in scope; *Zabaneh Franchises, LLC*, 972 2012 IL App (4th) 110215 ¶ 22, N.E.2d at 350 (finding geographical restrictions unnecessary to enforce non-compete agreement). Indeed, the Citadel Securities personnel that worked on crypto were spread across the company's offices and regions. Moreover, Defendant acknowledged in the Non-Compete Agreement that he understood that Citadel Securities' business is global in scope and the he understood "the need for the restrictions in this Agreement to be without limitation as to location."

In assessing the enforceability of a non-competition agreement, Illinois courts also consider the hardship to defendant and the effect upon the general public. *See Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d at 396. Here, Defendant will not experience any hardship if the Non-Compete Agreement is enforced because the Non-Compete Agreement provides that Citadel Securities will pay Defendant $15,000–18,000 per month if he abides by its terms. The Non-Compete Agreement is also not contrary to the public interest and has no effect on the general public because it was entered into by two private parties and does not injure the public. *See Menasha Packaging Co, LLC v. Pratt Indus., Inc.*, 2017 WL 639634, at \*7 (D.N.J. Feb. 15, 2017) (applying Illinois law) (no likely injury to the public when enforcing restrictive covenant in a "highly competitive industr[y]," particularly "where the public [is] still free to seek the services of the employee's new employer"); *see also City of Chicago v. Chicago Fiber Optic Corp.,* 287 Ill. App. 3d 566, 573, 678 N.E.2d 693, 698 (1st Dist. 1997) ("Public policy strongly favors the freedom to contract."). Additionally, the public interest is served by non-competition

agreements "necessary to protect one party from injury by the unfair use of the subject-matter of the contract by the other party." *First Health Group Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 229 (M.D. Pa. 2001) (applying Illinois law) (quoting *Union Trust & Sav. Bank of E. St. Louis v. Kinloch Long-Distance Tel. Co. of Mo.*, 258 Ill. 202, 101 N.E. 535 (1913)); *Menasha*, 2017 WL 639634, at \*11 ("Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships.").

### III.   Citadel Securities Will Suffer Irreparable Harm and Has No Adequate Remedy at Law

If Defendant is permitted to misappropriate and use Citadel Securities' confidential information, money damages would be insufficient to compensate Citadel Securities and the harm would irreparable. Where, as here, a former employee violates enforceable restrictive covenants, "ongoing competition itself [is] a sufficient basis" to find irreparable harm. *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 272, 880 N.E.2d 188, 198 (4th Dist. 2007); *see also Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 74, 589 N.E.2d 640, 648 (2d Div. 1992) ("Once a protectable interest is established, irreparable injury is presumed to ensue if the interest is not protected."). Indeed, no adequate remedy at law exists because "loss of competitive position is intangible, incapable of being measured." *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 401, 627 N.E.2d 21, 27 (1st Dist. 1993); *see also IDS Fin. Servs., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (holding that "[w]here trade secrets . . . are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable."). Thus, legal remedies alone cannot sufficiently redress the harm Defendant has inflicted and will inflict upon Citadel Securities, and Citadel Securities is entitled to an injunction to prevent those injuries.

## CONCLUSION

For these reasons, Citadel Securities respectfully requests that the Court grant Citadel Securities' Motion for a Temporary Restraining Order and enjoin Defendant from employment at Portofino to maintain the status quo through the mediation with the AAA. If the mediation is not successful at resolving the dispute, Citadel Securities will seek either to renew the temporary restraining order or obtain a preliminary injunction, or seek relief in AAA arbitration.

Dated: September 16, 2022

Respectfully submitted,

CITADEL SECURITIES AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*

One of Its Attorneys

    John Dickman
    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
    155 North Wacker Drive, Suite 4300
    Chicago, Illinois 60606
    (312) 558-1255
    Firm ID No. 37976

    Daniel D. Rubinstein
    Christopher Y. Lee
    **SIDLEY AUSTIN LLP**
    One South Dearborn
    Chicago, Illinois 60603
    (312) 853-7000
    Firm ID No. 42418

    Adam L. Hoeflich
    **BARTLIT BECK LLP**
    54 West Hubbard Street
    Chicago, IL 60654
    (312) 494-4400
    Firm ID No. 31210

    *Attorneys for Plaintiff*

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| CITADEL SECURITIES | ) | |
| AMERICAS SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VINCENT PRIEUR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF CITADEL SECURITIES AMERICAS SERVICES**
**LLC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter having come before the Court on September 16, 2022, for the emergency motion of Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Plaintiff"), for a Temporary Restraining Order, notice having been given to Defendant, a hearing having been held, and the Court being fully advised and with good cause:

1.     Based on the evidence presented by Plaintiff, which consists of a Verified Complaint, this Court finds a substantial likelihood that Plaintiff will succeed on the merits of its cause of action. The evidence before the Court indicates that Defendant Vincent Prieur ("Defendant") violated his non-compete agreement with Plaintiff by joining Portofino Technologies, a competitive enterprise to Plaintiff. If proven, this action will very likely result in a finding of liability against Defendant on Plaintiff's claim.

