# EXHIBIT A

Hearing Date: 1/17/2023 10:30 AM
Location: Court Room 2102
Judge: Atkins, David B.

Case: 1:22-cv-05185 Document #: 10-1 Filed: 09/23/22 Page 2 of 19 PageID #:216

FILED
9/16/2022 2:46 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09197
Calendar, 16
19529245

FILED DATE: 9/16/2022 2:46 PM   2022CH09197

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 2022CH09197 |
| v. ) | |
| ) | |
| **VINCENT PRIEUR,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), for its Verified Complaint for Injunctive and Other Relief ("Complaint") against Defendant Vincent Prieur, alleges as follows:

### INTRODUCTION

1. Citadel Securities seeks immediate injunctive relief to maintain the status quo pending a private mediation initiated by Citadel Securities (and potential arbitration) pursuant to the parties' Mediation/Arbitration Agreement. Citadel Securities former executive, Prieur, has joined a key competitor that was deceptively and surreptitiously formed by other former Citadel Securities executives in violation of their obligations to Citadel Securities. Prieur was intimately involved over the course of several months in the research and development of Citadel Securities' entire highly confidential crypto trading and market making strategy. Unless enjoined by the Court, Prieur threatens to use Citadel Securities' highly confidential information to assist this unlawful enterprise in competing unfairly with Citadel Securities and causing Citadel Securities irreparable harm.

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

2. Prieur is a former senior vice president in the Office of the Chief Operating Officer at Citadel Securities. He has a degree in economics from the London School of Economics and an MBA from Harvard Business School. Prior to working at Citadel Securities, he worked at the London Stock Exchange and McKinsey & Co.

3. Prieur is a well-educated and experienced businessperson who earned significant compensation at Citadel Securities. He had access and visibility into valuable confidential information critical to the company's business. In particular, Prieur was a key member of the Citadel Securities team that in 2021 researched, analyzed, and evaluated opportunities and developed a strategy for the Company to enter the cryptocurrency ("crypto") space. In his 2021 annual performance evaluation, Prieur identified his "Accomplishment 1" as "lead[ing] CitSec's foray into crypto." In March 2022, when Citadel Securities, through its affiliate, executed its first systematic crypto trade based on the confidential information that Prieur and his team created and gathered relating to crypto, Prieur was one of a small group of recipients of an email celebrating the "milestone" and the "[g]reat accomplishment!"

4. Four days after Citadel Securities' first systematic crypto trade, Prieur resigned from the company. He was subject to a non-compete agreement (the "Non-Compete Agreement") into which he had entered that prohibited him from engaging in "Competitive Activity" for 15 months after the end of his employment (the "Restricted Period"). He receives monthly payments from Citadel Securities of $15,000–$18,000 per month during the Restricted Period, provided he complies with his obligations.

5. In September 2022, Prieur informed Citadel Securities that he had joined a new employer, Portofino Technologies ("Portofino"). Portofino is a Swiss-based "market-making firm for cryptocurrencies" that two former Citadel Securities employees founded. One of these founders

worked with Prieur in the same suite of the Office of the Chief Operating Officer at Citadel Securities. Portofino provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the counter," and claims to have been operating in "stealth mode" and "building a high frequency trading platform." Portofino is a "Competitive Enterprise" with Citadel Securities as defined in the employment agreements that Prieur executed with Citadel Securities.[1] Prieur's employment at Portofino constitutes "Competitive Activity" under his Non-Compete Agreement, and Prieur has breached the Non-Compete Agreement as a result.

6. Citadel Securities initiates this lawsuit to enjoin Prieur from continuing to breach his Non-Compete Agreement by working at Portofino and from using or disclosing Citadel's confidential information and business methods, for which Citadel can never be compensated. No adequate remedy at law exists.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over Prieur because he consented to this Court's jurisdiction in the Non-Compete Agreement and a separate Mediation/Arbitration Agreement that he executed with Citadel Securities on September 26, 2019.

8. Venue is proper in this Court as both parties agreed in the Non-Compete Agreement and Mediation/Arbitration Agreement to the resolution of disputes in the state courts in Illinois, and the cause of action arises from transactions and activities in Cook County.

