# EXHIBIT D

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 16

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

FILED
9/19/2022 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH09197
Calendar, 16
19535503

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **CITADEL SECURITIES AMERICAS SERVICES LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2022CH09197** |
| ) | |
| **VINCENT PRIEUR,** ) | |
| ) | |
| **Defendant.** ) | |

## EXHIBITS TO VERIFIED COMPLAINT AND IN SUPPORT OF EMERGENCY
## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Citadel Securities Americas Services LLC, an affiliate of the global Citadel Securities group of companies ("Citadel Securities"), submits the following exhibits to the Verified Complaint for Injunctive and Other Relief and in support of Citadel Securities' Emergency Motion for Temporary Restraining Order:

1.      Attached as Exhibit 1 is a copy of the Non-Compete Agreement entered into by Citadel Securities and Vincent Prieur, dated September 26, 2019.

2.      Attached as Exhibit 2 is a copy of the Mediation/Arbitration Agreement entered into by Citadel Securities and Vincent Prieur, dated September 26, 2019.

3.      Attached as Exhibit 3 are a letter and employment terms transferring Vincent Prieur's employment from Citadel Securities (Europe) Limited to Citadel Securities Americas LLC, which Preiur accepted and executed on September 26, 2019.

4.      Attached as Exhibit 4 is the Cessation of Employment – Agreement & General Release entered into by Citadel Securities and Vincent Prieur, dated March 18, 2022.

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

5.      Attached as Exhibit 5 is a letter to Vincent Prieur regarding an internal reorganization at Citadel that transferred his employment from Citadel Securities Americas LLC to Citadel Securities Americas Services LLC, dated October 25, 2021.

Dated:  September 18, 2022            /s/ Adam L. Hoeflich

                                     One of Its Attorneys

                                        Daniel D. Rubinstein
                                        Christopher Y. Lee
                                        **SIDLEY AUSTIN LLP**
                                        One South Dearborn Street
                                        Chicago, Illinois 60603
                                        (312) 853-7000
                                        Firm ID No. 42418

                                        Adam L. Hoeflich
                                        **BARTLIT BECK LLP**
                                        Courthouse Place
                                        54 West Hubbard Street
                                        Chicago, Illinois 60654
                                        (312) 494-4400
                                        Firm ID No. 31210

                                        John M. Dickman
                                        **OGLETREE, DEAKINS, NASH, SMOAK &
                                        STEWART, P.C.**
                                        155 North Wacker Drive, Suite 4300
                                        Chicago, Illinois 60606
                                        (312) 558-1255
                                        Firm ID No. 37976

                                        *Attorneys for Plaintiff Citadel Securities
                                        Americas Services LLC*

4888-7863-0451

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

# EXHIBIT 1



# CITADEL SECURITIES AMERICAS LLC
# NON-COMPETE AGREEMENT

D2100151

I, **Vincent Parker**, acknowledge, pursuant to this Non-Compete Agreement (this "Agreement"), that Citadel Securities Americas LLC and its affiliates (individually or collectively, as the case may be, "Citadel") have invested extraordinary amounts of time, effort and resources to developing protectable business interests, including Confidential Information; relationships with Citadel Employees, Citadel Clients and other counterparties; a track record of investment success; a superior reputation and standing in the investment, business and technology communities; and highly valuable goodwill. I also acknowledge that: (a) Citadel takes significant steps to preserve and protect its Confidential Information and other protectable business interests; (b) these protectable business interests are the key to Citadel's competitive advantage; (c) during the course of my employment with Citadel, I will have access and exposure to Citadel's Confidential Information and other protectable business interests; (d) Citadel's protectable business interests will retain continuing vitality throughout and beyond the Restricted Period (as defined below); (e) if I leave Citadel and work for myself or with another person or entity and engage in any business activity that is identical or similar to any Citadel Business Activities in violation of this Agreement, it would be highly likely, and in most cases inevitable, that I would rely on Citadel's Confidential Information in the course of my work, either consciously or subconsciously; (f) any loss or erosion of Citadel's competitive advantage caused by my engaging in the activities outlined below in this Agreement would have severe and irreparable repercussions on Citadel's business, including the possibility of substantial investment losses for the endowments, pension plans, foundations and other Citadel Clients that entrust Citadel to manage their investment capital and the possibility of harm to the Citadel Clients to whom Citadel provides other services; and (g) it likely will be necessary for me to avoid certain activities for a period of time following the end of my employment with Citadel so that my ability to use or rely upon Citadel's Confidential Information and to otherwise impair Citadel's protectable business interests is diminished. Accordingly, I agree that this Agreement is necessary to safeguard Citadel's protectable business interests.

I recognize and accept the individual responsibility that I have in the effort to protect and to preserve Citadel's Confidential Information and other protectable business interests. Unless otherwise defined or indicated herein, all capitalized terms in this Agreement shall have the meaning set forth in my Mediation/Arbitration Agreement.

1.     Non-Competition. During my employment with Citadel, and during the Restricted Period following the end of my employment, or any extension thereof, I agree that I shall not, directly or indirectly, engage in any Competitive Activity.

(a)     "Restricted Period" means the period of up to 15 months following the end of my employment (regardless of the reason my employment ends), as elected by Citadel no later than ten (10) days following the end of my employment. The Restricted Period shall be reduced by one day for each day during the Notice Period prior to the end of my employment during which, at Citadel's direction, I am not required to carry out any duties. If no Notice Period is set forth in my offer letter, any compensation letter, or otherwise, the Notice Period set forth in Citadel's Employee Handbook shall apply.

(b)     Extension of Restricted Period. I agree that if I violate any of the terms of this Paragraph 1, the period of non-competition shall be extended by a period of time equal to that period beginning when the activities constituting such violation commenced and ending when the activities constituting such violation terminated.

2.     Restricted Period Payment. If a Restricted Period of more than zero (0) months is elected, the Restricted Period Payment will be (a) a monthly payment of 1/12th of my annual base salary for the first six (6) months, (b) a monthly payment of fifteen thousand U.S. Dollars ($15,000) for the following six (6) months, and (c) a monthly payment of eighteen thousand U.S. Dollars ($18,000) for months 13-15, unless I resign from Citadel less than one year from my start date, in which case the Restricted Period Payment will be a monthly payment of 1/12th of my annual base salary for the entirety of the Restricted Period. Restricted Period Payments will be reduced as set forth in paragraph 5 below. In all cases, should Citadel determine that Cause for termination existed, the Restricted Period Payment will be reduced by 75%. I understand that nothing in this Agreement changes the at-will status of my employment with Citadel. I will receive the Restricted Period Payment each month during the Restricted Period (if any), provided I do not engage in any Competitive Activity. For purposes of clarity, the Restricted Period Payments shall not begin until after the applicable Notice Period. The Restricted Period Payment is solely intended to provide a source of income to me during the Restricted Period. I understand that if I breach this Agreement I will not be entitled to receive any further payments under this provision, whether during the Restricted Period or any extension of the Restricted Period under Paragraph 1(b), but that I will not be released from any continuing or remaining obligations I may have under this Agreement. I further understand that the Restricted Period Payment is not an attempt to quantify or measure the damages that Citadel may suffer if I were to breach this Agreement and shall not serve as a measure of liquidated damages. Restricted Period Payments will be subject to such deductions as are required by law.



