UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITADEL SECURITIES AMERICAS SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> VINCENT PRIEUR, <br><br> Defendant. | Case No. 1:22-cv-05185 <br><br> Judge John F. Kness |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION TO EXTEND TEMPORARY RESTRAINING ORDER**

Plaintiff Citadel Securities Americas Services LLC ("Citadel") has moved (dkt. 23) to extend the Court's Temporary Restraining Order entered on September 30, 2022 (the "TRO") (dkt. 19). Citadel's Motion to Extend TRO must be denied, as Citadel has not even identified – much less established – any facts or other grounds which would justify the extension of the TRO. Indeed, as addressed below, the Motion to Extend TRO is noteworthy for the fact that Citadel offers no evidence relating to the non-compete itself or any purported threat relating thereto, but instead relies entirely on citation to the supposed timing concerns created for Citadel by **Citadel's own mediation/arbitration requirements**. Citadel cannot cite Defendant's full *compliance* with the very same procedural thicket which Citadel itself designed and implemented in the Citadel non-compete agreement, which it required Mr. Prieur to sign, as somehow giving rise to the singular "good cause" basis for Citadel's request under FRCP 65 for keeping the TRO in effect.

**I.      Citadel's Improper Citation to and Reliance on The Prior Order's Verbiage**

As an initial matter, Citadel opens it Motion by asserting that the TRO "*can be extended until 5:00 PM US Central Daylight Time on October 26, 2022.*" (Motion to Extend, at Par. 1, citing to Dkt. 19 at 2 (italics emphasis added).) Notably, Citadel does not cite to any Federal Rule

-1-

34438938.2

or case precedent with respect to this "can be extended" reference and conclusion. <u>Id.</u> Instead, Citadel cites only to the verbiage of the prior Order. <u>Id.</u> What Citadel glaringly fails to note is that *Citadel* wrongfully included this "can be extended" verbiage in the Order it sent to the Court for entry, without ever having provided Defendant's counsel with a draft of that new verbiage in the Order for Defendant's counsel's review and comment/approval.

Indeed, immediately upon learning of the entry of such TRO language by this Court (*i.e.*, based upon Citadel's transmittal to the Court of the draft Order), the undersigned sent Citadel's counsel an email which detailed Defendant's objection to the addition of such "can be extended" verbiage and made clear that Defendant "*will need to draw this matter to the Court's attention*" in the event Citadel attempted to rely on such improper verbiage later in the proceedings. *See* <u>Exhibit A</u> hereto (September 30, 2022 email to counsel) (emphasis added). Unfortunately, now here we are, requiring precisely such notice to this Court regarding Citadel's improper inclusion of and reliance upon this verbiage. The fact that Defendant must address such conduct, rather than focus on the merits of the claims and defenses, not only is disappointing but is telling substantively too, as Defendant made its position on this issue crystal clear in the September 30th email:

\*   \*   \*   \*   \*

> Christopher:
>
> Plaintiff's counsel had never previously proposed to me any draft of the TRO containing the language *"…, and can be extended until 5:00 PM US Central Daylight Time on October 26, 2022.*" This language was never addressed to or by the Court in our 9:30 hearing today. Yet you then evidently emailed the Court – under the cover note that it was "*as discussed in this morning's hearing*" – a new draft of the Order which contained such "*extended until*" language for the very first time. Notably, you never presented my office with the draft Order for consideration; rather, you emailed it directly to the Court. Such inclusion of unaddressed verbiage in the TRO is unacceptable. It is deeply disappointing to discover this development, particularly after my communication to Citadel's attorney team last night specifically requesting that gamesmanship be discontinued.

> To set the record straight, we **do not consent** to such TRO extension presently… Again, we have not consented and do not consent to any such 14 day extension. Nor has the Court considered any such extension, let alone for "good cause" showing as required by Citadel under the Rule. Thus, we need to be crystal clear that your office's unilateral inclusion of the "*can be extended…*" phrase must be interpreted as meaning nothing more than the fact that Rule 65(b)(2) will be applied per its terms in the normal course and without any additional assumptions or rulings, if/when Citadel were to seek any TRO extension.
>
> Please confirm immediately. Otherwise, I will need to draw this matter to the Court's attention.
>
> \* \* \* \* \*

Id. (italics and bold emphasis in original). Citadel's counsel never even replied to this September 30th correspondence. Instead, Citadel decided to root its Motion to Extend TRO in this very same contested verbiage, citing to it in the opening paragraph of its Motion.

**II. Citadel's Fails To Demonstrate Any "Good Cause" For TRO Extension**

Turning to the remainder of the Motion to Extend, Citadel has not demonstrated the requisite "good cause" to extend the TRO. As the caselaw cited by Citadel makes clear, "good cause" is not presumed for an extension of a TRO. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin*, 1991 WL 83163 (N.D. Ill. May 9, 1991). As the *Merrill Lynch* court emphasized: "[u]nless there is agreement for extension between the parties, the court cannot extend a TRO without good cause," and "a court cannot extend a TRO without a *showing* of good cause." Id. at *3 (emphasis added).