2.     The Court finds that Plaintiff lacks an adequate remedy at law and would suffer irreparable harm in the absence of a Temporary Restraining Order. Plaintiff has presented sufficient evidence to show that its confidential information, which it has invested hundreds of millions of dollars in developing and protecting, is at risk due to Defendant's actions and

threatened actions. In this situation, the threat of irreparable harm is significant.

3.      The balance of harms weighs in favor of a Temporary Restraining Order. Plaintiff has shown a meaningful risk of irreparable harm.

4.      The public interest is clearly served by granting a Temporary Restraining Order, as the public interest is served by the enforcement of the parties' valid non-compete agreement.

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is granted and IT IS HEREBY ORDERED that:

(a)      Defendant, within twenty-four (24) hours of the entry of this Order, must cease all employment with and services rendered for Portofino Technologies;

(b)      Defendant shall preserve all documents (including electronically stored information), devices, equipment, and materials in whatever form that are or could be relevant to the allegations of the Verified Complaint;

(c)      Defendant, within twenty-four (24) hours of the entry of this Order, shall provide to Plaintiff a declaration certifying his compliance with paragraphs (a) and (b) above;

(d)      This order shall remain in effect until modified by the Court. A hearing is scheduled for _____ __, 2022.


Entered on this _____ day of September, 2022      Judge: _____

| | | |
|---|---|---|
| John Dickman | Daniel D. Rubinstein | Adam L. Hoeflich |
| **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.** | Christopher Y. Lee **SIDLEY AUSTIN LLP** | **BARTLIT BECK LLP** 54 West Hubbard Street |
| 155 North Wacker Drive, Suite 4300 | One South Dearborn Chicago, Illinois 60603 | Chicago, IL 60654 (312) 494-4400 |
| Chicago, Illinois 60606 (312) 558-1255 Firm ID No. 37978 | (312) 853-7000 Firm ID No. 42418 | Firm ID No. 31210 |

*Attorneys for Plaintiff*

2

FILED
9/22/2022 1:34 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09197
Calendar, 16
19604492

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

CITADEL SECURITIES                    )
AMERICAS SERVICES LLC,                )
                                      )
    **Plaintiff,**                    )
                                      )
    **vs.**                          )   **Case No. 2022CH09197**
                                      )
VINCENT PRIEUR,                       )
                                      )
    **Defendant.**                    )

<u>**NOTICE OF EMERGENCY MOTION**</u>

To:

Vincent Prieur               William J. Tarnow, II
91 Avenue Emile Zola      Neal Gerber & Eisenberg LLP
75015 Paris                 2 N. LaSalle Street, Suite 1700
France                     Chicago, IL 60602-3801
                           (312) 269-8489
45 W 69th St, Apt 6        wtarnow@nge.com
New York, NY 10023
United States of America
v.n.prieur@gmail.com

PLEASE TAKE NOTICE that on September 23, 2022 at 10:00 a.m., the undersigned shall appear before Judge David B. Atkins in the Circuit Court of Cook County, County Department, Chancery Division, Courtroom 2102, Richard J. Daley Center, Chicago, Illinois 60602, and present Plaintiff's Emergency Motion for Temporary Restraining Order and Emergency Motion for Appointment of Special Process Server, copies of which have previously been served upon you.

FILED DATE: 9/22/2022 1:34 PM   2022CH09197

Dated:  September 22, 2022

Respectfully submitted,

CITADEL SECURITIES
AMERICAS SERVICES LLC

By: */s/ Adam L. Hoeflich*
   One of Its Attorneys

Adam L. Hoeflich
**BARTLIT BECK LLP**
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
Firm ID No. 31210

John Dickman
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
(312) 558-1255
Firm ID No. 37976

Christopher Y. Lee
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000
Firm ID No. 42418

*Attorneys for Plaintiff*

4882-5641-5795