9. The Mediation/Arbitration Agreement provides that Citadel Securities or Prieur "may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or

---

[1] Citadel Securities is in a separate legal dispute with Portofino's founders relating to allegations of unlawful conduct in establishing Portofino.

3

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration, or court proceedings." The Non-Compete Agreement and the Mediation/Arbitration Agreement also provide that Prieur consents to "the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois," and that he "waive[s] any claim that the courts in Delaware or Illinois are an inconvenient forum."

10. The Non-Compete Agreement and Mediation/Arbitration Agreement also provide that Delaware law governs Prieur's employment agreements, and that he agrees "to accept service of any court filings and process by delivery to my most current home address on record with Citadel [Securities] via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process."

## PARTIES

11. Plaintiff Citadel Securities is a limited liability company registered in Delaware and with a principal place of business in the City of Chicago, Cook County, Illinois for the full time that Prieur was employed by Citadel Securities.

12. Defendant Vincent Prieur was an employee of Citadel Securities in its New York office from September 2019 through March 2022. He is a citizen of France and the United Kingdom. On information and belief, he maintains residences in New York City and Paris.

## FACTUAL ALLEGATIONS

### I. Citadel Securities Is A Leading Market Maker Active In Crypto

13. Citadel Securities is a market-making firm across a broad array of fixed income and equity financial products, including for retail and institutional clients. A "market maker" is an entity that stands ready to fill orders for a particular security or currency, and upon receiving an order, fills that order with available inventory or by sourcing liquidity from an exchange or other market venue. Using proprietary intellectual property and highly skilled personnel, Citadel

4

FILED DATE: 9/16/2022 2:46 PM  2022CH09197

Securities trades equities, options, derivatives and fixed income products for its clients, including asset managers, banks, broker-dealers, hedge funds, public pension programs, and government entities. In so doing, Citadel Securities provides needed market liquidity and efficient pricing.

14. Citadel Securities engages in many aspects of trading, including in the crypto space. Citadel Securities' activity in the crypto space is an important and growing source of profit for the company, and the company invests heavily to develop and support it. Citadel Securities has spent millions of dollars hiring and compensating highly educated personnel who work on its crypto, market making, and high frequency trading efforts, and the company makes substantial investments in technology, research, and other infrastructure to support its employees who work on those projects. Importantly, the profits from Citadel Securities' crypto efforts can decline over time if more people or entities compete with Citadel Securities by employing strategies and efforts similar to Citadel Securities' strategies and efforts. To avoid this, Citadel Securities takes extensive measures to maintain the secrecy of its crypto strategies and efforts, and to protect them from being exploited by third parties.

15. Citadel Securities has spent a significant amount of money and resources to build a business, which it continues to expand outside traditional asset classes and across the crypto spectrum. By March 2021, Citadel Securities was actively researching and planning to trade crypto beyond derivative products, developing the underlying infrastructure and strategies to do so, and creating and gathering confidential information in the process. A year later, in March 2022, based on that confidential information and investment of resources in planning and operations, including building its crypto trading stack, Citadel Securities' affiliate in Asia executed its first systematic crypto trade. That trading has continued and grown since, and Citadel Securities' plans to trade crypto in the United States and other parts of the world continue to progress. Furthermore, the

5

company is involved in a business initiative with external institutional investors to develop a crypto trading ecosystem, and also trades a wide array of products, including derivatives, that are directly competitive with crypto and fiat currencies.

## II. Prieur Played A Lead Role In Researching Citadel Securities' Crypto Opportunities And Developing Its Crypto Strategy

16. In April 2019, Prieur began his employment with Citadel Securities as a Business Manager in the company's London office. In October 2019, he transferred to the Company's New York office, where he remained until resigning in March 2022.

17. Before joining Citadel Securities, Prieur obtained an undergraduate degree in economics from the London School of Economics in 2010. In 2017, he obtained an MBA from Harvard Business School. Between graduating from the London School of Economics and attending Harvard, he worked as a product manager at the London Stock Exchange. After Harvard and before joining Citadel Securities, Prieur worked as an associate consultant at McKinsey & Co.