3.     Reasonableness of Restrictions. I acknowledge and agree that Citadel engages in Citadel Business Activities on a global basis, including investing in financial instruments traded on exchanges located throughout the world, and on a bilateral basis with counterparties located throughout the world. I understand that it is not necessary to be physically present on such exchanges or with such counterparties in order to engage in such activities. Rather, all that is necessary is the means to communicate with those capable of facilitating such transactions on my behalf. Accordingly, I understand the need for the restrictions contained in this Agreement to be without limitation as to location. I agree that: (a) the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of Citadel, even if any provision of Paragraph 1 above may limit my ability to earn a livelihood for some period of time in a business that is identical or similar to any Citadel Business Activities; (b) all restrictions and limitations relating to the period following the end of my employment will apply regardless of the reason my employment ends; and (c) any alleged claims that I may have against Citadel do not excuse my obligations under this Agreement. I also acknowledge that Citadel will not enter into an employment relationship with me unless I agree to such restrictions and limitations.

4.     Notice to Future Employers. During the Restricted Period or any extension thereof pursuant to Paragraph 1(b), I will notify any subsequent employer of my obligations under this Agreement prior to commencing employment.

5.     Notice to Citadel. During the Restricted Period or any extension thereof, I will provide Citadel fourteen (14) days advance notice prior to becoming employed by any person or entity, or engaging in any capacity in any business of any type or form, regardless of whether or not the prospective employer or business is a Competitive Enterprise. The gross amount of the Restricted Period Payments payable to me will be reduced by any salary or incentive compensation received by me or otherwise payable to me in connection with any work I perform during the Restricted Period that does not constitute a Competitive

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

NON-COMPETE AGREEMENT

Activity. I will provide Citadel reasonable documentation as requested by Citadel regarding any such salary or incentive compensation received by me or otherwise payable to me in connection with any work I perform during the Restricted Period.

6. Other Information. This Agreement shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise. References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s). Each affiliate of Citadel Securities Americas LLC is a third party beneficiary of this Agreement and may enforce Citadel Securities Americas LLC's rights under this Agreement. If a court or arbitration tribunal determines that any provision contained in this Agreement (including any definition referred to and or incorporated herein) is unenforceable in any respect, then the effect of such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement. In either case, this Agreement shall be interpreted, even if modified, to achieve the full intent expressed, and the other provisions of this Agreement will remain in force and unmodified and will be enforced as written. Because money damages for the breach or threatened breach of my obligations under this Agreement would be inadequate to properly compensate for losses resulting from my breach, Citadel is entitled to injunctive relief (a court order preventing me from doing something), specific performance (a court order compelling me to do something) and other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages. In addition, Citadel may obtain any other remedies available at law, in equity or under this Agreement. The prevailing party in any action related to or based upon this Agreement shall be awarded its reasonable attorneys' fees, arbitrators' fees, experts' fees, costs and litigation expenses from the other party. In the event of any dispute relating to this Agreement, I understand and agree that it will be resolved according to the terms of my Mediation/Arbitration Agreement, the terms of which are incorporated herein by reference. No change or waiver of this Agreement will be effective unless made in a writing signed by Citadel and me. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware (without regard to conflict of law principles). To the extent that proceedings in court are permitted by this Agreement or the Mediation/Arbitration Agreement, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois Citadel and I irrevocably waive any claim that the courts in Delaware or Illinois are an inconvenient forum. I understand and agree that there is a reasonable basis for Delaware law to govern this Agreement as Citadel is organized under the laws of Delaware, Citadel's business operations are worldwide, and the application of a single state's laws promotes consistency and fairness. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

I understand that Citadel's employee incentive programs and partnership agreements are separate from and independent of this Agreement and shall apply to me in the manner and at such time as described in the relevant documents separately from and independently of this Agreement, and all Obligations, Compliance Periods and any other terms and conditions set forth and defined in those documents (e.g., non-disclosure of confidential information, non-solicitation, non-competition, etc.) will apply to me separate from and independent of this Agreement and may contain different obligations and compliance periods. I further agree and acknowledge that (i) Citadel's employee incentive programs and partnership agreements contain different obligations and compliance periods than those set forth herein and (ii) the remedies available to Citadel and the consequences to me for noncompliance differ among this Agreement, the employee incentive programs, and the partnership agreements.

**I have had the opportunity to review this Agreement and to consult with an attorney prior to signing it, and I voluntarily agree to its terms.** In exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be, the sufficiency and receipt of which is hereby acknowledged, Citadel and I agree to all of the provisions of this Agreement.

Acknowledged and Agreed to on behalf of Citadel Securities Americas LLC:

Signature: _____

Vincent Prieur

Date: 09/26/2019

_____

Michael Weiner
Senior Deputy General Counsel

FILED DATE: 9/19/2022 12:00 AM 2022CH09197

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

# EXHIBIT 2

D2100154

**CITADEL SECURITIES AMERICAS LLC**
**MEDIATION/ARBITRATION AGREEMENT**
**(WITH DEFINITIONS FOR EMPLOYMENT AGREEMENTS)**

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

1.   <u>Scope of Agreement</u>.   Citadel Securities Americas LLC and I, ___Vincent Prieur___, agree that, except as set forth below, (a) all disputes and claims of any nature that I may have against Citadel Securities Americas LLC or any of its affiliates (individually or collectively, as the case may be, "Citadel"), or any of their respective officers, directors, partners, members, employees or agents in their capacity as such, including all statutory, contractual and common law claims (including all employment discrimination claims), and any disputes concerning the validity, enforceability or applicability of this Mediation/Arbitration Agreement (this "Agreement") to any particular dispute or claim, and (b) all disputes and claims of any nature that Citadel may have against me, will be submitted exclusively first to mandatory mediation and, if unsuccessful, to mandatory binding arbitration in Chicago, Illinois or another agreed-upon location, under the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures ("AAA" and "AAA Rules," respectively), except as they are modified by this Agreement.  Unless otherwise agreed by Citadel and me, the mandatory arbitration will be submitted before a panel of three arbitrators selected in accordance with the AAA Rules (available at www.adr.org).  This Agreement shall survive the employer-employee relationship between Citadel and me and shall apply to all disputes and claims, whether they arise or are asserted during or after the termination of my employment with Citadel.  Citadel and I agree that the AAA shall be the exclusive provider for any mediations or arbitrations, and Citadel and I agree not to file, institute or maintain any mediation or arbitration other than with the AAA.[1]  This Agreement and each of the Employment Agreements (defined below) shall inure to the benefit of any successor or assign of Citadel, whether by merger, consolidation, sale of assets or otherwise   References herein to "Citadel" shall be deemed to include any such successor(s) or assign(s).  Each affiliate of Citadel Securities Americas LLC is a third party beneficiary of this Agreement and may enforce Citadel Securities Americas LLC's rights under this Agreement.  No change or waiver of this Agreement will be effective unless made in a writing signed by Citadel and me.