Here, Citadel has not made its required "showing" of "good cause" for the extension of the TRO. Quite the contrary. Whereas Citadel suggested generally in its initial Complaint and Motion for TRO that an "emergency" existed which required immediate relief, Citadel's actions tell a different story, as Citadel has not advanced this case expeditiously to protect its supposed interests.

And Citadel offers no cognizable basis for its drastic TRO-extension request. The following hallmark examples illustrate Citadel's failure to show the requisite good cause presently.

### A. Citadel's Evidentiary Void & Failure to Develop The Court Record

Citadel cites repeatedly in its Complaint and TRO Motion to a May 202**1** PowerPoint as the lynchpin of its allegations and claims. [*See e.g.* dkt. 1, Notice of Removal, at Ex. A thereto (Complaint), at Par. 19 thereof.] Defendant has requested that Citadel produce a copy of this PowerPoint document for the Court's review, even on an attorneys'-eyes-only basis. *See e.g.* September 21, 2022 email, attached hereto as Exhibit B. However, Citadel has never provided a copy of that document – or any documentation whatsoever – to the Court or to Defendant's counsel. In fact, Citadel has refused to do so, as conceded by Citadel's counsel during the October 6, 2022 hearing before this Court. Thus, as it stands now, Citadel has provided this Court with no documentation or other evidence whatsoever to suggest that "good cause" now exists for extending the TRO.

### B. Citadel's Refusal to Propose or Agree to a Protective Order

In connection with the litigation before this Court, Defendant requested that Citadel advise if it wished to enter a Protective Order and asked that, if so, Citadel provide a copy of the proposed order in compliance with local rules. Exhibit C. Defendant's counsel has inquired repeatedly about the Protective Order. Citadel has refused to advance the discussion, let alone provide its draft Order. In fact, Citadel did not even respond to Defendant's request before filing its Motion to Extend TRO, nor has Citadel provided a draft of a proposed Protective Order still.[1]

---

[1] Citadel's refusal to proceed with a Protective Order is all the more troubling – and telling – in light of the Court's comments about the entry of a Protective Order, during the October 6, 2022 hearing.

34438938.2

### C. Citadel's Failure to Engage in Expedited (or any) Discovery

During the September 30th telephonic hearing, this Court asked if Citadel intended to proceed with expedited discovery. Citadel's counsel replied "*Yes, your Honor.*" Exhibit D (September 30, 2022 Hearing Transcript, at p. 24, line 7). Citadel has neither served any expedited discovery, nor made any effort to expedite the discovery process in any way. While Citadel could have explored over the last days and weeks any potential basis it might purport to assert for the "good cause" extension of the TRO, Citadel instead affirmatively chose not to do so. This choice by Citadel further underscores why its purported mediation-/arbitration-timing complaints (again, under its own non-compete agreement) ring particularly hollow: Citadel cannot opt to sit idly by with respect to its own "emergency" claims, while then arguing in parallel that the TRO somehow must be extended due solely to the fact that Defendant is *complying* not only with Citadel's own mediation / arbitration / court-litigation framework but also with Citadel's new request that he voluntarily *waive* Citadel's own contractual mediation procedures.

Conversely, Defendant served both Interrogatories and Requests for Production of Documents to Citadel, on September 30th, 2022 (*i.e.* the same day Citadel advised this Court that it intended to proceed with expedited discovery). In connection with service of said discovery, Defendant requested that Citadel respond on an expedited basis, within five (5) days. Citadel has not served objections or responses to any of the discovery requests. Nor has Citadel served any discovery at all upon Defendant. Thus, Citadel's broad-stroke "good cause" assertion for the TRO extension is further undermined by its failure to either serve or answer even rudimentary discovery going to the heart of its purportedly emergency claims. For example, as a point of emphasis in support of its purported claims, Citadel has asserted to this Court during oral arguments that Citadel purportedly is aware of various "employee solicitations" that justified the TRO. What? When?

Of whom? Defendant vehemently denies any such solicitation assertions and Citadel has offered not a scintilla of proof to back up this generic and wholly unsubstantiated statement in open court. And again, Citadel has not proffered the central PowerPoint document or any other evidence whatsoever for this Court's consideration. It is one thing for Citadel to rely on generalized and unsupported assertions when seeking the TRO in the first instance; it is quite another thing indeed for Citadel to seek to extend that TRO for "good cause" without making any showing whatsoever weeks later. Citadel simply has not carried its burden (or even offered any evidence) to make the requisite "***showing*** of good cause" to justify the TRO extension. *Patinkin*, 1991 WL 83163, at *3 (emphasis added).