18. At Citadel Securities, Prieur worked with sophisticated and highly educated colleagues, and had access to, acquired, and created valuable confidential information that was critical to the company's business. In particular, Prieur had access and visibility into Citadel Securities' crypto efforts and strategies. Beginning in the Spring of 2021, he was part of a small team of Citadel Securities employees who researched, analyzed, and evaluated opportunities and strategies for Citadel Securities in crypto, which was an emerging and significant financial space in which the company had a limited presence at the time. Prieur and this team analyzed options for crypto legal and entity design, funding and operations, tax considerations, business design, staffing, technology, and risk management. They also evaluated available crypto market data, target crypto exchanges, approaches to working with different crypto exchanges, the crypto product landscape, competitors in crypto, and other topics.

6

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

19. In May 2021, Prieur helped prepare a presentation on his and his team's crypto efforts that he and others delivered to the CEO and other senior employees of Citadel Securities. The presentation covered a broad range of potential crypto opportunities and strategies, and included details about confidential information that Prieur and his team had created and gathered during their work, including the names of crypto data providers; detailed data about crypto exchanges, including bid-ask spreads, volume, and geographic information, among other things; in-depth analysis of crypto products, including data on trends and funding rates; evaluations of existing crypto market-makers, including competitors; key considerations for entity design, including regarding different approaches to structure and affiliations; staffing information, including information on current Citadel Securities employees who had prior crypto experience before joining the company; and other information.

20. In the months that followed, Prieur oversaw the selection and implementation of various crypto opportunities and strategies discussed in his May 2021 presentation. Among other activities, Prieur coordinated and met with various internal departments and external entities to gather additional information and gauge potential partnerships; compiled and mapped the company's external outreach relating to crypto, including with companies focused on data and research, clearing and settlement, lending, and trading technology; assisted with decisions both on the internal reassignment of employees to work on crypto matters and with external recruiting to fill a wide range of positions needed for systematic trading, market making, and other endeavors in the crypto space; and summarized and internally circulated his team's thoughts on the many crypto-related workstreams his team was managing.

21. Reflecting the relative importance of his crypto work, Prieur listed in his year-end performance assessment as "Accomplishment 1" for 2021 as: "Lead[ing] CitSec's foray into

7

crypto." He also listed as part of "Accomplishment 1": "delivered an initial plan and diagnostic for trading crypto for C-suite," and "review/initial interaction with 20+ vendors and exchanges." Later in that same self-assessment, Prieur stated that he had "confirmed my ability to deliver on high-visibility items," and listed "Crypto strategy kick off" as an example. In the portion of the performance assessment completed by others, Prieur's manager wrote that Prieur had "excellent strategic perspective," and that he was "one of the strongest on the team when it comes to evaluating a new opportunity or challenge from a conceptual problem solving perspective," and that a "[r]ecent example[] include[d] crypto." In communications in early 2022, Prieur's manager told Prieur that he "need[ed] to be the aggregator of all things crypto in the US and [others at Citadel Securities] need to keep you fully in the loop."

22. By early 2022, Prieur's efforts researching, analyzing, and evaluating crypto to create valuable confidential information for Citadel Securities bore fruit. On March 14, 2022, Citadel Securities' affiliate in Asia executed its first systematic trade in crypto. An email announcing and celebrating the occasion was circulated that day to the CEO and other senior employees of Citadel Securities. The email recognized that this "exciting milestone" would not have been possible "without the relentless efforts" from across the company, and stated that "one simply cannot be more impressed by the focus and dedication of all the colleagues who have been a part of this." The email was forwarded to Prieur and two others with the message: "We came up with this date if you guys remember!"

23. Thus, Citadel Securities had spent significant time and treasure developing confidential information to enter the crypto space, and through his work Prieur was a part of and exposed to that. Having contributed to it, Prieur understands the significant competitive strategic advantages that Citadel Securities built through its research, analysis, and evaluation of crypto and

8

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

how Citadel Securities' existing systems and information could be leveraged in the crypto space. Indeed, in the employment agreements that he executed after joining Citadel Securities in New York, Prieur acknowledged that "Citadel LLC and its affiliates . . . conduct a broad and evolving range of businesses and have devoted considerable resources to developing Confidential Information and that such Information is key to Citadel's competitive advantage and business," and that "during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information."