2.   <u>Exceptions</u>.   (a) I agree that Citadel may elect, at its option, to have any dispute or claim resolved in court, rather than arbitration, in accordance with the terms of this Agreement by providing written notice of its election to me within ten (10) days after the mediation conference; (b) this Agreement does not apply to disputes that are expressly excluded from arbitration by statute; (c) claims may be brought before an administrative agency, including the National Labor Relations Board, but only to the extent applicable law requires access to such an agency notwithstanding the existence of an agreement to arbitrate; (d) either Citadel or I may seek and obtain from a court any injunctive or equitable relief necessary to maintain (and/or to restore) the status quo or to prevent the possibility of irreversible or irreparable harm pending final resolution of mediation, arbitration or court proceedings, as applicable; (e) Citadel may bring an action in court to compel arbitration under this Agreement; and (f) either party may bring an action in court to enforce an arbitration award.  Citadel and I expressly waive any right to a trial by jury on all disputes and claims covered by this Agreement.

3.   <u>Confidentiality/Parties</u>.   I agree that the resolution of any disputes with Citadel likely would involve Confidential Information and that it is necessary to resolve such disputes in a non-public forum and/or with the greatest possible confidentiality if in a public forum.  Accordingly, I agree that all information regarding the mediation or arbitration proceedings, including any mediation settlement or arbitration award, will not be disclosed by me, any mediator or arbitrator or the AAA to any third party without the written consent of Citadel.  The election by Citadel to have any dispute or claim resolved in court, rather than in arbitration, shall not in any way be treated as an acknowledgement that any information related to that dispute or claim is not confidential.  In any court filings, I shall comply with applicable court rules to protect Confidential Information, including filing documents reflecting Confidential Information under seal.  No party shall join, and no arbitrator or court may allow any party to join, claims of any other person in a single arbitration or court proceeding, and there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action without the consent of Citadel.  I further agree not to consent to become a member of any class in any proceeding against Citadel.  If, without my prior knowledge or consent, I am made a member of a class in any proceeding, I agree to opt out of the class at the first opportunity.  Notwithstanding any other clause contained in this Agreement, the preceding three sentences shall not be severable from this Agreement.

4.   <u>Time Limits</u>.   Citadel and I agree that any claim I may have against Citadel (including any discrimination claim under federal law), or that Citadel may have against me must be filed no more than one (1) year after the date on which the claim first arises.  Failure to do so will constitute a waiver of claims, and such claims will be barred.  Citadel and I waive any statute of limitations to the contrary.

5.   <u>Remedies</u>.   The arbitrator(s) shall have the same authority to award remedies and damages as a judge and/or jury under state or federal law.  Unless prohibited by applicable law, the arbitrator(s) shall require the claimant to post a bond sufficient to secure payment of the respondent's costs and expenses, including attorneys' fees, arbitrators' fees, experts' fees and other fees and expenses incurred in connection with the arbitration. Notwithstanding anything in the AAA Rules to the contrary, the arbitration claims are subject to dismissal and summary adjudication under the same standards applicable to motions under Rules 12(b)(6), 12(c) and 56 of the Federal Rules of Civil Procedure, as applicable.  For statutory claims, the prevailing party shall be awarded its costs and expenses, including attorneys' fees, arbitrators' fees, experts' fees and other fees and expenses incurred in connection with the arbitration or litigation, unless the statute under which the claim arises provides differently.  For non-statutory claims, the prevailing party shall be awarded its costs and expenses, including attorneys' fees, arbitrators' fees, experts' fees and other fees and expenses incurred in connection with the arbitration or litigation.  In the event a party seeks a court order to compel arbitration under this Agreement, the prevailing party shall be awarded its costs and expenses, including attorneys' fees, incurred in connection with the court action to compel arbitration.  Except as otherwise provided herein, if any provision(s) of this Agreement are deemed unenforceable by any authorized adjudicative body, those provisions shall be severed and the intent of the parties shall be upheld.  In the event that the dispute or claim involves a written agreement between Citadel and me, a Citadel compensation model or employee incentive program or a partnership vehicle, neither the arbitrator(s) nor the court will have authority to add to, detract

---

[1] This Agreement does not restrict an "associated person," as defined by FINRA Rules, from filing certain claims in the FINRA arbitration forum to the extent required by FINRA Rules.

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

from or otherwise modify the agreement, model, program or vehicle provisions other than as expressly set forth in the applicable documents. Should this Agreement conflict with the arbitration provisions of any other agreement that I have with Citadel, or with the terms of any Citadel employee incentive program, the terms of this Agreement will govern. This Agreement supersedes all arbitration provisions contained in any past, present or future application, registration, rule or other document of any self-regulatory organization in which Citadel or I am a member, former member or applicant, or with which Citadel is or I am or either Citadel or I was otherwise associated.

6.  Governing Law/Venue.  This Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act, unless Citadel elects for any particular dispute or claim to be resolved in court pursuant Paragraph 2(a) of this Agreement. The terms of this Agreement are incorporated by this reference and made applicable to my Non-Compete Agreement (if applicable), Non-Solicitation Agreement and Non-Disclosure Agreement (collectively, along with this Agreement, the "Employment Agreements"). To the extent that state law is applicable to any of the Employment Agreements or any dispute or claim, Citadel and I understand and agree that they will be interpreted, enforced and governed according to the laws of the State of Delaware (without regard to conflict of law principles). To the extent that proceedings in court are permitted by the Employment Agreements, Citadel and I both consent to, and submit to, on an exclusive basis, the personal jurisdiction and venue of the state and federal courts located in Delaware and Illinois (other than an action to enforce an arbitration award, which may be filed in any court of competent jurisdiction). Citadel and I irrevocably waive any claim that the courts in Delaware or Illinois are an inconvenient forum. I understand and agree that there is a reasonable basis for Delaware law to govern the Employment Agreements as Citadel is organized under the laws of Delaware, Citadel's business operations are worldwide, and the application of a single state's laws promotes consistency and fairness. I agree to accept service of any court filings and process by delivery to my most current home address on record with Citadel via first class mail, by any nationally recognized overnight delivery provider or by any third party regularly engaged in the business of service of process. This Agreement represents the entire agreement between me and Citadel regarding the matters covered in this Agreement and supersedes any prior agreement between me and Citadel regarding such matters.