> D. **Defendant's *Compliance* with Citadel's Own Self-Designed Contractual Mediation and Arbitration Procedures Does Not Somehow Equate To "Good Cause" to Extend The TRO Against Defendant**

As addressed above, Citadel's Motion to Extend TRO does not offer this Court any evidentiary argument relating in any way to the substantive asserted claims, purported harms, or anything of the sort. Instead, the Motion focuses exclusively on Citadel's own perceived delay in mediation or arbitration, which Citadel claims it might possibly face. Indeed, the sole argument for "good cause" Citadel offers is that the TRO should be extended so that "*Citadel Securities can utilize the dispute-resolution process set forth in the parties' Mediation/Arbitration Agreement*." (Motion to Extend TRO, at Par. 11.) Such an argument for "good cause" is no good cause at all.

Defendant has complied fully with all procedural and filing requirements under Citadel's own documents. And, despite some vagaries in the Motion apparently intended to suggest otherwise, Citadel never once asserts that Defendant ever failed to comply fully and timely with any and all mediation and/or arbitration requirements and procedures. Nor could Citadel make any such assertion. Citadel initiated AAA mediation as per its own documents. Defendant timely and fully has participated in the AAA telephone conferencing setting all applicable deadlines;

timely has responded to the AAA regarding proposed mediators; and has remained fully available and engaged for any and all elements of the AAA mediation and/or arbitration processes.

Apparently attempting to spin-up some manufactured "delay" argument – again, under the AAA procedural structure and requirements as imposed by Citadel's own non-compete documentation – Citadel focuses its Motion to Extend TRO on arguing that Defendant did not yet agree (*i.e.* as of the time of the filing of the Motion to Extend) to *waive* the mediation mandates contained within Citadel's own agreements. Thus, Citadel evidently is attempting to argue that can carry its burden of showing "good cause" for extending a TRO – purportedly to secure *compliance* with its non-compete document – by claiming that Defendant would not agree quickly enough to Citadel's after-the-fact request that Defendant *waive* Citadel's own compliance with that same non-compete document.[2] Citadel's argument just does not add up. Additionally, it is Citadel's position that it can proceed with litigation before this Court rather than "waiting" to proceed with arbitration. [See dkt. 10, Emergency Motion for Temporary Restraining Order, at Ex. D thereto (Exhibits to Complaint), at Ex. 2 (Mediation/Arbitration Agreement), at Par. 2(a) thereof.] Furthermore, the fact is that Defendant Prieur voluntarily *has* agreed to Citadel's request and has waived the local mediation requirement under Citadel's documentation, based on the fact that Citadel now has agreed to include Defendant Prieur within the mediation scheduled to occur on October 13 in Europe. Exhibit E. Thus, Citadel's "good cause" argument – based on the

---

[2] Citadel's counsel sent an email on October 10 at 10:41 AM requesting Mr. Prieur's participation in the London mediation and seeking to waive the local mediation requirement in connection therewith. Exhibit E. That same day, the undersigned acknowledged receipt of Citadel's request and advised that a response would be provided once he was able to coordinate with his client in Europe. Id. Promptly thereafter, on October 11 at 8:18 AM, the undersigned replied to confirm Mr. Prieur could participate in the London mediation and that he would agree to Citadel's request to waive mediation locally. Id. As is plain to see from Exhibit 2, Defendant Prieur has been actively engaged and responsive, and there is no basis for Citadel to claim "good cause" for a TRO extension based upon any supposed timing difficulties Citadel apparently now claims to face under the terms of its own agreements.

supposed difficult timeframes associated with its own contractual mediation and/or arbitration requirements – are wholly misplaced both factually and substantively for the Motion.

### III. Conclusion

For the reasons set forth herein, Defendant requests that Plaintiff's Motion to Extend the Temporary Restraining Order be denied.

Dated: October 11, 2022

Respectfully submitted,

**VINCENT PRIEUR**

/s/ *William J. Tarnow*
William J. Tarnow (wtarnow@nge.com)
Chad W. Moeller (cmoeller@nge.com)
Alissa J. Griffin (agriffin@nge.com)
Kathleen E. Okon (kokon@nge.com)
NEAL, GERBER & EISENBERG LLP
2 N. LaSalle St. Suite 1700
Chicago, IL 60602
Phone: (312) 269-8000
*Attorneys for Defendant*

34438938.2

-9-

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a copy of the foregoing **Defendant's Opposition to Plaintiff's Motion to Extend Temporary Restraining Order** to be served upon the following:

>Daniel D. Rubinstein
>Christopher Y. Lee
>**SIDLEY AUSTIN LLP**
>One South Dearborn
>Chicago, IL 60603
>(312) 853-7000
>
>- and –
>
>Adam L. Hoeflich
>**BARTLIT BECK LLP**
>Courthouse Place
>54 West Hubbard Street
>Chicago, IL 60654
>(312) 494-4400

via email and electronic filing this 11th day of October 2022.

*/s/ William J. Tarnow*
William J. Tarnow

34438938.2