24. Because of the nature of his work and the sensitivity of the confidential information to which he had access, Prieur was highly compensated at Citadel Securities. In addition to his base salary, which was $215,000 in 2021, he had the opportunity to earn significant bonus and incentive compensation. For example, in 2021, his total compensation was $500,000.

25. Because Citadel Securities' confidential information regarding crypto provides it with a significant competitive advantage, this information would be highly useful to those operating in similar areas. Moreover, Citadel Securities' market making and systematic trading in traditional equities and other products is the product of deep investment in technology and intellectual property, and confidential information around those foundations has applications and competitive advantages in the crypto space. Accordingly, Citadel Securities has taken numerous measures to protect the integrity of such confidential information, including with regard to Prieur.

26. Citadel Securities has implemented measures protecting all of its confidential information, including but not limited to: (1) requiring all Citadel Securities employees to sign non-disclosure agreements; (2) requiring all employees to have an electronic access card; (3) restricting Citadel Securities employees from accessing certain floors or areas of the office that they do not need to access to perform their job duties; (4) strictly limiting visitors' access to Citadel

9

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

Securities' offices; (5) twenty-four hour monitoring of each of its floors via security cameras and security guards; and (6) protecting computer access by user name, password, and privacy tokens, and granting each user only the level of access to Citadel Securities' computer network that is absolutely necessary for that particular user to complete his or her job functions.

### III. Prieur's Non-Compete Agreement

27. On September 26, 2019, Citadel Securities and Prieur entered into the Non-Compete Agreement and several other employment agreements. The Non-Compete Agreement, , which was supported by multiple forms of valuable consideration, including a guaranteed incentive award of $58,500 for 2019, substantial monthly payments during the restricted period described below, and a separate $500 payment, provides that during Prieur's employment with Citadel Securities, and after the end of his employment during a "Restricted Period" of up to 15 months, as elected by Citadel Securities, Prieur would not "directly or indirectly" engage in any "Competitive Activity." The Non-Compete Agreement provides that if Prieur violates that, the Restricted Period "shall be extended by a period of time equal to that period beginning when the activities constituting such violation commended and ending when the activities constituting such violation terminated." The Non-Compete Agreement also provides that in exchange for his compliance and in addition to the consideration already paid to him, Citadel Securities would pay Prieur monthly payments during the Restricted Period of one twelfth of his base salary (~$17,900) each month for the first six months, $15,000 in months 7-12, and $18,000 in months 13-15.

28. The definitions for all defined terms in the Non-Compete Agreement are set forth in the parties' Mediation/Arbitration Agreement signed on the same day, which also defines "Citadel" to include "Citadel Securities Americas LLC and its affiliates."

29. "Competitive Activity" is defined to include, among other things:

10

- Becoming an "employee . . . of a Competitive Enterprise in a capacity . . . where there is a reasonable possibility that [Prieur] may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information," or "in a capacity that is similar to the capacity [he] was in, where [he] provide[s] services that are similar to the services [he] provided, or with responsibilities that are similar to the responsibilities [he] had, in each case during the final 24 months [he] was employed at Citadel;"

30. "Competitive Enterprise" is defined to include "any business or operation, irrespective of form . . . that [] engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities."

31. "Citadel Business Activities" are defined to include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; . . . advisory activities; . . . or any other business activities engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [Prieur's] employment with Citadel."

32. "Confidential Information" is defined to include "know-how, other proprietary information or other information that (i) is not generally known to the public and (ii) relates to Citadel, any Citadel Client or its or their activities," and specifically identifies "internal financial affairs," "business strategies," "skill-set and experience of personnel," "automated trading strategies," "investment opportunities," and "information concerning the business relationship between Citadel and any person who sources of information, expertise or experience Citadel relies upon in its business" as being covered.

33. The Non-Compete Agreement further provided that during the Restricted Period, Prieur must provide Citadel Securities with 14 days advance notice prior to becoming "employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." The Non-

11

Compete Agreement also requires Prieur to notify any employers during the Restricted Period of his obligations under the Non-Compete Agreements.

34. In the Non-Compete Agreement, Prieur also acknowledged that "[i]f I leave Citadel [Securities] and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously."