7.  Definitions for Employment Agreements.  The following definitions apply to the Employment Agreements and my offer letter:

"Cause" means any termination on or following: (i) my conviction or indictment (including conviction that results from any plea or plea agreement) of any crime involving moral turpitude or of any felony; (ii) the knowing material theft, or the knowing embezzlement or fraud by me or my involvement, either alone or in concert with others, in any scheme or conspiracy to knowingly divert assets from Citadel; (iii) my material or persistent failure to perform my material duties or to comply with Citadel's policies and procedures, if such failure, if it can be cured, is not cured within thirty (30) days after Citadel sends me written notice specifying the nature of such failure; (iv) any knowing or reckless act of material dishonesty by me in connection with my employment; (v) the knowing or reckless breach or violation by me of my contractual obligations to Citadel or any law, fiduciary duty or material regulation respecting the business of Citadel; or (vi) failure to satisfy the terms and conditions set forth in my offer of employment.

"Citadel Business Activities" means any of the investment strategies; trading strategies; research and development activities; trading, trade execution, market making and investment activities; asset management activities; advisory activities; or any other business activities engaged in by Citadel at any time during my employment or that Citadel proposed or planned to engage in at any time in the twelve (12) month period prior to the termination of my employment with Citadel.

"Citadel Client" means any person or entity that was an investor in any funds sponsored or managed by Citadel or that maintained an account managed or sponsored by Citadel, in each case, at any time during the twelve (12) month period preceding the end of my employment (i) that I knew or had reason to know was an investor in any fund sponsored or managed by Citadel or that maintained an account managed or sponsored by Citadel, or (ii) with whom I had contact while I was an employee of Citadel. Citadel Client also means any person or entity that was an advisor, consultant or manager of any person or entity referred to in clauses (i) or (ii) of the preceding sentence or that I knew or had reason to know invested the capital of others in any fund or account managed or sponsored by Citadel. Citadel Client shall also include (x) any person or entity to whom Citadel provides financial or advisory services, (y) any person or entity who is an order flow provider to Citadel, and (z) any person or entity who is a customer (as such term is commonly understood) of Citadel, in each case, during the twelve (12) month period preceding the end of my employment (1) that I knew or had reason to know was a person or entity so described, or (2) with whom I had contact while I was an employee of Citadel.

"Citadel Employee" means any person that (i) is a member of Citadel Europe LLP; (ii) is employed, or engaged as an exclusive consultant, by Citadel; or (iii) was a member of Citadel Europe LLP or an employee of, or exclusive consultant to, Citadel, in each case, at any time within the ninety (90) day period immediately preceding the conduct in question.

"Competitive Activity" means (i) becoming an employee, advisor, consultant, partner, principal, director, manager, or executive of a Competitive Enterprise in a capacity (including without limitation as an employee of, or consultant to, any vendor providing services or products to any Competitive Enterprise), where there is a reasonable possibility that I may, intentionally or inadvertently, directly or indirectly, use or rely upon Confidential Information; or in a capacity that is similar to the capacity I was in, where I provide services that are similar to the services I provided, or with responsibilities that are similar to the responsibilities I had, in each case, during the final 24 months I was employed by Citadel; (ii) directly or indirectly, forming, or acquiring greater than a 5% equity, voting, revenue, income, profit, loss or other economic interest in, any Competitive Enterprise; or (iii) directly or indirectly planning or organizing any Competitive Enterprise.

"Competitive Enterprise" means any business or operation, irrespective of form (e.g., a sole proprietorship, partnership, limited liability company, corporation, joint venture or other type of entity), that (i) engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities, or (ii) owns or controls a significant interest in any entity that engages in, or proposes or plans to engage in, any activity that is identical or similar to any Citadel Business Activities.

MEDIATION/ARBITRATION AGREEMENT

"Confidential Information" means trade secrets, know-how, other proprietary information or other information that (i) is not generally known to the public and (ii) relates to Citadel, any Citadel Client or its or their activities. Examples of Confidential Information include information relating to Citadel's internal financial affairs (such as matters relating to the financial arrangements it has with Citadel Clients, the revenues and expenses associated with the operation of its business and similar matters); business strategies; portfolio holdings and investment performance track record; employment and recruiting processes and strategies; the compensation, skill-set and experience of personnel; information regarding sources of investment capital; proprietary portfolio management techniques and strategies, including automated trading strategies; proprietary quantitative analytics and models used to evaluate financial instruments and markets; investment opportunities; proprietary software and proprietary system architectures; identity of Citadel Clients or other information regarding such Citadel Clients; identity of or other information concerning the business relationship between Citadel and any person whose sources of information, expertise or experience Citadel relies upon in its business; and Citadel's business and investment processes, strategies and methods. Confidential Information is not limited to items labeled as such.

**I have had the opportunity to review this Agreement and to consult with an attorney prior to signing it, and I voluntarily agree to its terms.** In exchange for good and valuable consideration, including employment or continued employment with Citadel, as the case may be, the sufficiency and receipt of which is hereby acknowledged, Citadel and I agree to all of the provisions of this Agreement.