35. Prieur agreed that Citadel Securities is entitled to injunctive relief in the event of his breach or threatened breach of the Non-Compete Agreement. Prieur specifically acknowledged:

> Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate Citadel for losses resulting from my breach, Citadel is entitled to injunctive relief . . ., specific performance . . . , and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages.

36. Prieur further agreed in the Non-Compete Agreement that "the scope and duration of the restrictions and limitations described [] are reasonable and necessary to protect the protectable business interests of Citadel."

37. As a highly educated and sophisticated businessperson, Prieur's execution of the Non-Compete Agreement, and other agreements discussed herein was knowing, willful and informed.

**IV. Prieur Leaves Citadel Securities and Joins A Competitor**

38. In January 2022, Prieur informed Citadel Securities of his resignation from the company.

39. On March 7, 2022, he signed a Transition Letter stating that his employment with Citadel Securities would continue through March 18, 2022. The Letter set certain goals for the transition period, and in return Citadel Securities agreed to pay him a "Transition Bonus" of $98,850.

40. On March 18, 2022, Prieur signed a Cessation of Employment Agreement & General Release. In that Agreement, Citadel Securities provided formal notice that it had elected a Restricted Period of 15 months as provided for and defined in the Non-Compete Agreement, that would run until June 19, 2023. The Agreement stated that Prieur would receive monthly Restricted Period payments as defined in the Non-Compete Agreement, so long as he complied with the terms of the Non-Compete Agreement. The Agreement also stated that "[b]y signing . . . you also release, waive and covenant not to assert any claim or contention that any provision of . . . [the Non-Compete Agreement] is unreasonable, invalid, unlawful or unenforceable."

41. On September 9, 2022, Prieur emailed Citadel Securities that he had joined a new employer, Portofino Technologies.

42. Portofino is a "market-making firm for cryptocurrencies" based in Zug, Switzerland. It was founded by Leonard Lancia and Alex Casimo, two former Citadel Securities employees, "with the backing of $50 million from venture capitalists." Prieur and Casimo worked together in the same suite in the Office of the Chief Operations Officer at Citadel Securities. Citadel Securities is in a separate legal dispute with Lancia and Casimo.

43. According to Casimo, Portofino is "building a high frequency trading platform that's 100% cloud based." The company provides "crypto liquidity to financial institutions and high-net-worth individuals, trading on both centralized and decentralized exchanges and over the

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

counter." It has already "traded billions of dollars in so-called stealth mode," and is now out of "stealth-mode." Portofino has 35 employees in London, Singapore, and New York.

V. **Prieur's Employment with Portofino Technologies Violates His Contractual Obligations**

44. Under the Non-Compete Agreement, Prieur is required to provide Citadel Securities with 14 days advance notice prior to becoming employed "in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a [Competitive Enterprise]." Prieur did not provide Citadel Securities with notice of his employment with Portofino until *after* he joined that company.

45. Moreover, Portofino is a Competitive Enterprise. A Competitive Enterprise includes "any business or operation" that "engages in, or proposes or plans to engage in, any activity that is identical to or similar to any Citadel Business Activity," and "Citadel Business Activities" include "any of the investment strategies; trading strategies; research and development activities; trading, trade execution . . . and investment activities . . . engaged in by Citadel at any time during [Prieur's] employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of [his] employment." As discussed, Citadel Securities was researching, analyzing, and evaluating crypto strategies – and in fact operationalizing and executing them – while Prieur was employed there. Indeed, Prieur was a leader in those efforts. Additionally, Citadel Securities traded in crypto based on the confidential information that Prieur created and was exposed to relating to crypto. Thus, Portofino's crypto efforts and trading, led by two former Citadel Securities employees, makes Portofino a Competitive Enterprise. Citadel Securities is currently in a separate legal dispute with the founders of Portofino.

14

46. Critically, the Confidential Information Prieur acquired while employed at Citadel Securities relating to crypto will enable Portofino to develop its own crypto efforts and strategies to compete with Citadel Securities. Citadel Securities is harmed when other entities or people unfairly use its confidential information to trade crypto currencies, because the more entities or people engaging in these activities, the more competition exists in the market and profits are competed away. Portofino competes with Citadel to profit from trading and market making for digital assets, including in the areas of developing leading technology, developing automated and systematic trading strategies, and identifying, recruiting, and hiring the best talent.