Acknowledged and Agreed to on behalf of Citadel Securities Americas LLC:

Signature: _____

Vincent Prieur

Michael Weiner
Senior Deputy General Counsel

Date: _____

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

# EXHIBIT 3



D2100155

### ▰▰ CITADEL | Securities

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

August 29, 2019

Vincent Prieur
1 Jermyn St.
London SW1Y 4UH

Dear Vincent,

We are pleased to offer you the opportunity to transfer your employment from Citadel Securities (Europe) Limited (the "Originating Entity") to Citadel Securities Americas LLC ("Citadel" or the "Company") as an Business Manager based in New York City and commencing on or about October 10, 2019 (the "Transfer Date")

Upon your commencing employment with the Company, the terms and conditions you were employed under with the Originating Entity will no longer apply to you. Rather, you will be employed according to the terms and conditions documented in this letter. The Mediation/Arbitration Agreement, Non-Disclosure Agreement, and Non-Solicitation Agreement, and Non-Compete Agreement, which are also part of this offer and require your signature, are enclosed. Upon the effective date of this transfer, any Originating Entity Dispute Resolution Procedure, Non-Disclosure Agreement, Non-Solicitation Agreement, and Non-Compete Agreement to which you are a party will be superseded by the enclosed agreements. As an employee of Citadel, you will be eligible to participate in vacation, insurance, and 401(k) benefits as outlined in the accompanying materials. Please note that you are still employed by a Citadel group company and this change to your terms and conditions does not terminate your employment for the purposes of any relevant employee incentive program in which you may be a Participant and correspondingly, does not trigger the commencement of any applicable Compliance Period contained therein

Before you can transfer, all arrangements necessary to transfer to the Company (such as pre-immigration paperwork) must be completed. You are also required to produce satisfactory and specific evidence of your eligibility to work in the United States

Your employment with the Company is at-will, meaning that either you or the Company may terminate this relationship with or without cause at any time, subject to your notice obligations. Neither this letter nor any other communication should be construed as a contract of employment for a particular period of time

The terms of your transfer as set forth in this letter supersede any conversations or other agreements discussed or entered into prior to this date. Changes to the terms and conditions documented in this letter will only be made through issuance of a new letter requiring your signature

Please give us a call if you have any questions about this transfer

Sincerely,

Peng Zhao
CEO
Citadel Securities

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

## Vincent Prieur
## Employer: Citadel Securities Americas LLC
## Employment Terms

### Annual Base Salary: $170,000

### Incentive Awards Related to Performance: Eligible

As determined by Citadel, you will be eligible to receive a cash bonus and an award of an Unvested Membership Interest in an Employee Company (collectively "Incentive Awards") based on, among other things: (i) your individual performance and demonstration of the characteristics described in the Citadel Leadership Model, (ii) the performance of your business (where applicable) and (iii) the Company's overall performance. Any Incentive Awards will be earned, valued, and paid or cancelled according to the terms of the relevant employee incentive program, its relevant addenda, and any award letter (collectively, the "Program").

Except for the Incentive Awards Guarantee for 2019, all Incentive Awards are discretionary. The amount of any Incentive Award shall be determined and awarded, if at all, by the Company. The Employment Terms reflect some of the considerations that may be part of any Incentive Award determination, but they are provided only for informational purposes and are not determinative, fixed, or final.

### Incentive Awards Guarantee for 2019: $58,500

Incentive Awards for 2019 will be fifty eight thousand five hundred dollars ($58,500), provided that you are actively employed by the Company and not under notice when Incentive Awards for 2019 are paid or issued, as the case may be.

In the event of your termination by Citadel without Cause prior to the date when Incentive Awards for 2019 are paid or issued, as the case may be, you will be entitled to an amount equal to the difference between: (i) fifty eight thousand five hundred dollars ($58,500) and (ii) any Incentive Awards received by you from Citadel for 2019. This amount will be paid to you in two installments in cash: (A) 50% within 30 days of your signing of a standard Citadel Release and (B) 50% on July 1 of the year following the full satisfaction of the Conditions set forth in the Citadel Employee Incentive Program through the Compliance Periods set forth therein. These payments are in lieu of the Incentive Awards Guarantee for 2019 described above and you will not be eligible for any additional Incentive Awards under the Program. Under no circumstances will you receive both the cash payments AND the corresponding Incentive Awards. These payments are conditioned upon your signing and returning a standard Citadel Release by the date specified in such Release, your continued compliance with the terms of that Release at all relevant times, and your satisfaction of the Conditions as described above. If you fail to satisfy the Conditions, you will be obligated to repay immediately the gross amount of all payments made to you pursuant to this paragraph.

In the event (i) your employment is terminated by Citadel without Cause prior to December 31, 2019 and (ii) Citadel elects a Restricted Period according to the terms of your Non-Compete Agreement, then for each month from the time of your termination through December 31, 2019, notwithstanding anything in the Non-Compete Agreement to the contrary, the Restricted Period Payment will be $0.

### Benefits/Insurance/Vacation: Eligible

As an employee of Citadel, you will be eligible to participate in vacation, insurance, and 401(k) benefits as outlined in the accompanying materials.

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

**Relocation Assistance:**                                                                                                **Eligible**

Following your acceptance of this offer, Citadel's relocation vendor will contact you to explain the attached Policy and assist you in the relocation process. Please make all arrangements through your relocation counselor. If you need additional assistance, please call Laurel Hofrichter at 212-652-7796.

## Terms & Conditions of Offer

This offer of employment and your continued employment are contingent upon the following:

(i)     our receipt of proper authorization for you to work in the U.S; and
(ii)    your review, execution and compliance with the enclosed Affirmation, Mediation/Arbitration Agreement, Non-Disclosure Agreement, Non-Solicitation Agreement and Non-Compete Agreement (where applicable).

Citadel may revoke this offer at any time before (i) you satisfy all of the above conditions and (ii) Citadel receives your written, signed acceptance.

Capitalized terms not otherwise defined in the attached cover letter, the Employment Terms or in these Terms & Conditions of Offer will have the meaning set forth in the Mediation-Arbitration Agreement and/or the Program.

### Employment At-Will/Notice Period:

This offer is not a guarantee of continued employment for any period. Your employment is at will, meaning that either party may end the employment relationship at any time, for any reason, with or without Cause; provided, however, you agree that in the event you decide to terminate your employment with Citadel, you will give us 2 weeks advance notice in writing (the "Notice Period"). During the Notice Period, you will remain an employee of Citadel with all of the same duties and obligations attendant thereto, and you may be required to perform all, some or none of your work duties as determined by Citadel. During the Notice Period, you will continue to receive base salary and benefits although you will cease to be eligible to receive any Incentive Award for the Service Year(s) in which the Notice Period falls. Citadel may elect to waive all or any portion of the Notice Period, and you will not be entitled to any base salary or benefits for any portion of the Notice Period that Citadel has waived. To the extent that you become a Participant in any Citadel employee incentive or partnership programs, your failure to comply with this provision would result in the cancellation of your interests issued pursuant to such programs (including all interests described in the Employment Terms and Terms & Conditions of Offer). You agree that in addition to any other legal or equitable remedies available to it, Citadel shall be entitled to specific performance of this provision.

You must be actively employed and not under notice on the dates described in the Program in order to receive any Incentive Award for a Service Year. All references to your being "under notice" in the Employment Terms or Terms & Conditions of Offer refer to notice given by you or Citadel. All payments and awards will be made subject to applicable taxes and withholdings.