47. In September 2022, after learning about Prieur's employment at Portofino, Citadel Securities contacted Prieur by phone and email asking him to discuss his activities. In those communications, Citadel Securities told Prieur that it was preparing to file in court in Chicago based on, among other things, his breach of his Non-Compete Agreement by commencing employment with Portofino. Citadel Securities further told Prieur that it intended to appear before the assigned judge on September 16, 2022 to request an emergency order enjoining his employment at Portofino, and that it would send him copies of any papers that were filed with the court to his email address and by overnight mail. As of the time of this filing, Prieur had not responded to Citadel Securities' most recent communication to him regarding the planned filing of this action.

48. On September 16, 2022, pursuant to the parties' Mediation/Arbitration Agreement, Citadel Securities filed a demand with the American Arbitration Association for expedited private mediation in Chicago. If mediation is not successful, there is a potential for private arbitration with the American Arbitration Association in Chicago as well.

## COUNT I: BREACH OF THE NON-COMPETE AGREEMENT

49. Citadel Securities repeats and incorporates the allegations contained in the paragraphs above as if fully set forth herein.

50. The Non-Compete Agreement is a valid and enforceable contract.

51. Citadel Securities has performed every obligation it owes to Prieur under the Non-Compete Agreement.

52. The Non-Compete Agreement requires that Prieur must notify Citadel Securities at least 14 days prior to commencing any new employment during the Restricted Period.

53. The Non-Compete Agreement prohibits Prieur from engaging in Competitive Activity during the Restricted Period.

54. Prieur joined Portofino without informing Citadel Securities at least fourteen days in advance.

55. Moreover, Prieur engaged in Competitive Activity during the Restricted Period by joining Portofino, which is a Competitive Enterprise.

56. Prieur therefore breached the Non-Compete Agreement.

57. Citadel Securities has no adequate remedy at law.

58. Citadel Securities will suffer irreparable harm if Prieur is not enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Citadel Securities prays that the Court enter a temporary restraining order, preliminary injunction, and judgment in its favor:

(i) Enjoining Prieur, and those acting in concert with him, from breaching the terms of his Non-Compete Agreement with Citadel Securities, from being employed by Portofino during the Restricted Period, using or disclosing Citadel Securities' confidential information; and

FILED DATE: 9/16/2022 2:46 PM 2022CH09197

(ii)    For all such further relief as may be appropriate.

Dated: September 16, 2022       */s/ Adam L. Hoeflich*

    One of Its Attorneys

    Daniel D. Rubinstein
    Christopher Y. Lee
    **SIDLEY AUSTIN LLP**
    One South Dearborn Street
    Chicago, Illinois 60603
    (312) 853-7000
    Firm ID No. 42418

    Adam L. Hoeflich
    **BARTLIT BECK LLP**
    Courthouse Place
    54 West Hubbard Street
    Chicago, Illinois 60654
    (312) 494-4400
    Firm ID No. 31210

    John M. Dickman
    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
    155 North Wacker Drive, Suite 4300
    Chicago, Illinois 60606
    (312) 558-1255
    Firm ID No. 37976

    *Attorneys for Plaintiff Citadel Securities Americas Services LLC*

## VERIFICATION

Under penalties as provided by law, the undersigned, Heath P. Tarbert, Chief Legal Officer for Citadel Securities Group, being first duly sworn under oath, deposes and states that he has read the foregoing Verified Complaint for Injunctive and Other Relief, and on the basis of his personal knowledge, review of appropriate business records and discussions with relevant knowledgeable personnel, he believes the allegations contained therein are true and correct except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he believes same to be true to the best of his knowledge, information and belief. This verification is made by deponent and not by Plaintiff because Plaintiff is a limited liability company and deponent is a duly authorized representative thereof.

_____
Heath P. Tarbert

Sworn to and subscribed before me this ____th day of September, 2022.

_____
Notary Public

My Commission Expires: 8/31/2025

```
Official Seal
Sara Anne Verstynen
Notary Public State of Illinois
My Commission Expires 8/31/2025
```