### Consideration:

Citadel will make a one-time payment of $500 as additional and sufficient consideration, the receipt of which is hereby acknowledged, for any obligations you have to Citadel, including but not limited to the obligations and covenants set forth

FILED DATE: 9/19/2022 12:00 AM    2022CH09197

in the Non-Compete (where applicable), Non-Solicitation, Non-Disclosure and Mediation/Arbitration Agreements attached hereto. This payment will be paid to you at the end of the first pay period following your Transfer Date.

## Assignment:

The Company may assign this agreement and the documents referenced herein to any of its affiliates, and this agreement shall inure to the benefit of any successor of the Company, whether by merger, consolidation, sale of assets or otherwise. References herein to the Company shall be deemed to include any such successor or successors.

## Final Agreement:

These Employment Terms and Terms & Conditions of Offer and the documents referenced herein represent the complete agreement and understanding between you and the Company regarding the subject matter hereof, supersede all prior discussions, negotiations and agreements, written or oral, between us concerning such subject matter, and are entered into without reliance on any promises or representations other than those expressly contained herein. Changes to the Employment Terms and Terms & Conditions of Offer will only be made through the issuance of a new letter signed by us and requiring your signature.

All determinations to be made in the Employment Terms and Terms & Conditions of Offer are to be made by Citadel in its sole and absolute discretion. Your signature below acknowledges that this offer is the result of good-faith negotiations between you and Citadel, and you have had the opportunity to consult with counsel of your choice prior to acceptance. Please give us a call if you have any questions about this offer.

*Accepted by:*

_____    Date: 0/26/2019

**Vincent Prieur**

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

# EXHIBIT 4

**CITADEL** | Securities

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

March 18, 2022

Vincent Prieur
45 W. 69th Street
Apt. 6
New York, NY 10023

**Re:    Cessation of Employment - Agreement & General Release**

Dear Vincent:

This letter ("Cover Letter"), the General Terms and Conditions of Cessation Agreement ("Exhibit A"), the Confidential Transition Letter dated March 7, 2022 ("Transition Letter"), any other Exhibits and Schedules provided with the Cover Letter, and the documents referenced in the Cover Letter, Exhibits and Schedules, the terms of which are incorporated herein by reference, are collectively referred to as the "Agreement." The Agreement sets forth the terms and conditions of the cessation of your employment with Citadel Securities Americas Services LLC ("Citadel" or the "Company").

1.      The cessation of your employment with the Company is effective March 18, 2022 (the "Effective Date").

2.      Provided that (a) the Company receives an executed copy of this Agreement from you not later than seven (7) days following (but not before) the Effective Date, and (b) you fully comply with the terms of the Transition Letter, then the Company will pay you a special payment (referred to as "Transition Bonus" in the Transition Letter) of ninety-eight thousand eight hundred and fifty U.S. dollars ($98,850), less required withholdings, taxes and other deductions, within fifteen (15) days of the Company's receipt of the signed Agreement.

3.      This letter will serve as the Company's formal notice to you that it has elected a Restricted Period of fifteen (15) months as provided for and defined in the Non-Compete Agreement executed by you and the Company (the "Non-Compete Agreement"). For avoidance of doubt, the Restricted Period will end on June 19, 2023, unless an extension is justified under the terms of the Non-Compete Agreement. During the Restricted Period after the Effective Date, you will receive Restricted Period Payments (defined in the Non-Compete Agreement) according to the terms of the Non-Compete Agreement. You will receive a prorated Restricted Period Payment for any partial month of the Restricted Period.

For the avoidance of doubt, per the terms of your 2021 Compensation Statement, the Second Payment of Cash Award will be cancelled solely pursuant to the terms and conditions of that award.

4.      By signing this Agreement, you acknowledge and represent that: (a) you have had a reasonable period of time to consider this Agreement, including all incorporated documents; (b) you have been advised of your right to have your attorney review this Agreement, and have had an adequate amount of time to discuss it with your attorney of choice; (c) you have read this Agreement in its entirety and understand the meaning and application of each of its provisions; (d) you are signing this Agreement voluntarily; and (e) you intend to be bound by it.

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

Mr. Vincent Prieur
Page 2
March 18, 2022

For the avoidance of doubt, this settlement offer may be withdrawn by the Company at any time prior to acceptance by you. If you agree to the terms set forth above, please sign, date and return the enclosed copy of this Agreement to Nicole Szilagyi not later than seven (7) days following (but not before) the Effective Date.  If you have any questions, you may contact Nicole Szilagyi at (312) 395-3264.

Sincerely,

Citadel Securities Americas Services LLC

By: _____

Michael R. Weiner
Senior Deputy General Counsel

Agreed to and acknowledged by:

DocuSigned by:

_____
15022A1ACF3F48E...
Vincent Prieur

3/25/2022
_____
Date

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

CITADEL | Securities

Exhibit A to Cessation of Employment – Agreement & General Release
Vincent Prieur
March 18, 2022

## GENERAL TERMS AND CONDITIONS OF CESSATION AGREEMENT

Unless expressly modified in the Cover Letter, the following terms and conditions are applicable to the Agreement:

1.      In connection with the cessation of your employment, you will receive payments of base salary through the Effective Date, which will be subject to applicable withholdings, taxes and other deductions and will be paid to you in accordance with applicable law.

2.      For the avoidance of doubt, and without limitation, the special payment referenced in the Cover Letter satisfies any and all obligations and amounts owed to you by the Company and any Released Party (defined below), including any guaranteed compensation, except as specifically set forth in this Agreement.

3.      If applicable, you agree to (a) immediately resign all Board of Directors, committee and other memberships and positions that you hold by virtue of your employment with the Company, and (b) cooperate reasonably with the Company in connection with all transition and other matters arising out of any such memberships and positions.

4.      Certain of the payments and modifications (if any) described in the Cover Letter, including the special payment, are payments which, absent the execution of this Agreement, you would not otherwise be legally entitled to receive as a result of your employment with the Company or the cessation of such employment. You understand and agree that such payments and modifications (if any) are expressly conditioned upon your representations and warranties in this Agreement, and the Non-Disclosure Agreement, Non-Solicitation Agreement, Mediation/Arbitration Agreement and Non-Compete Agreement (collectively the "NDA Agreements" or the "NDA") most recently executed by you and the Company, and your compliance with the terms of this Agreement and the NDA Agreements. If the representations and warranties in this Agreement or the NDA Agreements are inaccurate in any respect, you take any action inconsistent with those representations and warranties, or you violate any of the terms of this Agreement or the NDA Agreements, then you will not receive any further payments from the Company under this Agreement and shall be obligated to repay to the Company the gross amount of any and all amounts received hereunder which, absent the execution of this Agreement, you would not otherwise have been legally entitled to receive (i.e., the special payment) and the modifications (if any) will be null and void. This Paragraph shall not limit the Company's right to recover damages or obtain any other legal or equitable relief to which it may be entitled by law and does not limit any other condition or precondition to payment described elsewhere in this Agreement.

5.      From the date on which you sign this Agreement, and for as long thereafter as shall be reasonably necessary, you agree to cooperate fully with the Company and its Affiliates (defined below) in any negotiation, transaction, investigation, litigation or other action arising out of any transactions in which you were involved or of which you had knowledge during your employment by the Company. If you incur any business expenses in the course of performing your obligations under this paragraph, you will be reimbursed for the full amount of all reasonable expenses upon your submission of adequate receipts confirming that such expenses actually were incurred.

6.      You represent and warrant that you are the sole owner of the actual or alleged claims, demands, rights, causes of action and other matters relating to your employment with the Company or the cessation of your employment that are released herein; that the same have not been assigned, transferred or

disposed of by fact, by operation of law, or in any manner whatsoever; and that you have the full right and power to grant, execute, and deliver the releases, undertakings and agreements contained herein. You further represent and warrant that you have not filed or initiated any legal, equitable, administrative or any other proceedings against any of the Released Parties (as defined below), and that no such proceeding has been filed or initiated on your behalf.

7.      You and anyone claiming through you, including your past, present, and future spouses, family members, estate, heirs, agents, attorneys or representatives each hereby release and forever discharge, and covenant not to sue the Company and any of its current or former divisions, Affiliates[1], related entities, or subsidiaries, and their trustees, fiduciaries, administrators, members, partners, directors, officers, agents, employees, attorneys and the predecessors, successors and assigns of each of them (hereinafter jointly referred to as the "Released Parties"), with respect to any claims or causes of action, whether known or unknown, that you now have, ever had, or may allege to have, from the beginning of time through the date on which you execute this Agreement, against the Released Parties for or related in any way to your employment with the Company or any other Released Party, or the cessation of that employment, including without limitation, any claim that could have been asserted under any federal, state, or local statute, law, regulation, ordinance, or executive order, including but not limited to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, the Americans with Disabilities Act, the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§621 et seq.), as amended by the Older Workers Benefit Protection Act ("ADEA"), the Employee Retirement Income Security Act, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act of 1993, or their related state law counterparts, including the New York State Human Rights Law, New York City Human Rights Law, New York City Equal Rights Law; and the Delaware Revised Uniform Limited Partnership Act; any claims under the common law, including without limitation, breach of contract, claims for wrongful or retaliatory discharge, defamation, tort claims (including negligence), or other personal injury; and any claims for amounts payable (other than the payments provided for in this Agreement and any amounts that would otherwise be payable to you pursuant to the terms of any Program and that are not expressly modified in the Cover Letter, which in each case will be earned and paid subject to the conditions set forth in the relevant Program or other relevant documents including without limitation the non-competition, non-disclosure and non-solicitation Conditions set forth therein without modification), benefits, damages, costs and attorney's fees. **By signing below you also release, waive and covenant not to assert any claim or contention that any provision of any Program, this Agreement or the NDA Agreements is unreasonable, invalid, unlawful or unenforceable.** In the event of any future proceedings based upon any matter released herein, you recognize and agree that pursuant to this Agreement you are not entitled to and shall not receive any further recovery. Specifically and without limitation, for 2022 and onward you will not be a Participant (defined in the Programs) in any of the Company's employee incentive programs, partnerships, or any similar plan or program (collectively with all relevant addenda, amendments, award letters and associated fund documents the "Program(s)") and thus you will not receive any bonus or other Incentive Awards (defined in the Programs) for 2022 and onward. For clarity, previously issued Incentive Awards and equity grants are not affected by this paragraph, unless expressly modified in this Agreement.

8.      You are aware that after executing this Agreement, you may discover claims or facts in addition to or different from those you now know or believe to be true with respect to the matters released

---

[1] "Affiliate" means any person or entity (a "Person") controlling, controlled by, or under common control with the Company. For purposes of this definition, without limitation, a Person acting as general partner of, manager of, portfolio manager of and/or in a materially similar capacity with respect to a Person shall be treated as controlling such Person.

FILED DATE: 9/19/2022 12:00 AM    2022CH09197

FILED DATE: 9/19/2022 12:00 AM    2022CH09197

herein. Nevertheless, it is your intention to settle and release fully, finally and forever all such matters, and all claims relative thereto which do now exist, may exist, or have existed relating to such matters (except as may be specifically excluded herein), whether known or unknown, or suspected or unsuspected by you. In furtherance of this intention, the release given by you herein shall be and remain in effect as a full and complete release of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto.

9.      Excluded from this release and waiver are any claims that cannot be waived by law. Nothing in this Agreement shall be construed to prohibit you from initiating or maintaining a charge of discrimination with the Equal Employment Opportunity Commission or any of its state or local governmental agency counterparts, or from otherwise fully cooperating with and/or participating in any investigation by any such agency. You are, however, waiving your right to any monetary recovery should any such agency pursue any claims on your behalf, excepting only any benefit or remedy to which you are or become entitled pursuant to Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act.

10.      You agree that you have no present or future right to employment with the Company or its Affiliates.

11.      You agree to immediately return to the Company all Company property and Confidential Information in your possession and control, including but not limited to, hardcopy and electronic documents and files, screenshots and other images, data, recordings, code and other intellectual property, keys, key cards, and third party information for which Citadel has an obligation to keep confidential.

12.      You understand and agree that in connection with your employment with the Company, you have acquired Confidential Information concerning the operation of the Company and its Affiliates. You agree that you are subject to the NDA Agreements and that you will not at any time, directly or indirectly (except to the extent required by law or judicial process or as permitted by the Company), disclose or use any Confidential Information that you have learned by reason of your association with the Company, in addition to the other obligations and restrictions contained in the NDA Agreements. You further agree that the restrictions contained in the NDA Agreements are reasonable and necessary to protect the legitimate business interests of the Company and its Affiliates, and that you will continue to comply with their terms notwithstanding the cessation of your employment. You may always communicate directly with a regulatory authority about a possible violation of an applicable law or rule. Without prior authorization from the Company's Legal department, however, the Company does not authorize you to disclose to regulators a communication that is covered by the Company's attorney-client privilege.

13.      The existence and terms of this Agreement and the substance of any negotiations leading up to this Agreement shall be kept confidential by you. You warrant and represent that you will not reveal or engage in any conduct that might reveal the terms of this Agreement to anyone except members of your immediate family, your attorney, your tax advisor and any prospective employers or business associates (but only to the extent necessary to inform them as to any restrictions, or the lack thereof, on your ability to perform services for, or to be associated with, them or to inform them of the value of your awards and payments under Programs if applicable), except as disclosure of such matters may be required by law or judicial process, or in connection with the enforcement of this Agreement.

14.      This Agreement does not constitute an admission by the Released Parties of any violation of any federal, state, local or common law, regulation, ordinance or executive order. The Released Parties expressly deny any such violation.

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

15.     If any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable in any respect, then such provision shall be deemed limited and restricted to the maximum extent that the court shall deem the provision to be enforceable, or, in the event that this is not possible, the provision shall be severed and all remaining provisions shall continue in full force and effect. However, in the event that the waiver or release of any claim is found to be invalid or unenforceable and cannot be modified as aforesaid, then you agree that you will promptly execute any appropriate documents presented by the Company that would make the waiver or release valid and enforceable to the maximum extent permitted by law. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision hereof.

16.     This Agreement, the NDA Agreements and the other documents referred to in this Agreement constitute the complete understanding and agreement between you and the Company regarding the subject matter hereof, and supersede all prior discussions, negotiations and agreements, written or oral, between the parties concerning such subject matter. The terms and conditions of this Agreement may be modified and amended only by a written instrument signed by the parties to this Agreement.

17.     All disputes between you and the Company hereunder will be resolved pursuant to the Mediation/Arbitration Agreement between you and the Company, the terms of which are incorporated herein by reference. The prevailing party in any such action shall be entitled to recover reasonable attorney's fees, costs and litigation expenses.

18.     You represent and warrant that you have received, or will have received once the payments called for by this Agreement have been made, all wages, salary, other compensation and benefits that may have been owed to you because of your employment with and separation from the Company.

19.     You represent that you are not in breach of the NDA Agreements, the terms and conditions of your Offer Letter, or any other agreements between you and the Company. You further represent that during your employment at the Company you have not engaged in conduct that would justify the Company terminating you for Cause. In particular, you represent and warrant that you have not transferred any Citadel Confidential Information in any form (whether hardcopy, electronic or otherwise) outside of Citadel or otherwise disclosed any Citadel Confidential Information to any third party in violation of Citadel policies.

20.     You understand that the Company would not have entered into this Agreement in the absence of the representations and warranties made by you in this Agreement, in particular, but not limited to, Paragraphs 4, 6, 7, 12, 13, 18 and 19. Therefore, you agree that the representations and warranties made by you in this Agreement are material terms of this Agreement.

21.     **All amounts payable under this Agreement are intended to comply with, or be exempt from, Section 409A of the Internal Revenue Code ("Section 409A"). To the extent that any amounts payable in accordance with this Agreement are subject to Section 409A, this Agreement shall be interpreted and administered in such a way as to comply with Section 409A to the maximum extent possible.  If any payment subject to Section 409A is contingent on the delivery of a release by you and could occur in either of two years, the payment will occur in the later year. Nothing in this Agreement shall be construed as a guarantee of any particular tax treatment to you. You shall be solely responsible for the tax consequences with respect to all amounts payable under this Agreement, and in no event shall Company have any responsibility or liability if this Agreement does not meet any applicable requirements of Section 409A.**

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

22. This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of Delaware, without regard to its conflicts of law provisions and all determinations and calculations to be made hereunder will be made in the Company's sole and absolute discretion.

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

# EXHIBIT 5

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

**CITADEL** | Securities

October 25, 2021
Vincent Prieur

Dear Vincent

As part of an internal reorganization, the Citadel company that employs you will change from Citadel Securities Americas LLC to Citadel Securities Americas Services LLC effective on December 27, 2021 (the "Effective Date"). Citadel Securities Americas LLC hereby assigns and transfers to Citadel Securities Americas Services LLC all of its rights and obligations connected to its employment relationship with you (including under any offer letter Employment Terms, Non-Compete Agreement, Non-Disclosure agreement, Non-Solicitation Agreement and Mediation/Arbitration Agreement), from the Effective Date forward.

Your job title, duties, contractual obligations and rights and work location are not affected by this transfer, nor does this transfer count as a termination of your employment for any purpose. The period of your employment with Citadel Securities Americas LLC will be credited to you for all purposes.

AGREED TO:

Citadel Securities Americas LLC          Citadel Securities Americas Services LLC

By: _____          By: _____
        Michael Weiner                              Shawn Fagan

UNITED STATES

FILED DATE: 9/19/2022 12:00 AM   2022CH09197

**CITADEL** | **Securities**

## FAQs CONCERNING THE TRANSFER OF YOUR EMPLOYMENT

**Q.   Why are you transferring my employer?**

A.   From time to time, it is necessary to update our corporate structure for a variety of reasons. Some examples would include new jurisdictions for where we do business, changes in our business and capital structuring opportunities. Some employees may remember that we had a similar circumstance in 2018.

**Q.   Who is my new employer?**

A.   Your new employer is identified in your transfer document.  Both your current employer as well as the new employer are Citadel-affiliated companies.

**Q.   What do I do if I have questions about my compensation or terms and conditions of employment?**

A.   Please raise these questions as you would normally do with either your manager or HR.  This transfer has no impact on any of your existing compensation or other terms of employment.

**Q.   Will I be issued a new offer of employment?**

A.   No.  A new offer of employment is not necessary as there aren't any changes to the terms and conditions of employment of your employment.

**Q.   I want to apply for a mortgage and have been asked when I started work with my employer. What will the mortgage reference say?**

A.   Your continuity of service is protected under the transfer, so your original start date of employment is preserved.

**Q.   Will there be new staff policies?**

A.   There are currently no plans to make any changes to staff policies that are related to this transition. As always, we reserve the right to do so in the future.

**Q.   Will I still work in the same team?**

A.   Yes.

**Q.   Will I notice any real difference to how I work or to what I need to do in my daily work?**

A.   No – there should not be any difference.  We invite you to bring any issues that may arise to your manager so that we can resolve them for you.

**Q    What will be different after the transfer?**

A.   You should use the name of your new employer that is identified in your transfer document if you are asked for the identity of your employer (for example if you need a rental reference or if you apply for a mortgage).  We will communicate all future changes to your terms and conditions such as salary and benefits changes, if any, from the new employment entity.

**Q.   What happens if I don't want to transfer?**

A.   If you object to or do not accept the transfer, you must notify your manager of such objection in writing by December 1, 2021.  If you do not object in the required time and manner and continue your employment after December 27, 2021, you will be deemed to have accepted the transfer.

We hope that you have found these questions and answers helpful.  If you have any other questions, please contact Matt Amster on 212-651-7681 or AMRPeopleOps@citadel.com.